Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Timothy A. Work (*pro hac vice*)
Mark Murphy (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
*ryoerges@steptoe.com*
*twork@steptoe.com*
*mmurphy@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, | |
| Plaintiff, | **DECLARATION OF TREFON ANGASAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| ENVIRONMENTAL PROTECTION AGENCY, *et al.* | **CIVIL ACTION NO. 3:14-cv-00171 HRH** |
| Defendants. | |

I, Trefon Angasan, state and declare the following:

1. The facts set forth in this declaration are based on my personal knowledge. If called as a witness, I would testify consistent with this declaration.

## Background

2. I was born in South Naknek village in the Bristol Bay region in 1947. I have held many leadership positions within the Alaska Native community over the course of my adult life. I have served on the Village Council for the Native Village of South Naknek, as a board member and officer of Qinuyang, Ltd, the village corporation for the Native Village of South Naknek, and, after the consolidation of Qinuyang into Alaska Peninsula Corporation ("APC") in 1978, and continuously since that time, as a board member and officer of APC, as Executive Director of Bristol Bay Native Association, Director of the Bristol Bay Area Development Corporation, Assistant Director of Alaskan Federation of Natives ("AFN"), and Vice President for Shareholder Relations of Bristol Bay Native Corporation ("BBNC"). I am presently Chairman of the Board of APC, a position I have held for the past 6 years. I served nine years on the board of the regional non-profit for Bristol Bay, the Bristol Bay Native Association. The experience I have gained over a lifetime of service to my local, regional, statewide, and national Native community has imparted in me the overriding importance of self-determination in order that Native peoples can control their own lives and their resources.

3. APC is a merger of five village corporations in the Bristol Bay region. Three of the five villages, Kokhanok, Newhalen, and South Naknek, are within the Kvichak watershed. APC is one of the largest private landowners in the Bristol Bay watershed, with title to approximately 400,000 acres of land. Our land is our culture, our life, and our fortune for our generation and for future generations.

DECLARATION OF TREFON ANGASAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH

Case 3:14-cv-00171-HRH   Document 83   Filed 11/19/14   Page 2 of 9

4. The Alaska Native Claims Settlement Act ("ANCSA") was passed in 1971 to resolve issues of Alaska Natives' land claims and stimulate economic and mineral development. ANCSA created Alaska Native regional corporations and village corporations, each of which received title to tracts of land.

5. Under ANCSA, Congress extinguished Alaska Natives' aboriginal hunting and fishing rights and directed the Native Corporations created under the statute to select lands for maximum benefit to shareholders. APC's final selections, made in 2009, shifted previous selections to available lands in the Upper Talarik Creek region for their potential economic value due to their proximity to the mining opportunities in the Pebble area. As mentioned, ANCSA required us to give up our claims to ancestral hunting and fishing rights in order to receive any lands. An EPA veto of mining the Pebble deposit would prevent us from realizing any economic benefit from the lands APC was conveyed under ANCSA, the express intent of which was to maximize our economic opportunities.

6. APC has not taken a position in favor of or in opposition to the Pebble project. APC's corporate position is to insist upon due process in order that Pebble can present its case for development through the comprehensive federal and state review under NEPA, so that APC can review the best available science as we consider the benefits, risks, and mitigation of risks, of the project. APC believes that any project should be able to demonstrate its ability to develop a sustainable economic benefit that is not harmful to the environment.

### EPA's Failure to Consult APC

7. As EPA has moved hastily through its decision process aiming to preemptively use 404(c) to block mineral development of the Pebble project, the Agency's failure to consult with ANCSA corporations such as APC has been a constant source of frustration. ANCSA and

DECLARATION OF TREFON ANGASAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH

Case 3:14-cv-00171-HRH   Document 83   Filed 11/19/14   Page 3 of 9

Executive Order 13175 require EPA to meaningfully consult with ANCSA corporations on federal actions that could have an effect on the lands these corporations hold. EPA must consult with ANCSA corporations on the same footing as recognized tribes. However, EPA only seems concerned with consulting with those corporations and tribes that have already expressed public support for a preemptive veto.

8. EPA has not even implemented a policy for consultation with ANCSA corporations, and the Agency has not responded to a proposed policy APC has submitted to govern consultation procedures. *See* Letter from Samuel J. Fortier, Counsel for APC, to Dennis McLerran, EPA Region 10 Administrator (Aug. 1, 2014) (attached).

9. It has come to my attention that EPA Region 10 employee Tami Fordham has recently defended and highlighted EPA's supposed consultation with Alaska Native tribes and ANCSA corporations. In my opinion, her statements are inaccurate and misleading.

10. First, Ms. Fordham's discussion of the many opportunities for engagement with ANCSA corporations tells only part of the truth. EPA has only consulted on any meaningful level with the Bristol Bay Native Corporation ("BBNC"). BBNC has publicly supported a preemptive veto of development of the Pebble prospect and submitted a petition requesting such a veto in 2010. APC and other ANCSA corporations that have supported due process have not received any outreach like that offered to BBNC.

11. Second, EPA has avoided attempts APC and other ANCSA corporations have made to initiate such legally required consultation. EPA has no policy with regard to government-to-ANCSA consultation, as required by law, and disregards that consultation in favor of government-to-government consultation with tribes opposed to the Pebble project.

DECLARATION OF TREFON ANGASAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH

Case 3:14-cv-00171-HRH Document 83 Filed 11/19/14 Page 4 of 9

APC has on numerous occasions requested meetings with former EPA Administrator Lisa Jackson and current Administrator Gina McCarthy. All of our requests have been ignored.

