Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Timothy A. Work (*pro hac vice*)
Mark Murphy (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
*ryoerges@steptoe.com*
*twork@steptoe.com*
*mmurphy@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, | |
| Plaintiff, | **DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| ENVIRONMENTAL PROTECTION AGENCY, *et al.* | **CIVIL ACTION NO. 3:14-cv-00171 HRH** |
| Defendants. | |

I, John Shively, state and declare as follows:

1. I am the former Chief Executive Officer of Pebble Limited Partnership ("PLP"). If called as a witness, I would testify consistent with this declaration.

2. I joined PLP in April 2008 as CEO and remained in that role until February 2014. I am currently Chairman of the board. In my capacity as CEO from 2008 to 2014, I was responsible for the day-today management of the corporation. Those responsibilities included overseeing PLP's environmental, engineering and public outreach programs. As part of those efforts, I was significantly involved in interfacing with the state and federal agencies involved in the Pebble project on behalf of PLP. I met with representatives of both state and federal agencies, conducted tours of the project for some of those officials, and testified at public hearing conducted by the EPA.

A. Factual Statements In Defendants' Opposition to PLP's Motion for Preliminary Injunction

3. EPA's factual recounting of the communications between NDM/PLP and EPA, and EPA's allegedly open process are riddled with misstatements and critical omissions. EPA's portrayal of a benevolent, conscientious agency making an effort to even-handedly involve all stakeholders in a very sensitive economic and environmental issue is largely fiction.

4. EPA's false portrayal of an agency committed to above-board dealings -- when, in fact, EPA ran a back room revolving door of private meetings with only its ENGO co-conspirators to create a patently biased and scientifically corrupt assessment in support of its 404(c) agenda – begins with its misleading quote from my February 2011 letter to Dennis McLerran, EPA's Region 10 Administrator. EPA suggests based on the statement in my letter that PLP acknowledged EPA's Section 404(c) process and BBWA process were "open and

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 2 of 9
Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 2 of 10

transparent." For starters, that letter predated PLP's knowledge of EPA's collusion, in particular its private collusion, with the ENGOs and others with respect to the BBWA and the 404(c) veto, much of which only came to light through PLP's later FOIA requests.

5. Even before my letter, EPA took actions which began to cause me to believe that the agency was not truly acting openly and honestly. For example, I met with Administrator Jackson in July 2010. At that meeting, EPA withheld information concerning the fact that in May 2010 – two months earlier -- six native tribes had petitioned EPA to commence 404(c) veto proceedings. Administrator Jackson and the others from EPA never informed PLP of that fact, despite the clear and obvious relevance to PLP as the project proponent. PLP did not find out about the tribes' petition until it read about it in a story was later published in the Los Angeles Times. EPA mentions this meeting, but conspicuously fails to note its withholding of information critical to PLP. This omission and the others discussed below better define EPA's true activities than do the numerous "listening sessions" it catalogs in an effort to create the sense that it was open to all views when, in fact, there are numerous examples of EPA embracing without question anti-Pebble views while rejecting out of hand the views of project proponents.

6. At that July 2010 meeting, EPA also did not disclose its ongoing coordination with anti-Pebble tribes or the meetings it had arranged for later that week in Dillingham.

7. Moreover, my quoted letter was sent before PLP knew the extent of EPA's activities prior to receiving the tribal petition and before PLP was aware of the hundreds of contacts between EPA and opponents of the Pebble project. My letter was sent at a time when PLP wished to continue to pursue an open channel of communications with the EPA and other agencies, but before PLP found out that EPA was pursuing its own back channel of communications with opponents of the project and before it became clear that EPA was

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 3 of 9
Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 3 of 10

undertaking a biased assessment during its BBWA process. At that time, I was unaware of EPA's intentionally withholding information from PLP and the extensive work that Phil North and others had done with the opposition prior to receiving the tribal petition. Mr. Parkin, Mr. McLerran and others at EPA always maintained that the 404 process began with the tribal petition and never disclosed the extensive work done by North and others at EPA on a 404(c) veto prior to EPA receiving the petition.

