IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

PEBBLE LIMITED PARTNERSHIP,

Plaintiff,

vs.

ENVIRONMENTAL PROTECTION
AGENCY, *et al.*,

Defendants.

CIVIL ACTION NO.
3:14-cv-00171 HRH

## SUPPLEMENTAL DECLARATION OF RONALD W. THIESSEN

I, Ronald W. Thiessen, declare:

1.  I am the Chief Executive Officer ("CEO") of Northern Dynasty Minerals Ltd. ("Northern Dynasty" or "NDM"). Northern Dynasty owns Pebble Limited Partnership ("Pebble Partnership" or "PLP").

2.  I previously prepared a declaration, dated June 25, 2014 that was offered in connection with the related case Pebble Limited Partnership v. Unites States Environmental Protection Agency, et al., Case No. 3:14-cv-00097-HRH (D. Alaska June 27, 2014), ECF No. 26. I understand this prior declaration has been cited and relied upon in connection with PLP's instant Motion For A Preliminary Injunction and is attached hereto for convenience as Exhibit 1.

3.  I hereby submit this supplemental declaration in support of PLP's Reply to Defendants' Motion To Dismiss And Opposition To Plaintiff's Motion For A Preliminary Injunction, filed concurrently here with.

4.  From both a financial and human perspective, the health of PLP's current business condition is best described as being in dire straits.

5.  As of November 17, 2014, NDM (PLP) stock was down 97.6% from February 8, 2011 (the date EPA initiated the Bristol Bay Watershed Assessment). Over the exact same

period the S&P/TSX Materials Index was down only 51%. This is all to be compared to the fact that in the 3.5 years immediately prior to the initiation of the Assessment, NDM's stock market performance had a very high correlation to the Index performance. Specifically, from August 1, 2007 (the day Pebble Limited Partnership was announced) until February 7, 2011 (the day before the Bristol Bay Assessment was announced) NDM appreciated 50.5% compared with the S&P/TSX Materials Index price appreciation of 43.6% over the same period. This is clear and unequivocal indication that NDM investors have suffered under the cloud of the threat of EPA over-reach since the Bristol Bay Assessment was announced on February 8, 2011.

6. NDM is attempting to raise additional capital in the marketplace so that it can fund the on-going expenses of PLP. However, as explained in my initial declaration, that effort is being significantly and negatively impacted by the EPA's proposed advance 404(c) action. The proof of this is demonstrated by the proposed terms of NDM's ongoing Private Placement Offering ("PPO") discussions. (We are also exploring other funding options, but this approach seems the most likely at this time.) First, the PPO seeks to raise $25 million (CAD) and is far from a sure bet to do so. Second, per the terms of the proposed PPO, shares in Northern Dynasty (PLP) are being offered for $.50 (CAD) and there is no certainty that investors will not demand a significant discount to current market pricing. Third, and most disastrously, IF fully subscribed, these additional shares would dilute Northern Dynasty's existing shareholders by over 50%. The magnitude of this dilution can be fully understood when one realizes that the current market capitalization of Northern Dynasty is only $47 million (CAD) (down from $1.99 billion (CAD) on February 7, 2011- the day before the Bristol Bay Assessment was announced and we now are attempting to raise $25 million (CAD).

7. To put it even more bluntly, as of September 30, 2014 NDM has $7.3 million

(CAD) in the bank. Its minimum burn rate to cover necessary day-to-day operating expenses of NDM and PLP (its wholly owned subsidiary) is $5.5-6 million (CAD)/quarter. At this current rate, NDM/PLP will run out of money in early 2015.

8. The greatest economic impact associated with PLP's investment in Alaska in recent years has been realized through contract expenditures related to the field and support activities at the Pebble Project site – including geological investigations, environmental studies, engineering and other technical studies, and the logistical services necessary to support these programs (helicopters, air and ground transportation, safety programs, accommodation, catering and related support services). Indeed the vast majority of project employment in Alaska has been generated by Pebble contractors and suppliers.

9. There has a significant downturn in PLP's business spending and employment numbers. For example, PLP employed a total of 1,403 employees and contractors in 2012 and just 24 direct workers this year, with very few if any contract employees. Similarly, in 2012 PLP's total expenditures were approximately $103 million (USD) as compared to 2014 (Q3) which is approximately $12 million (USD).

