Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Timothy A. Work (*pro hac vice*)
Mark Murphy (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
*ryoerges@steptoe.com*
*twork@steptoe.com*
*mmurphy@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, | |
| Plaintiff, | **SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"** |
| vs. | |
| ENVIRONMENTAL PROTECTION AGENCY, *et al.* | **CIVIL ACTION NO. 3:14-cv-00171-HRH** |
| Defendants. | |
| / | |

# I. Introduction

Defendants' Reply, Docket No. 107, raises a new point that they never advanced previously—that EPA's actions must be "accorded a presumption of regularity," *id.* at 6, such that the Court should wholly disregard Plaintiff's claim that the so-called "lengthy and meaningful involvement," *id.* at 2, that EPA purportedly permitted Plaintiff to have in the § 404(c) proceedings *and* in the Bristol Bay Watershed Assessment was pretextual. Contrary to Defendants' argument, however, the "presumption of regularity" applies only when there have been no alleged procedural irregularities.[1] *See Yates v. Aurora Loan Servs., LLC*, No. C-11-00695, 2011 WL 2429376, at *5 (N.D. Cal. June 13, 2011) (dismissing action because "Plaintiffs have not made any allegations of procedural irregularities to overcome the presumption of regularity"). This case is all about procedural irregularities—violations of the Federal Advisory Committee Act, which sets forth procedures meant to guarantee openness, transparency, public participation, fair balance, and unbiased proposals in connection with the work of advisory committees. The presumption of regularity has no place in a case in which federal officials have consistently behaved in a manner that is wholly inconsistent with due process and fair dealing or in a case in which an agency's claim that it has remained open and even-handed regarding its decision on a critical issue is patently untrue and belied by the record. In that regard, nothing that the EPA officials allegedly did in this case should enjoy any presumption of regularity. In short, Plaintiff's allegations are more than sufficient to show that Plaintiff was injured by the

---

[1] Furthermore, a plaintiff need not present evidence at the pleading stage to overcome the presumption; allegations alone are sufficient. *See Shambour v. Carver County*, Civ. No. 14-566, 2014 WL 3908334, at *4 n.3 (D. Minn. Aug. 11, 2014) (rejecting "presumption of regularity" defense at pleadings stage because the presumption "certainly does not merit dismissing the case before [Plaintiff] has had an opportunity to discover" evidence to overcome the presumption); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (although Secretary of Transportation's decision "is entitled to a presumption of regularity," "that presumption is not to shield his action from a thorough, probing, in-depth review"), *overturned on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *accord Sensible Traffic Alts. & Res., Ltd. v. Fed. Transit Admin.*, 307 F. Supp. 2d 1149, 1169 (D. Haw. 2004).

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 1

lack of *genuine* participation in EPA's § 404(c) proceeding and that the "lengthy and meaningful involvement" that Plaintiff supposedly had in that proceeding was a sham.

But, if there were any doubt about that, a new document, produced after Plaintiff filed its opposition papers—not by EPA but by the National Park Service in response to a recent FOIA request—conclusively shows that EPA intended to veto the mine all along. Moreover, this document, in conjunction with other documents that Plaintiff has obtained, establishes both that EPA had decided to proceed with a preemptive veto well before the Alaskan Tribes "petitioned" the agency and that EPA reached that decision only after engaging in secretive consultations with outside individuals and organizations (the very ones that eventually coalesced into the Anti-Mine Coalition) that have been vehemently opposed to any mining in the Bristol Bay Watershed. In short, by the time Plaintiff and other mine supporters were permitted to have their say, the fix was in, and nothing that Plaintiff could say or do would change the outcome. EPA's purportedly allowing Plaintiff to "participate" in the process, therefore, was no cure; it was a hollow gesture.

