IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


PEBBLE LIMITED PARTNERSHIP,   )
   )
             Plaintiff,   )
   )
       vs.   )
   )
ENVIRONMENTAL PROTECTION   )
AGENCY, et al.,   )
   )   No. 3:14-cv-0171-HRH
       Defendants.   )
_____)


O R D E R

Motion to Dismiss

Defendants move to dismiss plaintiff's amended complaint.[1] This motion is

opposed.[2] Oral argument was requested and has been heard.

Background

Plaintiff is Pebble Limited Partnership. Defendants are the Environmental

Protection Agency (EPA) and Gina McCarthy.

---

[1]Docket No. 96.

[2]Docket No. 104.

-1-

Plaintiff alleges that defendants formed three advisory committees to assist the EPA "in developing and implementing an unprecedented plan to assert EPA's purported authority under Section 404(c) of the federal Clean Water Act ... in a manner that will effectively preempt [p]laintiff from exercising its right through the normal permit process to extract minerals from the Pebble Mine deposit in Southwest Alaska."[3]  Plaintiff alleges that these three committees were formed in violation of the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16.

> FACA was born of a desire to assess the need for the numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government.  Its purpose was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature.

Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 445-46 (1989) (internal citations omitted).  FACA "imposes a number of requirements on advisory groups. For example, FACA requires that each advisory committee file a charter and keep detailed minutes of its meetings."  Id. at 446 (internal citations omitted).  "FACA also requires advisory committees to provide advance notice of their meetings and to open them to the public,"

_____

[3]First Amended Complaint for Declaratory and Injunctive Relief at 2, ¶ 3, Docket No. 95.

unless the agency head determines that there is a legitimate reason for the meetings to be closed.  Id.  "In addition, FACA stipulates that advisory committee minutes, records, and reports be made available to the public, provided they do not fall within one of the Freedom of Information Act's exemptions, and the Government does not choose to withhold them."  Id. at 446-47 (internal citations omitted).  "Advisory committees established by legislation or created by the President or other federal officials must also be fairly balanced in terms of the points of view represented and the functions they perform." Id. (citation omitted).

The three "committees" that plaintiff alleges defendants established or utilized in violation of FACA are identified by plaintiff as 1) the Anti-Mine Coalition, 2) the Anti-Mine Scientists, and 3) the Anti-Mine Assessment Team.  Plaintiff alleges that the Anti-Mine Coalition was formed in 2008 by the members of the Coalition but that at some point in 2009, it was "transformed into an advisory committee that was under the management and control of EPA."[4]  Plaintiff alleges that the Anti-Mine Coalition provided the EPA with "advice or recommendations on developing scientific support for the conclusion that Pebble Mine would cause unacceptable, adverse impacts on one or more of various

---

[4]Id. at 8-9, ¶¶ 33, 35 & 37.

resources, including fisheries, wildlife, municipal water supplies, or recreational areas."[5]

Plaintiff makes similar allegations as to the Anti-Mine Scientists.[6]

Plaintiff alleges that the Anti-Mine Assessment Team "consisted of members of EPA's 'Bristol Bay Assessment Team' (i.e., the BBAT)[7] and members of the IGTT[,]" which was the Intergovernmental Technical Team.[8] Plaintiff alleges that the "EPA established and utilized the Anti-Mine Assessment Team ... to research, discuss, collaborate on, and draft the" Bristol Bay Watershed Assessment (BBWA), which is "the sole basis for EPA's Section 404(c) action to block Pebble Mine."[9] Plaintiff also alleges that the IGTT by itself meets the definition of an advisory committee under FACA,[10] that the EPA established and utilized the IGTT, and that the IGTT provided the EPA with advice and recommendations about the BBWA.[11]

---

[5]Id. at 9, ¶ 39.

[6]Id. at 18-20, ¶¶ 81, 84, & 86-87.

[7]Plaintiff alleges that the BBAT included both federal employees and non-federal employee members.  Id. at 26, ¶ 121.

[8]Id. at 25, ¶¶ 116 & 118.

[9]Id. at 26, ¶ 120.

[10]Id. at 25, ¶ 117.

[11]Id. at 29-30, ¶¶ 141 & 143.