12. Finally, EPA officials have actively dismissed APC's concerns. In February 2012, for example, I attended a meeting with Region 10 Administrator Dennis McLerran with Lisa Reimers of the Iliamna Development Corporation to discuss Administrator Jackson's refusal to meet with APC. Mr. McLerran angrily threw a recent Op-ed column supporting due process for the Pebble Project that Ms. Reimers had drafted. Mr. McLerran called us "liars" and claimed to be too upset to conduct the meeting after that.

13. APC leaders and community members have found EPA's supposed consultation efforts to be woefully inadequate. Public webinars and meetings have not provided any meaningful chance for us to express our concerns. As the title owners of land near the Pebble prospect, we need to have a voice in the decision making process and are legally entitled to participate in it. EPA has not complied with this requirement, and the consequences to our villages – in terms of lost opportunity for jobs, school closures, and continued disappearance of our culture – may be irreversible.

This concludes my statement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 18 day of November, 2014, at Anchorage, Alaska

TREFON ANGASAN

DECLARATION OF TREFON ANGASAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH

Case 3:14-cv-00171-HRH   Document 83   Filed 11/19/14   Page 5 of 9

# Attachment

## FORTIER & MIKKO
### A PROFESSIONAL CORPORATION
### *Attorneys at Law*

1600 A STREET, SUITE 101
ANCHORAGE, AK 99501

TELEPHONE: (907) 277-4222
FAX LINE: (907) 277-4221
E-MAIL: fortmikk@ak.net

SAMUEL J. FORTIER
DAGMAR C. MIKKO

*ASSOCIATES*
MARC A. JAKUBOVIC
RACHEL LAUESEN

August 1, 2014

Mr. Dennis J. McLerran
Regional Administrator
Environmental Protection Agency
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3410

*Via Mail and Email:*
*McLerran.Dennis@epamail.epa.gov*

RE: **Demand for ANCSA Corporation Tribal Consultation**
    **Our File No. 200.37**

Dear Mr. McLerran:

Fortier & Mikko, P.C. represents Alaska Peninsula Corporation (APC). This letter is to memorialize in writing APC's concerns verbally expressed at the July 30, 2014 telephonic informational meeting and webinar.

Your letter, dated July 18, 2014, admits that the EPA recognizes that it is required to consult with ANCSA Corporations on the same basis as Indian Tribes under Executive Order 13175.[1] Your letter states, "accordingly, EPA Region 10 provided multiple engagement opportunities for ANCSA Regional and Village Corporations with lands in the Bristol Bay watershed through development of the Bristol Bay Watershed assessment."

APC disagrees that the "engagement opportunities" you reference qualify as consultations. To the extent the EPA's notice and comment period "plans to provide similar opportunities for ANCSA Corporations," APC objects to these "opportunities" being characterized as consultations.

First, EPA has no policy for consultation with ANCSA Corporations. At EPA's invitation, APC incurred the expense of preparing a proposed policy for government consultations with ANCSA Corporations, but there was no response. EPA stated at the meeting yesterday that they responded to APC and thanked APC for preparing the policy, but that EPA would need to consult with the Tribes before adopting the policy and there was no resources for that. APC does not understand why EPA would need to consult with Tribes before implementing an ANCSA Corporation Tribal Consultation policy. Please advise whether EPA consulted with the Alaska Tribes before implementing its Region 10 Tribal Consultation and Coordination Procedures.[2]

---

[1] D. McLerran, Letter to ANCSA Executives, (July 18, 2014).
[2] EPA 910-K-002 (October 2010).

Case 3:14-cv-00171-HRH   Document 83   Filed 11/19/14   Page 7 of 9

In the July 30, 2014 meeting, EPA stated that the webinars and teleconferences are part of the Tribal consultation process. Tami Fordham from EPA stated that the "real" consultation is where EPA and the ANCSA Corporations sit down. She stated that the webinars and teleconferences are part of the briefing to Tribes and ANCSA Corporations to assist them with preparing their boards and leadership for Tribal Consultations.

APC agrees that EPA is required by law to sit down with APC and conduct a "real" ANCSA Corporation Tribal Consultation.[3] "*Consultation* is a process of meaningful communication and coordination between EPA and tribal officials prior to EPA taking actions or implementing decisions that may affect tribes. As a process, consultation includes several methods of interaction that may occur at different levels."[4] Thus, APC disputes that the process described in your July 18, 2014 letter and teleconferences is a genuine Tribal consultation as prescribed in EPA's procedures.

APC has attended both of EPA's teleconferences and still finds EPA's process for ANCSA Corporation Tribal Consultations remains unclear. On July 18, 2014, APC submitted the "EPA Region 10 ANCSA Engagement Questionnaire" form as a measure of caution, so as not to forfeit any rights to participate in this process. However, APC continues to dispute that EPA is fulfilling its mandate to engage in Tribal Consultation with ANCSA Corporations and renews its request that an ANCSA Corporation Consultation Policy be adopted by EPA and that EPA consult with APC in accordance with that policy.

Very truly yours,

FORTIER & MIKKO, P.C.

Samuel J. Fortier

SJF/RBL/at

cc: Mary Jane Nielsen, President & CEO, Alaska Peninsula Corporation

---

[3] Consolidated Appropriations Act, 2004, Public Law 108-199, Div. H. Sec. 161, 118 State. 3, 452 (2004) as amended by Consolidated Appropriations Act, 2005, Public Law 108-447, Div. H. Title V. Sec. 518, 118 State. 2809, 3267 (2004).
[4] *Id.* at p. 5

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of November, 2014, I electronically filed a copy of the foregoing using the CM/ECF system, which will electronically serve the attorneys of record in this case.

/s/  Mark Murphy