8.  Most telling, perhaps, are EPA's omissions with regard to its ENGO activities and EPA's work with and receipt of analyses from the ENGOs' scientists. One example concerns EPA agreeing to keep secret the "embargoed" report from Trout Unlimited and the Wild Salmon Center. Based on the FOIA documents PLP has received, EPA received this report in November 2011, circulated it to its Bristol Bay Assessment Team, convened meetings with the authors and ENGO sponsors, and kept it out of the public eye until at least February 2012. Whereas PLP and others were limited to providing comments to EPA only during the public comment periods, EPA consulted with its ENGO partners and took comments and data at all times, without limitation.

9.  Another emblematic example concerns Administrator McCarthy's September 2013 response to one of my letters. Mr. McLerran circulated the Administrator's response letter to a representative of the ENGOs opposing the Pebble project before it was delivered to me. That letter was addressed to only me and there was no reason why it should have been shared with other parties.

10.  Mr. Parkin and Mr. McLerran are fully aware that the sentiments expressed in my February 2011 letter have long since ceased to reflect my views on EPA's behavior during the BBWA process. On August 12, 2014, Mr. Parkin and Mr. McLerran presided over a public

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 4 of 9

Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 4 of 10

hearing concerning EPA's Proposed Determination relating to Pebble. At that hearing I was quite explicit in stating that I now knew that EPA had misled us from the beginning of the process, by withholding information from PLP such as the tribal petition, not informing PLP of the extensive activity that had taken place within EPA prior to receiving the tribal petition, and constant interaction between members of the opposition to Pebble and EPA officials which began prior to receipt of the tribal petition and continued in an accelerated manner after the receipt of that petition. Thus, by quoting my letter of February 2011, EPA is continuing to make statements that they know to be untrue.

11. Over the course of the preparation of the Pebble project, NDM and PLP have invested more than $800 million in scientific assessment, research, engineering design, consulting, and other efforts to develop the Pebble project using state of the art technology so as to build an environmentally sound project, complete with substantial mitigation measures. Rather than waiting for Pebble to submit a proposed development plan and participate in the NEPA/EIS process like every other major development project since the passage of the National Environmental Policy Act, EPA's unprecedented 404(c) actions, taken after more than 13 years of investment by NDM/PLP, likely would result in the complete loss of these hundreds of millions of dollars of investment.

B. Declaration of Richard Parkin

12. EPA's story not only omits numerous damning points, but also misstates numerous facts. Mr. Parkin states that EPA has been "diligent in maintaining open communication with all interested stakeholders, particularly the Complainant." That claim misstates the facts for two reasons. First, on repeated occasions, EPA did not respond to PLP. For example, in January-February 2011, multiple calls from me went unreturned at a time when

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 5 of 9

Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 5 of 10

EPA was planning to announce the launch of the BBWA process. As with the withholding of the fact that the tribes had petitioned EPA, rather than hearing this critical information from EPA, PLP was left in the dark and only learned from EPA's public announcement that it would undertake a watershed assessment.

13. In addition, the nature and substance of contacts between NDM/PLP and EPA, and EPA and the opponents of the Pebble project, were not the same. Between 2004 and 2010, when the vast majority of the NDM/PLP contacts with EPA occurred, most of the contact took place through the Technical Working Groups ("TWGs") and annual Environmental Baseline meetings established by NDM in cooperation with the Alaska Department of Natural Resources. The TWGs were convened by NDM, beginning in 2005-06, in order to create communication channels with the interested agencies through which the parties could focus exclusively on environmental baseline studies and to try to find objective, scientific common ground concerning what data ought to be collected as part of preparation for the NEPA application process. The numerous TWG meetings held over those six years with federal and state agencies were not intended to and did not explore and define project design, risk factors, impact assessment, mitigation, failure modes, or mine scenario details.

14. Following 2010, when EPA was considering those substantive issues in detail as part of its preparation of the BBWA, it did so in collaboration with the tribes and the ENGOs and their scientists, and not with PLP. After 2010, there were few meetings of any kind between PLP and EPA other than PLP's annual Environmental Baseline meetings, convened in 2012 and 2013. At these meetings, PLP presented status reports and extensive amounts of information on baseline investigations to the agencies on the project and, in 2013, provided an overview of

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 6 of 9
Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 6 of 10

PLP's Environmental Baseline Document ("EBD"). The EBD consisted of over 27,000 pages of scientific data compiled between 2004 and 2012.