10. Over the course of the exploration and development phase of the Pebble Project, PLP has advanced a Business Development program to maximize contracting opportunities for local Alaska Native business partners. Specifically, PLP has worked closely with six Alaska Native village corporations – Iliamna Natives Limited (INL), Alaska Peninsula Corporation (APC), Pedro Bay Corporation (PBC), Kijik Corporation, Igiugig Village Corporation (IVC) and Tanalian – to provide contracting opportunities related to project activities, and to expand the management and operational capabilities of these local entities so they can grow to take on more and more sophisticated contracting opportunities over time. Alaska Native village corporations with which PLP has developed commercial partnerships have provided a range of

3

project services over the years, including: food services; housekeeping; fuel, transportation and aviation services; medical programs; bear guards ; housing and vehicle leasing; environmental; surveying, ground clearing and reclamation.

11. The vast majority of contractors that PLP previously employed in Alaska saw their 2014 revenues reduced to zero or nearly zero. PLP's Alaska Native village corporation contractors' revenues were also drastically reduced in 2014 (YTD) to approximately only 10% of 2012, despite our best efforts to keep these local Alaska Native partners' whole and able to weather the financial downturn. Many of these Alaska Native village corporations' financial viability is seriously threatened by PLP's drastically reduced program expenditures today.

12. In recent years PLP provided employment for as many as 180 people from local communities, making Pebble the largest employer in the Lake and Peninsula Borough during those years. Today we employ just three local people.

13. Full-time paid employment is extremely rare in southwest Alaska, which has contributed to a significant net out-migration from the region as people and families leave in search of jobs. Losing the employment base that Pebble provided is contributing to a significant social dislocation in local villages today, including ongoing out-migration and school closures and a host of social problems related to loss of income and loss of hope.

14. In sum, the ongoing EPA action that portends to preempt PLP's planned submission of an application for permit to conduct mining operations in Bristol Bay has already, is now and will continue to cause serious irreparable damage and injury to PLP's business, the people we employ, our Alaska Native partners and the communities we operate in and support.

Executed: November 19, 2014.

_____
Ronald W. Thiessen

4

Case 3:14-cv-00171-HRH   Document 86   Filed 11/19/14   Page 4 of 14

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and DENNIS J. MCLERRAN, in his official capacity as Regional Administrator of EPA Region 10, <br><br> Defendants. | Case No. 3:14-cv-00097-HRH |

## DECLARATION OF RONALD W. THIESSEN

I, Ronald W. Thiessen, declare:

1. I am the Chief Executive Officer ("CEO") of Northern Dynasty Minerals Ltd ("Northern Dynasty"). Northern Dynasty owns Pebble Limited Partnership ("Pebble Partnership"). I also serve as the CEO of Hunter Dickinson, Inc. ("Hunter Dickinson"). Hunter Dickinson is a diversified global mining group that acquires, develops, operates, and monetizes mineral properties. It also provides management and technical services to a diverse portfolio of mineral companies.

2. For over 30 years, I have worked on the development of venture capital financing for emerging public and private companies. In particular, as Hunter Dickinson's Director of Corporate Development, beginning in 1996, and as CEO, since 2000, I have worked on over 20 property or project acquisitions, raised over $1.4 billion in equity financing, and built a portfolio of advanced mineral exploration and mining projects.

DCACTIVE-27976290.1

3. I have worked on the Pebble project since its acquisition by Hunter Dickinson in 2002. My principal roles have been project acquisition, management, financing, and partnering. I earned a bachelor's degree in Accounting and Finance from the University of Saskatchewan in 1974. I am an accredited public accountant in Canada, Chartered Accountant, and a Fellow of the Chartered Accountants of British Columbia.

4. I live and work in Vancouver, British Columbia.

**Northern Dynasty and Its Involvement in the Pebble Project**

5. Northern Dynasty is incorporated in British Columbia and is listed on the Toronto stock exchange and the NYSE MKT. United States citizens own 70% of its stock and Canadians own 20%; the remainder is owned outside of North America.

6. Northern Dynasty acquired the mineral claims for the Pebble deposit from Cominco in 2002. Cominco discovered the Pebble mineralization in 1989, and completed substantial exploration drilling and preliminary scoping engineering work on the Pebble Project between discovery and 1994, after which it was put on care and maintenance due to low metal prices. After a detailed examination and analysis of the historical geological and engineering work, Northern Dynasty began new exploratory drilling at the Pebble deposit in 2002. As of today, exploratory drilling has produced over one million feet of drill core samples.