## II. EPA's Newly Produced "Options Paper"

Defendants' position in this case has consistently been that EPA was (and still is) open-minded about whether a § 404(c) veto is appropriate and that no decision had been made to proceed under § 404(c) until the Bristol Bay Watershed Assessment was completed. Plaintiff's FOIA requests have caused EPA to produce several documents that show, circumstantially and otherwise, that EPA's position is simply not supportable and that the agency's decision to proceed with a § 404(c) veto had been made well before the BBWA was completed (perhaps even before it was ever contemplated). Plaintiff has alleged precisely that in this case, and that is enough to show injury.

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency*, et al., Case No. 3:14-cv-00171-HRH
Page 2

Case 3:14-cv-00171-HRH   Document 110   Filed 03/16/15   Page 3 of 8

After Plaintiff filed its opposition to Defendants' motion to dismiss, however, the National Park Service, in response to a FOIA request, produced an email dated July 1, 2010, from EPA Region 10's Patricia McGrath to her EPA colleague Phil North to which a document entitled "Options for EPA Involvement in Mining Activity in the Bristol Bay Watershed June 8, 2010" is attached (Attached as Ex. 1 (July 1, 2010, email from P. McGrath to P. North)). After setting forth the background of the Pebble Mine controversy, the "Options Paper" lays out three alternative scenarios for invoking § 404(c): (1) wait until after Plaintiff submits its § 404 permit applications to initiate a § 404(c) proceeding, Options Paper at 3; (2) develop an "informal evaluation and record for potential 404(c) determination," *id*. at 5; and (3) initiate a § 404(c) proceeding immediately, without waiting for a permit application, *id*. at 6. The Options Paper, which had gone through a long and elaborate drafting process over the course of several months, does not expressly recommend which of these alternatives should be selected. But one thing is clear: the EPA officials involved had already made the decision that the Pebble Mine should be prohibited under § 404(c). Nowhere in the Options Paper does EPA even suggest that one of the options would be to approve a § 404 permit on terms that Plaintiff may seek. EPA, therefore, did not have an open mind on this issue. The officials responsible for initiating § 404(c) proceedings in Region 10 had made up their minds—a veto was going to happen at some point; the only question was when and how. Indeed, it is now clearer than ever that Phil North and his colleagues in Region 10's Aquatic Resources Unit were strongly in favor of the third option, acting immediately and before any permit application was submitted: "Waiting to make the determination does not seem necessary or a prudent use of anyone's resources." *Id*. at 5. (Of course, as it turns out, the third option is exactly what EPA selected, perhaps because, in the words of the Options Paper, it would (in contrast to the other options) "allow[] EPA to

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency*, *et al.*, Case No. 3:14-cv-00171-HRH
Page 3

Case 3:14-cv-00171-HRH   Document 110   Filed 03/16/15   Page 4 of 8

adequately quality control information that supports decision making." *Id*. at 7 (setting forth various "Pros").  Put succinctly, the die had been cast, and the BBWA and Plaintiff's "lengthy and meaningful involvement" were nothing more than window dressing—very expensive window dressing, to be sure, but window dressing just the same.

To make matters much worse, the record now shows something that was only suspected previously:  this Options Paper was shared with a member of the Anti-Mine Coalition, Jeff Parker (counsel for the tribes, Trout Unlimited, and the Alaska Independent Fishermen's Marketing Association), while it was being prepared, and, based on the information that EPA has produced to date,[2] it appears that Parker had substantial input into it.  For example, at the same time that EPA officials were commenting on the draft Options Paper, Parker sent an email to Region 10 lead attorney Cara Steiner-Riley and Phil North with the subject "options paper." (Attached as Ex. 2 (June 29, 2010, email from J. Parker to C. Steiner-Riley and P. North).)  Now that Plaintiff has the Options Paper to which Parker's email referred, the context of this email has become clear.  Either Steiner-Riley or North had previously provided a draft of the Options Paper to Parker for his comment, and his June 29, 2010, response was made to that request. Parker's advice and recommendations were then forwarded by North on the same day to EPA's Michael Szerlog, the text of which EPA redacted in the version produced under FOIA. (Attached as Ex. 3 (June 29, 2010, email from P. North to M. Szerlog).)  Later that same evening, Parker sent another email to North, with a subject line that reads "an idea."  Parker states that "you could separate options into 'procedural' options and 'substantive' options," and he attached a grid showing different outcomes for prohibiting and restricting metallic sulfide

---

[2] Many documents, such as the Options Paper, were withheld or heavily redacted by EPA under the "deliberative process" exemption to FOIA.  There will be an appropriate time to examine why EPA withheld a document based on the deliberative process exemption to FOIA when the lawyer overseeing the FOIA response—the same Steiner-Riley who was communicating in 2010 with outsiders about the Options Paper—knew with certainty that the document had been shared outside EPA.