-4-

Plaintiff alleges that defendants violated FACA as to each of these three "commit-tees" because defendants did not, among other things, (1) prepare and file charters, (2) chair all the meetings, (3) publish notices of meetings, and (4) ensure that membership in the committees was fairly balanced.[12]

Plaintiff's First Amended Complaint contains four counts. In Count One, plaintiff asserts an APA claim based on allegations that defendants violated FACA in connection with the Anti-Mine Coalition. In Count Two, plaintiff asserts an APA claim based on allegations that defendants violated FACA in connection with the Anti-Mine Scientists. In Count Three, plaintiff asserts an APA claim based on allegations that defendants violated FACA in connection with the Anti-Mine Assessment Team and the IGTT subgroup. In Count Four, plaintiff asserts a claim for injunctive relief. In its prayer for relief, plaintiff seeks declarations that defendants violated FACA and the APA with respect to the Anti-Mine Coalition, the Anti-Mine Scientists, and the Anti-Mine Assessment Team.[13] Plaintiff also seeks an order "directing [d]efendants to release to the public all materials, including all documents and communications, related to the activities of" the three groups.[14] And, plaintiff requests that the court enjoin the EPA "from using and/or relying

---

[12]Id. at 34-35, ¶ 169; 37, ¶ 186; & 40, ¶ 211.

[13]Id. at 41-42.

[14]Id. at 42.

-5-

in any way upon the BBWA" and "from issuing Section 404(c) restrictions, at least until it ceases to utilize the illegal" advisory committees, "legally constitutes the" advisory committees "under FACA, and thereafter follows all FACA requirements[.]"[15]

Defendants now move to dismiss plaintiff's First Amended Complaint.

<u>Discussion</u>

In its First Amended Complaint, plaintiff aptly bases the court's jurisdiction on 28 U.S.C. § 1331 and the APA.[16] "[C]ourts ... have determined that the FACA does not create a private right of action because there is no evidence of Congressional intent to confer a private remedy for FACA violations." <u>Freedom Watch, Inc. v. Obama</u>, 807 F. Supp.2d 28, 32 (D.D.C. 2011); <u>see also</u>, <u>Colo. Environmental Coalition v. Wenker</u>, 353 F.3d 1221, 1234-1235 (10th Cir. 2004) ("neither the FLPMA nor the FACA contains a private right of action for those seeking to enforce the procedural requirements attending the creation and operation of federal advisory committees"); <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 736 F. Supp. 2d 24, 30 (D.D.C. 2010) ("the court holds that the FACA does not provide the plaintiff with a private right of action"); <u>Int'l Brominated Solvents Ass'n v. Amer. Conference of Governmental Indus. Hygienists, Inc.</u>, 625 F. Supp. 2d 1310, 1320 (M.D. Ga. 2008) ("while FACA creates the limits placed on advisory committees, it does not confer

---

[15]<u>Id.</u>

[16]<u>Id.</u> at 3, ¶ 8.

on anyone a private right of action"); <u>Utah Ass'n of Cntys. v. Bush</u>, 316 F. Supp. 2d 1172, 1194 (D. Utah 2004) (FACA "provide[s] no private right of action to an aggrieved party"). Because there is no private right of action under FACA, parties may bring a claim for FACA violations under the APA. <u>Judicial Watch, Inc.</u>, 736 F. Supp. 2d at 30-31; <u>see also</u>, <u>Int'l Brominated Solvents Ass'n</u>, 625 F. Supp. 2d at 1320 ("Although Plaintiffs do not have a cause of action that arises under FACA, they are nevertheless entitled to enforce FACA's substantive requirements through the judicial review provisions of the APA").

Defendants first move to dismiss plaintiff's First Amended Complaint pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, arguing that plaintiff does not have standing to bring its FACA-based claims and that plaintiff does not have standing to obtain a use injunction as to the BBWA. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack," such as defendants make here, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u> "To resolve a factual attack, 'the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations.'" <u>Wood v. City of San Diego</u>, 678 F.3d 1075, 1083 n.8 (9th Cir. 2012) (quoting <u>Safe Air For Everyone</u>, 373 F.3d at 1039).

-7-

"To establish Article III standing, a plaintiff must demonstrate that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Natural Resources Defense Council v. Jewell, 749 F.3d 776, 782 (9th Cir. 2014). "One who challenges the violation of 'a procedural right to protect his concrete interests can assert that right without meeting all the normal standards' for traceability and redressibility." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 n.7 (1992)). "Such a litigant need only demonstrate that he has a procedural right that, if exercised, could protect [his] concrete interests and that those interests fall within the zone of interests protected by the statute at issue." Id. at 783 (citation omitted).