15. The EBD was the most comprehensive environmental assessment ever undertaken in Alaska for a mining project. PLP provided the EBD to EPA in order to give the agency the specific detailed information it had requested, and because without this data, EPA could not construct a legitimate and balanced BBWA. Nonetheless, EPA largely ignored the data. For example, EPA ignored the significant data describing area aquatic habitat conditions and fish populations. In addition, PLP/NDM provided comprehensive literature reviews and extensive information on a wide variety of successful compensatory mitigation measures during the various comment periods on the two drafts of the BBWA and the final report, and the PLP response to the EPA Notice of Determination. However, rather than utilizing that data in the BBWA, EPA instead based the report on the unscientific and unreasonable assumption that no mitigation could be used effectively with a modern mine such as Pebble.

16. In addition, Mr. Parkin states that "Mr. Shively confirmed that there was no hydrology or fishery data in the EBD." Later he states that "Complainant chose not to provide EPA with the data most relevant to the BBWA." This is completely false. There is extensive hydrology and fishery data in the EBD, spanning many years of field study, and PLP did provide this data to EPA. That Mr. Parkin would make these statements also suggests that EPA did not even review the data, in direct contradiction to EPA's statements that it considered data from all sources and that EPA "was interested in obtaining relevant information from [PLP]."

17. Mr. Parkin also states that EPA "invested considerable effort into coordinating and working with the State of Alaska before making a decision on how to respond to the tremendous uncertainty of potential environmental effects of a mine." EPA again omits to say

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 7 of 9

Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 7 of 10

that it rejected the State of Alaska's advice in this regard, which was to wait until PLP had submitted a proposed development plan and had the opportunity to participate in the federal and state permitting process under NEPA.

18. In yet another example of EPA's duplicity, on March 30, 2011, Region 10 Administrator Dennis McLerran responded to a letter of mine in which I sought information about EPA's BBWA process. In response to my Question 3, Mr. McLerran indicated that EPA would use the Guidelines for Ecological Risk Assessment "to help inform our approach." This, along with other statements from EPA, misled PLP as to what kind of assessment document might ultimately be prepared. The BBWA does not comply with these Guidelines, as PLP has pointed out in several submissions to EPA. Similarly, in response to my Question 5, Mr. McLerran indicated EPA would "welcome" information on compensatory mitigation. As PLP later learned, EPA ignored the comprehensive technical and scientific information that PLP and NDM provided on mitigation. In response to my Question 11, Mr. McLerran indicated the BBWA could complement the NEPA process. As PLP later learned, the assessment was designed to supersede and preempt the NEPA process.

C. <u>Declaration of Jeffrey Frithsen</u>

19. Mr. Frithsen asserts that EPA's peer review of the seven studies authored exclusively by ENGOs and anti-Pebble activists was open and transparent because "the independent contractor-coordinated letter reviews (were) publicly available through the Agency's web site." Mr. Frithsen omits that these peer reviews were commissioned and undertaken in secret, and then quietly released on the EPA website after the fact. In addition, when I asked Mr. Parkin about these studies in a telephone conversation, he affirmatively denied any knowledge of them.

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 8 of 9
Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 8 of 10

20. Mr. Frithsen asserts that EPA only cited five of those seven ENGO-authored scientific studies in the final 2014 BBWA as evidence that EPA took these peer review processes seriously. However, all seven studies, including the two studies EPA later dropped, were cited in its April 2013 BBWA draft – which was released after EPA conducted its the unannounced peer review. It was only later that EPA dropped the two studies co-authored by Ann Maest from the final BBWA. EPA only dropped these two studies after Maest admitted in a sworn declaration that she had falsified a scientific damages assessment as part of a lawsuit involving Chevron in Ecuador. The suggestion that they were dropped as a result of the peer review is contradicted by the evidence and disingenuous.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 18th day of November, 2014, at Anchorage, AK.

_____
JOHN SHIVELY

DECLARATION OF JOHN SHIVELY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
*Pebble Limited Partnership v. United States E.P.A. et al.*, No. 3:14-cv-00171 HRH
Page 9 of 9

Case 3:14-cv-00171-HRH   Document 85   Filed 11/19/14   Page 9 of 10

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of November, 2014, I electronically filed a copy of the foregoing using the CM/ECF system, which will electronically serve the attorneys of record in this case.

/s/   Mark Murphy