7. In 2005 Northern Dynasty's exploration and field activities work produced some spectacular results and major mining companies from around the world were attracted to the Pebble Project. While Northern Dynasty received a number of proposals, it eventually entered into a financing and advisory agreement with Rio Tinto Mines.

8. In August 2007, Northern Dynasty and Anglo American formed Pebble Limited Partnership ("PLP").

9. Since August 2007, Anglo American invested $587 million up to the point of its withdrawal from PLP in December 2013.

10. Anglo American announced its intention to withdraw from PLP in October 2013, and completed the withdrawal by early December 2013. As a result, Northern Dynasty owns 100% of PLP and Pebble Mines Corp (General Partner), which own a separate company that owns the mineral exploration claims for the Pebble deposit.

**The Basis for EPA's Assessment of Mining Impacts: Canadian Preliminary Economic Assessment filings**

11. Northern Dynasty filed a Preliminary Economic Assessment ("PEA") with the Canadian and United States regulatory authorities in 2006. Canadian and U.S. regulatory agencies require a PEA filing to disclose relevant material financial, corporate and geological information to the public so that all investors and potential investors have the same information. Northern Dynasty made this 2006 PEA filing before completing the aforementioned equity.share transaction with Rio Tinto and the partnership transaction with Anglo in August 2007. It filed another PEA in 2011 in contemplation of a corporate transaction in 2011 or 2012. EPA erroneously used the 2011 PEA as the central basis for its document entitled "An Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska" (January 2011), commonly called the Bristol Bay Watershed Assessment ("BBWA"). A PEA is an economic analysis and not an engineering study such as a Prefeasibility or Feasibility Study; it consists of economic analysis, but not a final detailed engineering design .

12. The 2011 PEA (the Waldrop report, which EPA identifies as "Ghaffari 2011") upon which EPA has based two of its BBWA mine scenarios is only a preliminary assessment of the *economic* potential of the Pebble deposit. It does not present a detailed *engineering* analysis

3

of any proposed development, nor the detail of any underlying plans, strategies and technologies for managing environmental effects. The maps in the PEA lacked sufficient detail to derive engineering information. The PEA has no discussion of alternatives for the various project elements that would be required if the project is developed. The EPA studies are completely inadequate for a proper detailed engineering assessment of the project, and therefore lack technical integrity, risk assessment, alternative analysis assessment, and therefore permitting viability.

13. Moreover, the 2006 and 2011 NDM Preliminary Economic Assessments are out of date and do not reflect the current status of engineering and project planning at Pebble. The 2011 PEA explicitly states (at page 60): "The project description that the Pebble Partnership ultimately elects to submit for permitting under NEPA may vary in a number of ways." The reality is that NDM was required to publish a PEA in order to entertain proposals from independent non-related mining companies in relation to the Pebble Project. It was published so that financial analysts could have a basis for economic assessment of the project, and not a detailed engineered study.

14. NDM recently removed the 2011 PEA from its website and other corporate disclosure information, because the underlying economics on capital and operating costs have changed over the intervening 3 years to the point that it renders the 2011 economic assessment invalid in the current economic markets. In its most recent corporate filings, Northern Dynasty has provided further guidance that the mine development concepts presented in the 2011 Preliminary Assessment are no longer relevant. "However, since the withdrawal of Anglo American from the Pebble Partnership in late 2013 and in light of more recent stakeholder and regulatory feedback, Northern Dynasty initiated a comprehensive review of previous analyses of

the Pebble Project, including the 2011 PEA and various project components. Current studies of the Pebble Project investigate new infrastructure plans as well as lower throughput rates in a revised project development concept. As well, the cost and revenue inputs require updating given the nearly four years which have passed since the 2011 PEA was done. For these reasons, any project that is ultimately put forward for permitting will almost certainly be different from the economic assessment model examined in the 2011 PEA. Therefore conclusions in the 2011 PEA study may have limited going-forward relevance at this time." And they are economic in nature only, and not of a detailed engineered substance. Management Discussion and Analysis, Year Ended December 31, 2013, Northern Dynasty Minerals Ltd., page 6.

**EPA's Section 404(c) Proceeding Has Caused Pebble Partnership Serious Harm**

15. EPA's Clean Water Act Section 404(c) veto process is causing the Pebble Partnership serious harm in at least two ways. First, it is an impediment to Pebble Partnership obtaining the capital investment and partnerships it needs to move forward with the project. Second, EPA's proceeding is preempting an interactive permit process that would enable us to design environmental protections and mitigation into the project with the guidance of the U.S. Army Corps of Engineers and the State of Alaska.