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency*, *et al.*, Case No. 3:14-cv-00171-HRH
Page 4

mining and other activities depending on the location of nearby waterways and wetlands. (Attached as Ex. 4 (June 29, 2010, email from J. Parker to P. North).) On the very next evening, North sent an email to several of his EPA colleagues, attaching yet another draft of the Options Paper.[3] (Attached as Ex. 5 (June 30, 2010, email from P. North to EPA personnel)).) These emails, all obtained before any formal discovery in this case, not only support Plaintiff's allegations that the decision to proceed under § 404(c) was made long before Plaintiff's purportedly "lengthy and meaningful involvement" in the process, but they cement the claim that EPA was utilizing Parker, a lawyer to several members of the Anti-Mine Coalition Advisory Committee, on the agency's § 404(c) strategy in violation of FACA.

Defendants argue that none of EPA's back-room dealing with mine opponents matters, because Plaintiff was later given the chance to have "lengthy and meaningful involvement" in the process. That—and there is no other way to put it—is hogwash. The documents, and, in particular, the newly discovered Options Paper, now show conclusively that EPA's course had been definitively charted before Plaintiff was ever invited to the § 404(c) party. At that point, and with the benefit now of seeing these documents, it is apparent that whatever Plaintiff had to say would fall on deaf ears. The only ones whom EPA had any interest in listening to (and the ones that EPA listened to routinely) were the opponents of Pebble Mine, the same ones that eventually came together to form *de facto* federal advisory committees that EPA established or utilized to advise EPA on how to execute a preemptive veto strategy that, as is now clear, those groups helped to design. If that is not cognizable injury to Plaintiff sufficient to give it standing, then nothing is.

---

[3] There is a peculiar open and closed bracket—"[]"—in the "cc" line of this email that suggests that something was redacted or missing from this line.

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency*, et al., Case No. 3:14-cv-00171-HRH
Page 5

Case 3:14-cv-00171-HRH   Document 110   Filed 03/16/15   Page 6 of 8

### III.  Conclusion

Defendants fail to account for the highly unusual and, quite frankly, highly troubling nature of this case.  The manner in which EPA acted here was not how a federal agency regularly acts.  Any "presumption of regularity" that EPA and its officials might typically enjoy has no place here whatsoever, and the recently produced Options Paper clinches that point.  Defendants' motion should be denied.

| | |
|---|---|
| Dated March 16, 2015 | Respectfully submitted, |

/s/ Thomas Amodio
Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone:  (907) 222-7100
Facsimile:  (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Timothy A. Work (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
*ryoerges@steptoe.com*
*twork@steptoe.com*
*mmurphy@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone:  (202) 459-3599
Facsimile:  (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

SUR-REPLY TO ADDRESS DEFENDANTS' RELIANCE ON THE "PRESUMPTION OF REGULARITY"
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency*, et al., Case No. 3:14-cv-00171-HRH
Page 6

Case 3:14-cv-00171-HRH   Document 110   Filed 03/16/15   Page 7 of 8

## CERTIFICATE OF SERVICE

I certify that on this 16th day of March, 2015, I electronically filed a copy of Plaintiff's Sur-Reply to Address Defendants' Reliance on the "Presumption of Regularity" using the CM/ECF system, which will electronically serve counsel for Defendants, RICHARD L. POMEROY, STUART JUSTIN ROBINSON, BRAD P. ROSENBERG, and ROBIN F. THURSTON.

/s/ Timothy Work