Plaintiff alleges that its procedural rights have been injured by defendants' failure to comply with FACA and that this failure led to the flawed and bias BBWA. Defendants argue, however, that plaintiff's alleged injury has been redressed because plaintiff has had extensive opportunities for contemporaneous involvement in the development of the BBWA. Defendants support this argument with the declaration of Richard B. Parkin, "the EPA Region 10 Management Lead for the Bristol Bay project," who outlines plaintiff's contacts with the EPA, beginning in 2003.[17]

---

[17]Docket No. 98.

This argument is essentially a harmless error argument. Defendants are not arguing that plaintiff has not suffered any injury but rather that "[a]ny FACA-related harm that [plaintiff] purportedly suffered ... was remedied by [defendants'] open and transparent process[.]"[18] "'An agency may rely on harmless error only when its mistake is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.'" Northwest Resource Information Center, Inc. v. Northwest Power and Conservation Council, 730 F.3d 1008, 1019 (9th Cir. 2013) (quoting Sagebrush Rebellion, Inc. v. Hodel, 790 F.2d 760, 765 (9th Cir. 1986)). This is a defensive argument that is properly raised during the merits portion of a case, rather than in a Rule 12(b)(1) motion. See United States v. Johnson, 632 F.3d 912, 921 (5th Cir. 2011) (quoting Save Our Heritage, Inc. v. F.A.A., 269 F.3d 49, 56 (1st Cir. 2001) ("'[T]he likelihood and extent of impact are properly addressed in connection with the merits' in a harmless error analysis"); Idaho Farm Bureau Federation v. Babbitt, 900 F. Supp. 1349, 1364 (D. Idaho 1995) (court first determined that plaintiffs had standing to bring FACA-based claims and then turned to the merits of the case, during which it concluded that the plaintiffs were not entitled to relief for FACA violations in part because they had actively participated in agency proceedings).

As for whether plaintiff has standing, FACA accords plaintiff the procedural rights that plaintiff alleges it has been denied. Id. at 1364. Exercise of those rights could protect

---

[18]Memorandum of Law in Support of Defendants' Motion to Dismiss at 20, Docket No. 97.

plaintiff's concrete interest in the mineral development rights to the Pebble Deposit. And, plaintiff's interest falls within FACA's zone of interest. One of the purposes "of the FACA is 'to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings and biased proposals.'" Id. (quoting Public Citizen, 491 U.S. at 453). Plaintiff's alleged injury, that defendant's FACA violations led to a biased report, i.e., the BBWA, plainly falls within FACA's zone of interest. Thus, plaintiff has standing to bring its FACA-based APA claims and to seek injunctive relief for defendant's alleged violation of the FACA.[19]

Defendants next argue that plaintiff's first amended complaint should be dismissed pursuant to Rule 12(b)(6). "Rule 12(b)(6) authorizes courts to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "To avoid dismissal, the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] plaintiff must 'allege sufficient factual matter ... to state a claim to relief that is plausible on its face.'" OSU Student Alliance v. Ray, 699 F.3d 1053, 1061 (9th Cir. 2012) (quoting Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 721 (9th Cir. 2011)). The court "'consider[s] only allegations contained in the

_____

[19]The scope of any permanent injunctive relief to which plaintiff might be entitled is a question for another day.

pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'"[20] <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (quoting <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007)).  The court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  <u>Id.</u> at 900.

"FACA does not apply to every entity whose views may be sought or considered by an agency—vast numbers of private organizations express their views to regulators; rather, it applies only to advisory committees or their equivalent 'established or utilized by one or more agencies.'"  <u>Town of Marshfield v. F.A.A.</u>, 552 F.3d 1, 5-6 (1st Cir. 2008) (quoting 5 U.S.C. app. 2 § 3(2)(C)).  "[A]n advisory panel is 'established' by an agency only if it is actually formed by the agency[.]"  <u>Byrd v. U.S. E.P.A.</u>, 174 F.3d 239, 245 (D.C. Cir. 1999).  An advisory committee is "utilized" by an agency if it is "under the actual management or control of the agency."  <u>Town of Marshfield</u>, 552 F.3d at 6.  In addition, FACA only applies "if the committee is established, managed, or controlled for the purpose of obtaining advice or recommendations for the federal government."  <u>Sofamor Danek Group, Inc. v. Gaus</u>, 61 F.3d 929, 936 (D.C. Cir. 1995).  The committee must "render advice

_____

[20]In deciding defendants' Rule 12(b)(6) motion, the court has not considered any of the exhibits submitted in connection with plaintiff's motion for a preliminary injunction or any exhibits submitted in connection with defendants' Rule 12(b)(1) motion.  The court has only considered the allegations in plaintiff's First Amended Complaint.