**EPA Has Blocked Further Project Investment**

16. The Pebble deposit is the largest undeveloped copper resource and the largest undeveloped gold resource in the world today. The Pebble project will be a world-class project and – as is common for such projects – its development will require a world-class consortium of mining companies. Northern Dynasty cannot develop the Pebble project on its own—it will require a new partner or a consortium partners. This is very typical of projects of Pebble's

5

magnitude: almost all are developed by consortiums of mining, trading or smelting companies and finance companies. In addition for a project of this magnitude and importance it is not unusual for it to take many years to finalize the assessments used to determine the initial development plan. It is far better that the project proponent takes the time to do the best job, rather than rush to do as poor a job as the EPA has done here.

17. I am one of those responsible for finding a new investor for the Pebble Partnership. EPA's decision has impeded bringing any significant new investment into the Partnership. Executives at some multi-national mining corporations – which have the resources and expertise to responsibly develop this project – have told me directly that they will not invest in the Partnership while EPA is conducting a proceeding to veto it. Other companies have told me that they are reluctant to invest, which creates an additional obstacle that must be overcome in order to proceed with the project. While they well understand normal permitting processes and the risks they entail, they do not know how to gauge the risks posed by an unprecedented EPA pre-emptive veto proceeding that is carried on in the absence of a permit application, and in the absence of a detailed engineering Project Description as prescribed by the federal and Alaska Large Mine Permitting processes.

18. The lack of investments means, most fundamentally, that Pebble Partnership cannot proceed with further design and planning of the project. Pebble Partnership alone does not have the resources required to fund further design and planning for the multiple years that permitting will take.

19. The harm to project financing caused by EPA's Section 404(c) veto proceeding will last for the duration of this proceeding. If this proceeding is not resolved within a reasonable time, the ongoing proceeding itself could destroy the Pebble Limited Partnership.

6

Case 3:14-cv-00097-HRH Document 86 Filed 06/27/14 Page 16 of 84

## EPA Has Deprived Pebble Partnership of the Opportunity to Plan the Project Using the Permitting Process

20. Like any applicant for a Clean Water Act Section 404 permit, Pebble Partnership needs control over the timing of its application. Pebble Partnership will need time to carefully plan and design each element of the project. It is not yet ready to submit its Section 404 permit application.

21. Pebble Partnership has not been able to evaluate alternatives for each of the project elements in conjunction with the expert permitting agencies—the Corps of Engineers and the State of Alaska—that can help it develop the best, environmentally protective project plan. Alternatives for tailings disposal sites, waste-rock disposal sites, transportation corridors, and a deep-water port (among dozens of other project elements) must be evaluated by those agencies before a plan can be approved. In addition to alternatives, detailed engineering designs and operating plans must be developed and evaluated.

22. The Partnership cannot rush the analysis of any of these elements. Pebble Partnership demands first-class work in designing and developing this project. A rushed analysis is a poor analysis, and is the antithesis of what the Army Corps of Engineers, and the State of Alaska has to date recommended. They have expressed the view that we should take time to ensure we have the best plan, and conduct a multitude of alternatives analyses before we initiate the permitting process, because changing our desired plan mid-permitting will be detrimental to both the project proponent and the permitting agencies. Yet it seems EPA objective is to proceed with the worst plan, and not perform crucial analyses.

23. EPA's initiation of the Section 404(c) process now, therefore, harms Pebble Partnership by forcing it to defend a hypothetical project before it has the time to carefully

7

evaluate alternatives and propose detailed engineering design and operating plans and mitigation through the permitting process. It is being forced to defend a project based loosely upon a conceptual, incomplete and obsolete economic report which has not had the input, analysis and recommendation of alternative plans by the ACOE and the Alaska Large Mine Permit agency.

24. EPA has proposed an incomplete mine plan. Pebble Partnership has proposed no plan at all. Yet EPA's preemptive veto process would require Pebble Partnership to defend the plan that EPA has proposed. That plan would never receive the necessary permits, and envisions inadequate engineering. The ultimate plan proposed by PLP would differ materially from the one put being evaluated by the EPA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: June 25, 2014.

By: _____
Ronald W. Thiessen

8

**CERTIFICATE OF SERVICE**

I certify that on this 19th day of November, 2014, I electronically filed a copy of the foregoing using the CM/ECF system, which will electronically serve the attorneys of record in this case.

/s/   Mark Murphy