-11-

or recommendations[] as a group, and not as a collection of individuals." Association of American Physicians and Surgeons, Inc. v. Clinton, 997 F.2d 898, 913 (D.C. Cir. 1993).

As for the Anti-Mine Coalition, plaintiff has failed to state a plausible claim that defendants established this "committee" but plaintiff has stated a plausible claim that defendants "utilized" this "committee." Plaintiff has alleged that the EPA set the agendas for the meetings with this committee,[21] that EPA personnel chaired numerous meetings with the Anti-Mine Coalition,[22] that "EPA personnel ... routinely initiated and requested follow-up meetings with the Anti-Mine Coalition,"[23] that EPA personnel allowed Anti-Mine Coalition members access to EPA meetings and briefings,[24] and that the "EPA solicited the views of the Coalition members and actively organized with them in the interest of obtaining advice or recommendations for the Agency"[25] These allegations are sufficient to make plaintiff's claim that defendants "utilized" the Anti-Mine Coalition plausible.

---

[21]First Amended Complaint for Declaratory and Injunctive Relief at 10, ¶ 41, Docket No. 95.

[22]Id. at ¶ 45.

[23]Id. at ¶ 46.

[24]Id. at 12, ¶ 55.

[25]Id. at 13, ¶ 56.

Defendant argues, however, that plaintiff's Anti-Mine Coalition claim is implausible because this group did not provide group advice, but rather individual advice. Plaintiff has alleged that "[t]he Anti-Mine Coalition provided EPA with group advice and recommendations through white papers, memos, and presentations to EPA. EPA personnel also co-drafted certain memos with the Anti-Mine Coalition members."[26] Although plaintiff has alleged several examples to support this conclusory allegation, defendants argue that plaintiff's examples show that the members of this alleged Anti-Mine Coalition were providing individual advice to the EPA, not group advice. But, whether the memos and emails in plaintiff's examples involve individual advice or group advice is a factual dispute that the court cannot resolve on a Rule 12(b)(6) motion to dismiss.

As for the Anti-Mine Scientists, plaintiff has failed to allege a plausible claim that defendants established this "committee" but plaintiff's allegations that defendants "utilized" this "committee" are plausible. Plaintiff has alleged that EPA personnel chaired meetings with the Anti-Mine Scientists,[27] that "EPA officials frequently requested that some or all of the same core group of Anti-Mine Scientists be in attendance for meetings" with

---

[26]Id. at 14, ¶ 64.

[27]Id. at 20, ¶ 91.

-13-

the EPA,[28] that the EPA set the agenda for meetings with the Anti-Mine Scientists,[29] and that EPA "set the agenda for the Anti-Mine Scientists" in terms of the research they were providing to the EPA.[30]  And, plaintiff has adequately alleged that this "committee" was providing group advice to the EPA.[31]

As for the Anti-Mine Assessment Team, defendants argue that plaintiff's claim that the IGTT is a federal advisory committee in its own right is not plausible.  Defendants contend that the IGTT was composed of "representatives from State and Federal Government Agencies and from Tribal Governments...."[32]  Pursuant to Section 204 of the Unfunded Mandates Reform Act of 1995 (UMRA), "meetings ... held exclusively between Federal officials and <u>elected</u> officers of State, local, and tribal governments (or their designated employees with authority to act on their behalf) acting in their official capacities" are  exempt from the requirements of FACA as long as their "meetings are solely for the purposes of exchanging views, information, or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental responsibilities or administration."

---

[28]<u>Id.</u> at ¶ 92.

[29]<u>Id.</u> at 22, ¶ 100.

[30]<u>Id.</u> at ¶ 99.

[31]<u>Id.</u> at 19-20, ¶¶ 85 & 92.

[32]<u>Id.</u> at 30, ¶ 147.

2 U.S.C. § 1534(b) (emphasis added).  As plaintiff points out, however, the UMRA exemption only applies if the state officials are <u>elected</u> officials or their designated representatives.  Whether the state officials involved in the IGTT fall within the parameters of the UMRA is a factual dispute that cannot be resolved on a Rule 12(b)(6) motion to dismiss.  And contrary to defendants' contention, plaintiff's allegations that the IGTT provided the EPA with group, rather than individual, advice,[33] are adequate.  It is plausible that FACA applies to the IGTT and that the IGTT meets the definition of an advisory committee.

Defendants next argue that the members of the BBAT were all either contractors or SEE members, none of whom are subject to FACA.  There is authority that stands for the proposition that FACA does not apply to government contractors.  <u>See</u> <u>Public Citizen</u>, 491 U.S. at 462 (noting that the legislative history for FACA indicates that "[t]he Act does not apply to persons or organizations that have contractual relationships with Federal agencies"); <u>Tucson Rod and Gun Club v. McGee</u>, 25 F. Supp. 2d 1025, 1030 (D. Ariz. 1998) ("the Court finds that this Count should be dismissed as to the report by Glen Shumsky because FACA does not apply to government contractors").  But, there is also authority to the contrary.  <u>See</u> <u>Heartwood, Inc. v. U.S. Forest Service</u>, 431 F. Supp. 2d 28, 35 (D.D.C. 2006) (holding that a group of contractors was subject to FACA in part because the group

_____

[33]<u>Id.</u> at 30-31, ¶¶ 146-150.

-15-

"was assembled for the single purpose of drafting the ecological assessment to inform the USFS's policy-making"). The presence of contractors on the BBAT does not mean that plaintiff has failed to state a plausible FACA-based claim as to the Anti-Mine Assessment Team.

Moreover, plaintiff has not alleged that the Anti-Mine Assessment Team was comprised solely of contractors. Plaintiff has alleged that some of the members of the Team were SEE participants. The SEE program is an EPA program which allows the EPA to hire retired or unemployed older Americans to provide "technical assistance ... for projects of pollution prevention, abatement, and control." 42 U.S.C. § 4368a(a). Defendants may be correct that FACA should not apply to SEE participants. But, plaintiff has alleged that the Team was composed of EPA contractors, who may be subject to FACA, SEE participants, and the members of the IGTT, to which FACA might also apply. Accepting plaintiff's allegations as true, it is plausible that the Anti-Mine Assessment Team was subject to FACA.

Although defendants do not raise this argument, plaintiff has failed to state a claim in Count Four of its First Amended Complaint. In Count Four, plaintiff asserts a claim for injunctive relief. "An injunction is a remedy, not a separate claim or cause of action. A pleading can, as [plaintiff's First Amended Complaint] does here, request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for

injunctive relief is inappropriate." Jensen v. Quality Loan Service Corp., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).

Finally, defendants argue that plaintiff's First Amended Complaint should be dismissed because it violates Rule 8. "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that each claim in a pleading be supported by 'a short and plain statement of the claim showing that the pleader is entitled to relief....'" Landers v. Quality Communications, Inc., 771 F.3d 638, 640 (9th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)). Defendants complain that plaintiff's First Amended Complaint contains irrelevant, redundant, and contradictory allegations. Defendants contend that plaintiff's First Amended Complaint has been "written more as a press release" and is "prolix in evidentiary detail" and that such a complaint "fails to perform the essential functions of a complaint." McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996).

Plaintiff's First Amended Complaint is lengthy and does contain irrelevant and redundant allegations and unnecessary factual details. But rather than dismissing the First Amended Complaint, the court will excuse defendants from answering the following paragraphs of plaintiff's First Amendment complaint: paragraphs 2-7 (irrelevant introductory allegations), paragraphs 14-28 (irrelevant statutory background allegations and allegations about plaintiff's FOIA case); paragraphs 51-54 (unnecessary factual detail); paragraphs 58-63 (unnecessary factual detail); paragraphs 68-69 (unnecessary factual

detail); paragraph 75 (irrelevant allegation); paragraphs 106-107 (unnecessary factual detail); and paragraph 112 (irrelevant allegation).

<u>Conclusion</u>

Defendants' motion to dismiss is granted in part and denied in part. Those portions of plaintiff's FACA-based claims in Counts One and Two which are based on allegations that defendants "established" the Anti-Mine Coalition and the Anti-Mine Scientists are dismissed with prejudice. Plaintiff's Count Four is also dismissed with prejudice. Defendants are excused from answering certain paragraphs in plaintiffs' First Amended Complaint as set out in detail above. Defendants' motion to dismiss is otherwise denied.

DATED at Anchorage, Alaska, this 4th day of June, 2015.

/s/ H. Russel Holland
United States District Judge

-18-