Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Errol R. Patterson (*pro hac vice*)
Brigida Benitez (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
*ryoerges@steptoe.com*
*epatters@steptoe.com*
*bbenitez@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>vs.<br><br>ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP**<br><br>**CIVIL ACTION NO.**<br>**3:14-cv-00171-HRH** |

## I.    INTRODUCTION

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and Local Rule 37.1, Plaintiff Pebble Limited Partnership ("Pebble" or "Plaintiff") respectfully moves for an order compelling non-parties Alaska Conservation Foundation ("ACF"), its former Program Director, Sam Snyder ("Snyder"), Bristol Bay Regional Seafood Development Association ("BBRSDA"), and its former Executive Director, Robert Waldrop ("Waldrop"), to respond to subpoenas properly served on them. Plaintiff has identified ACF, Snyder, BBRSDA, and Waldrop (collectively, the "Subpoenaed Parties") as members of the Anti-Mine Coalition FAC who were directly involved in numerous meetings and other substantial interactions with EPA concerning the Pebble Mine Project and EPA's § 404(c) proceedings, including providing consultation and advice to EPA in opposition to the mine.  (*E.g.,* Second Am. Compl. ("SAC") ¶¶ 31, 32, 58, 59, 104, 109.)

Plaintiff's two requests on each of the Subpoenaed Parties[1] seek the following documents:

---

[1]    Plaintiff's original subpoenas served on ACF and Snyder were broader in scope.  However, following the parties' meet and confer on August 25, 2015, Plaintiff agreed to narrow the subpoenas to the two requests set out in the text.  (Ex. 1.)  On September 3, 2015, ACF and Snyder filed a Motion to Quash the subpoenas.  The movants erroneously assert that the original document requests are at issue.  (*See* Mon-Parties ACF and Dr. Samuel D. Snyder's Mem. of Law. in Supp. of Joint. Mot. to Quash Pl.'s Subpoenas at 2, Dkt. No. 160.)  They are not; rather, the narrowed requests as set forth here are the only requests for the Court's consideration.  *See, e.g.*, *Rosales v. FitFlop USA, LLC*, No. 11CV0973-W (KSC), 2012 WL 6641877, at *2, *4 (S.D. Cal. Dec. 20, 2012); *Fed. Trade Comm'n v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 WL 251449, at *5 (D. Kan. Jan. 26, 2011); *Finkelstein v. Guardian Life Ins. Co. of Am.*, No. C07-1130CRB(BZ), 2008 WL 2095786, at *1 (N.D. Cal. May 14, 2008); *Hayes v. Compass Grp. USA, Inc.*, 202 F.R.D. 363, 365 (D. Conn. 2001); *Sheldon v. Vermonty*, 204 F.R.D. 679, 688 (D. Kan. 2001); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 602-04 (C.D. Cal. 1995).

(continued)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 1

1. Communications with EPA relating to: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) the Bristol Bay Watershed Assessment; (d) the Proposed Determination; (e) the Pebble Mine Project; (f) Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010; and

2. Documents relating to meetings or communications in connection with various named parties (included in an attachment to the subpoenas) concerning: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) EPA's actions regarding the Bristol Bay Watershed Assessment; (d) EPA's actions regarding the Proposed Determination; (e) EPA's actions regarding the Pebble Mine Project; (f) EPA's actions regarding Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010.

(*See* Exs. 1, 2 and 3.)

The Subpoenaed Parties object to producing any documents or to appearing for depositions unless compelled to do so. (Exs. 4-7, and 1, 8 and 9.) The Subpoenaed Parties also advance three arguments:

1. that discovery of non-parties is not permitted in a Federal Advisory Committee Act ("FACA") case, unless, perhaps, there is no other source for the information sought[2];

2. that Plaintiff must first exhaust discovery from EPA before seeking discovery from non-parties[3]; and

---

For the sake of efficiency, Plaintiff also asks that the Court consolidate the briefing schedule on this motion and ACF and Snyder's Motion to Quash such that Plaintiff's opposition to that motion and ACF and Snyder's opposition to this motion would become due on the same day.

[2]   (*See* Ex. 6 at 1-2, 5, 6, 9, 11-12; Ex. 7 at 1-2, 5, 6, 9, 12.)
[3]   (*See* Ex. 4 at 2, 4, 5, 6, 7, 8, 9; Ex. 5 at 2, 4, 5, 6, 7, 8; Ex. 6 at 1, 3, 6-7, 9, 10, 13; Ex. 7 at 3, 6-7, 10, 13.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 2

3.  that responding to Plaintiff's discovery would infringe on the Subpoenaed Parties' First Amendment Rights[4].

None of these arguments should shield the Subpoenaed Parties from discovery. As set forth below, each of the Subpoenaed Parties was intimately involved in matters that are the subject of this lawsuit, and the documents and testimony sought go to the heart of what Plaintiff must prove to establish its claims under FACA.[5]

## II.     BACKGROUND

This Court is well aware of the facts alleged in this case. In brief, Plaintiff claims that Defendants initiated an unprecedented plan under § 404(c) of the federal Clean Water Act preemptively to prohibit mining of the Pebble Deposit, thus bypassing the normal permitting process and ensuring that Pebble's mining proposal would be defeated before it had even been submitted. (*See* SAC ¶¶ 3-4, Dkt. No. 133.)

In furtherance of its plan, EPA solicited and relied extensively on the advice and recommendations from opposition groups that constitute "federal advisory committees" ("FACs") under FACA but that failed to comply with the statutorily mandated procedures for such committees. (SAC ¶¶ 1-3, Dkt. No. 133.) Two of these committees—the Bristol Bay

---

[4]     (*See* Ex. 4 at 4, 5, 6, 7, 8, 9; Ex. 5 at 4, 5, 6, 7, 8; Ex. 6 at 2, 3, 4, 5, 9, 12; Ex. 7 at 4, 5, 9, 12.)

[5]     Although a ruling on this Motion affects only the Subpoenaed Parties, Plaintiff wishes to advise the Court that many similar subpoenas have been served on other non-parties that are alleged to have been members of one or more of the *de facto* federal advisory committees that are the subject of this case. Most all of these non-parties have raised similar (and sometimes identical) objections. Indeed, other core members of the *de facto* advisory committees are represented by the same counsel who have been making the same objections. On the whole, the non-parties have not been willing to produce any documents, regardless of Plaintiff's efforts to make accommodations during various meet-and-confer sessions.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 3

Assessment Team ("BBAT") and Intergovernmental Technical Team ("IGTT") (collectively, the Anti-Mine Assessment Team FAC)—were established and utilized by EPA to prepare the Bristol Bay Watershed Assessment ("BBWA"), the sole documentary support for EPA's § 404(c) Proposed Determination to veto the Pebble Mine. The other two FACs—the Anti-Mine Coalition and the Anti-Mine Scientists—were comprised of representatives of various environmental organizations, activists, and Native Alaskan tribal members, whom EPA utilized to obtain advice and recommendations in furtherance of its preemptive veto.

In collaboration with the *de facto* FACs, EPA prepared the BBWA—what Plaintiff claims is a flawed and plainly biased assessment of hypothetical mining activities in the Bristol Bay Watershed, which the agency then used as the principal basis for commencing administrative proceedings under § 404(c). (SAC ¶¶ 4-5, Dkt. No. 133.)

In addition to commencing discovery on Defendants, Plaintiff also served subpoenas for documents and deposition testimony on the Subpoenaed Parties (and others similarly situated) who were members of or otherwise closely connected to the *de facto* advisory committees in key ways.

III. **ARGUMENT**

    A. **The Subpoenas Seek Information That Is Plainly Relevant To Plaintiff's FACA Claims.**

"The Federal Rules of Civil Procedure favor liberal discovery." *Alaska Stock, LLC v. Pearson Educ., Inc.*, No. 3:11-CV-00162-TMB, 2013 WL 5524128, at *1 (D. Alaska Sept. 11, 2013) (quoting and citing *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)); *Epstein v. MCA*,

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 4

54 F.3d 1422, 1423 (9th Cir. 1995); Fed. R. Civ. P. 26(b)(1)).  Under Rule 26, a party is entitled to discovery "'regarding any nonprivileged matter that is relevant to any party's claim or defense.'"  *Alaska Stock*, 2013 WL 5524128, at *1 (quoting Fed. R. Civ. P. 26(b)(1)).  Relevant information need not be admissible if the discovery appears "'reasonably calculated to lead to the discovery of admissible evidence.'"  *Id.* (citation omitted).

The reason for the breadth of federal discovery is that "'wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.'"  *Id.* (quoting *Shoen*, 5 F.3d at 1292; *Epstein*, 54 F.3d at 1423).  *See also Shoen*, 5 F.3d at 1292 ("This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." (citing *Hickman v. Taylor,* 329 U.S. 495, 507 (1947))).

The scope of discovery sought from non-parties pursuant to Rule 45 is the same as under Rule 26(b).  *See* Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.").  Where one from whom discovery is sought fails to produce documents in response to a request, the party seeking discovery may move to compel a response.  *See United States v. CNA Fin. Corp.*, No. A98-285 CV (JWS), 2006 WL 528201, at *1 (D. Alaska Mar. 3, 2006).  Unless the party resisting discovery can establish the grounds for a legitimate objection, the discovery sought should be compelled.  *See Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-CV-01385-JCM-PAL, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011).

Here, in its Order on Defendants' Motion to Dismiss, this Court laid out the legal framework for this case and, accordingly, the contours of permissible discovery. The Court ruled that Plaintiff "has stated a plausible claim that defendants 'utilized'" both the Anti-Mine Coalition and Anti-Mine Scientists advisory committees. (Order at 12, Dkt. No. 128). "Plaintiff has alleged that the EPA set the agendas for the meetings with this committee, that EPA personnel chaired numerous meetings with the Anti-Mine Coalition, that 'EPA personnel . . . routinely initiated and requested follow-up meetings with the Anti-Mine Coalition,' that EPA personnel allowed Anti-Mine Coalition members access to EPA meetings and briefings, and that the 'EPA solicited the views of the Coalition members and actively organized with them in the interest of obtaining advice or recommendations for the Agency'." (*Id*. (footnotes omitted).) Likewise, "Plaintiff has alleged that EPA personnel chaired meetings with the Anti-Mine Scientists, that 'EPA officials frequently requested that some or all of the same core group of Anti-Mine Scientists be in attendance for meetings' with the EPA, that the EPA set the agenda for meetings with the Anti-Mine Scientists, and that EPA 'set the agenda for the Anti-Mine Scientists' in terms of the research they were providing to the EPA. And, plaintiff has adequately alleged that this 'committee' was providing group advice to the EPA." (*Id*. at 13-14 (footnotes omitted).)

This Court also ruled that Plaintiff has adequately pled that EPA established or utilized the Anti-Mine Assessment Team, consisting of EPA's Bristol Bay Assessment Team and Intergovernmental Technical Team. (*Id*. at 16.)

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 6

Case 3:14-cv-00171-HRH    Document 163    Filed 09/08/15    Page 7 of 21

In its Order, the Court also identified areas where Plaintiff must discover evidence to sustain its burden. With regard to whether EPA "utilized" the FACs within the meaning of FACA, the Court held that "[a]n advisory committee is 'utilized' by an agency if it is 'under the actual management or control of the agency.' In addition, FACA only applies 'if the committee is established, managed, or controlled for the purpose of obtaining advice or recommendations for the federal government.' The committee must 'render advice or recommendations[] as a group, and not as a collection of individuals.'" (Order at 11-12, Dkt. No. 128 (citations omitted).) With regard to providing group advice to EPA, the Court noted that "whether the memos and emails in plaintiff's examples involve individual advice or group advice is a factual dispute . . . ." (Order at 13, Dkt. No. 128.)

Plaintiff claims that the Subpoenaed Parties are among the core outside advisory committee members whose activities are at the very heart of the case (*e.g.*, SAC ¶ 31, Dkt. No. 133), and their communications both with EPA and with other key committee members are relevant to Plaintiff's claims and likely to lead to the discovery of other admissible evidence. ACF and Snyder, the former Director of its Bristol Bay Watershed and Fisheries Protection Campaign, are dedicated to conservation efforts. (*See* SAC ¶¶ 31-32, 104, 109, Dkt. No. 133.) BBRSDA and Waldrop, its former Executive Director, are devoted to preserving the salmon fishing industry in the Bristol Bay region. (*See id.* ¶¶ 31-32.) Each of the Subpoenaed Parties was a member of and intimately involved in the FACs that EPA either established or utilized to obtain advice or recommendations for its Section 404(c) strategy. (*See id.* ¶¶ 31-32, 104, 109.)

As revised, Pebble's document requests sought two categories of documents that pertain directly to the allegations in the Second Amended Complaint.  The first category seeks communications between the Subpoenaed Parties and EPA concerning the Pebble Mine proceedings and related events.  The second category seeks communications with other specified individuals named in the complaint regarding the same topics, specifically as they related to EPA activities.  (*See* Exs. 1-3.)

The relevance of these materials is beyond dispute.  FACA, by requiring open meetings, public participation, and balanced membership, guards against the Executive Branch's use of "advisory committees" that act outside the public's view and thus risk influencing federal decision-makers with biased proposals guided by the agendas of special interests.  Pebble contends that the EPA violated FACA by failing to follow these statutory requirements.  (SAC ¶¶ 14-24, Dkt. No. 133.)  Defendants assert that the FACs identified by Pebble are not "advisory committees" established or utilized by the EPA within the meaning of FACA.  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Mot. to Dismiss") at 26-27, Dkt. No. 97.)  The parties' briefings on the Defendants' motion to dismiss make clear that this threshold issue—whether FACA is triggered—is the focal point of this litigation.  (*See* Mot. to Dismiss, Dkt. No. 97, and Pl.'s Opp'n to Mot. to Dismiss, Dkt. No. 104.)

One important factor bearing on the analysis is the interaction between and among alleged committee members, which provides insight into the group nature of the committee's advice and recommendations.  Indeed, *de facto* collections of individuals may become "advisory committees" under FACA when they become amenable to a federal agency's management and

control.  *See, e.g.*, *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 915 (D.C. Cir. 1993) (the advisory committees in the instant case were no mere "collection of individuals who do not significantly interact with each other" which might be a circumstance that does not trigger FACA); *Ctr. for Auto Safety v. Cox*, 580 F.2d 689, 693-94 (D.C. Cir. 1978) (stating that "it makes no difference whether the committee is . . . a pre-existing group. . . .  [W]e find nothing in the regulatory scheme of the Act to suggest that Congress intended to exclude organizations fitting the definition of advisory committee from coverage simply because they have an existence independent of the agency utilizing them.").

Not only are the documents sought relevant to Pebble's allegations, but they are also relevant to defenses raised by Defendants in this case and thus fall within the scope of discovery for that reason as well.  Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .").  Defendants acknowledge that EPA "sought information directly from [the Anti-Mine Coalition and the Anti-Mine Scientists FACs] because they possessed certain expertise," that members of these two FACs "provided information to EPA in the form of 'scientific papers, presentations, research, data, and overall strategy and recommendations,'" and that the "information was useful to the EPA and assisted the EPA in developing the BBWA [Bristol Bay Watershed Assessment]." (Parkin Decl. ¶¶ 40-42, Dkt. No. 72; Mot. to Dismiss at 19-22, Dkt. No. 97.)  They argue, however, that Pebble has no valid FACA claim because it and other members of the public were treated no differently than the mine opponents and had the same opportunity to influence EPA's process.  Plaintiff seeks from the Subpoenaed Parties documents that would be probative of

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 9

whether these individuals and entities in fact had greater access to EPA's strategic advisors and decision-makers, as Plaintiff contends. These same documents also could support Plaintiff's claim that the BBWA was the kind of biased proposal that FACA was intended to prevent. In this respect as well, the requested materials are relevant and should be produced.[6]

**B.      The Subpoenaed Parties' Legal Objections Are Without Merit.**

The Subpoenaed Parties' three arguments—that non-party discovery should not be permitted in a FACA case; that Plaintiff should seek discovery first from Defendants; and that Plaintiff's discovery infringes on their First Amendment rights—are legally insupportable.

1.      **Non-Party Discovery Is Permitted in a FACA Case**.

The Subpoenaed Parties argue that Plaintiff should not be permitted to conduct discovery on non-parties because, in a FACA case, discovery must be limited to the federal agency that allegedly violated FACA. They rely on an opinion from the District Court for the District of Columbia, *Wyoming v. United States Department of Agriculture*, 208 F.R.D 449 (D.D.C. 2002),[7] in which a plaintiff sought discovery from various non-parties in connection with its claims that

---

[6]      The Bristol Bay Regional Seafood Development Association and Waldrop also object on the ground that no discovery is necessary because the Court need only look to the administrative record in a case under the Administrative Procedure Act. (Ex. 6 & Ex. 7 at General Objection 2 ("[J]udicial review of such claims (even when alleging FACA violations) are [sic] limited to the administrative record…"); *see also*, Ex. 8 at 1, suggesting discovery of relevant materials in the FACA case properly is limited to the agency.) As even Defendants acknowledge, this is not a typical APA case, and there is no administrative record to be reviewed. *See* Scheduling & Planning Conference Report at 7, Dkt. No. 135; *see also* Scheduling and Planning Order at 3, Dkt. No. 137 ("Although this is essentially an Administrative Procedure Act case, the parties appear to be in agreement that substantial discovery may be necessary due to the nature of the claims made by plaintiff based upon the Federal Advisory Committee Act.").

[7]      ACF first raised this objection in the discovery conference with Pebble's counsel on August 18, 2015. (*See* Ex. 1)

the Department of Agriculture had violated FACA. *Id.* at 451. Rejecting the plaintiff's

arguments for why the discovery was relevant, the D.C. trial court held:

> As explained previously, the D.C. Circuit has instructed that the government alone can establish an advisory committee under [FACA] and defines "utilized" so narrowly as to admit only those groups into the FACA statutory scheme that are under strict management or control of the government agency. Thus, the non-party witnesses correctly point out that the requested documents fall outside the scope of discovery needed for Wyoming to prove its claim that the government violated the FACA. In short, the documents are irrelevant to the plaintiff's claim.

*Id.* at 454 (citations omitted).

Not only is the D.C. court's decision not binding on this Court, but it also does not

support the sweeping proposition, urged by the Subpoenaed Parties here, that non-party

discovery is impermissible in FACA cases. Rather, the D.C. court's decision rests on an overly

restrictive view of what is relevant to the question whether an advisory committee had been

"utilized" within the meaning of FACA—a view that has not been recognized in the Ninth

Circuit and that is inconsistent with what this Court has held to be relevant to the question

whether the Anti-Mine Coalition and Anti-Mine Scientists FACs were "utilized" by EPA. In its

Order on EPA's Motion to Dismiss, this Court described what made Plaintiff's allegations that

EPA "utilized" the Anti-Mine Coalition and Anti-Mine Scientists committees plausible,

including, for example, that "'EPA personnel . . . routinely initiated and requested follow-up

meetings,'" allowed FAC members "access to EPA meetings and briefings," "'solicited the

views of the . . . members and actively organized with them'", and "'set the agenda for the Anti-

Mine Scientists' in terms of the research they were providing to the EPA." (Order at 11-13, Dkt.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO
THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION
FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT
ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 11

No. 128.)  Evidence of each of these aspects of utilization might be reasonably found in the

Subpoenaed Parties' files.

Indeed, another federal court in a case that is related to *Wyoming* decided the issue quite

differently.  In *Wyoming v. United States Department of Agriculture*, Case No. 01-CV-086-B (D.

Wyo. Oct. 17, 2001), ECF No. 114 (Ex. 10.), the district court compelled discovery from several

environmental organizations that allegedly were active participants in federal advisory

committees under FACA:

> [I]n determining whether an advisory committee was "established" or "utilized"
> by the government, as required to find a FACA violation, evidence of government
> action is not necessarily confined to the direct communications between the
> government and the alleged advisory committee.  Rather, discoverable evidence
> pertaining to alleged FACA violations is just as likely to be uncovered by
> examining communications not involving the government, particularly when the
> government is alleged to have "utilized" an advisory committee.

*Id*. at 49-50.  The court concluded: "Hence, the information regarding Defendant-Intervenors'

inter-group communications is critical to the Plaintiff's determination of whether those groups

were 'utilized' by the Federal Defendants.  In fact, the information goes right to the heart of the

matter at hand."  *Id.* at 50.  That reasoning applies with equal force here.

Moreover, applying *Wyoming* to prevent non-party discovery would be wholly

inconsistent with authority holding that non-party discovery is liberally allowed, absent valid

objections.  *See, e.g.*, *Crawley v. Kings Cty.*, No. 1:13–cv–02042–LJO–SAB, 2015 WL 2128310,

at *1, *8-9 (E.D. Cal. May 6, 2015) (granting motion to compel non-party discovery, over

objections); *Lo v. Fed. Nat'l Mortgage Assoc.*, No. 2:12–cv–01411–GMN–VCF, 2013 WL

2558614, at *2-6 (D. Nev. June 10, 2013) (same); *Realtime Data, LLC v. MetroPCS Texas, LLC*,

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO
THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION
FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT
ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 12

No. C 12–80130 LHK (PSG), 2012 WL 3727304, at *2 (E.D. Cal. Aug. 28, 2012) (same); *Martinez v. City of Fresno*, Nos. 1:06cv0233 OWW GSA, 1:06cv1851 OWW GSA, 2009 WL 1575186, at *1-6 (E.D. Cal. Jun 2, 2009) (same); *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 85-87 (D. Mass. 2008) (same); *Whitlow v. Martin*, 263 F.R.D. 507, 511-512 (C.D. Ill. 2009) (same).

Documents sought here by the subpoenas are, as demonstrated above, relevant and discoverable. Plaintiff alleges that Defendants utilized *de facto* federal advisory committees of which the Subpoenaed Parties were members and actively involved. Discovery into their activities with Defendants and other participants who assisted Defendants "goes right to the heart of the matter at hand." *Wyoming*, slip op. at 50.

### 2. Pebble Is Not Required to Exhaust Discovery from EPA Before Seeking it From Non-Parties.

The Subpoenaed Parties also argue that Plaintiff's subpoenas are *per se* burdensome because Defendants purportedly have the same documents, and Plaintiff should, therefore, be required to obtain them from Defendants before seeking them from other sources. This argument fails, too.

As an initial matter, nothing in Rule 45 requires that a party exhaust discovery from another party before pursuing similar discovery from a non-party. *See In Re Mushroom Direct Purchaser Antitrust Litig.*, Master File No. 06-0620, 2012 U.S. Dist. LEXIS 12319, at *35 (E.D. Pa. Jan. 31, 2012) ("A plaintiff seeking to discover information from a third-party is not required to compel defendants to produce potentially overlapping information before seeking any third-party discovery."). Second, the cases do not support any such rule of "exhaustion." *See, e.g.,*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 13

*Foder v. Doe*, No. 2:10-CV-0798-RCJ (VPC), 2011 WL 1629572 (D. Nev. Apr. 27, 2011) (granting leave to conduct non-party discovery); *Zynga Game Network Inc. v. Williams*, No. CV-10:01022 JF (PVTx), 2010 WL 2077191 (N.D. Cal. May 20, 2010) (same); *Behrend*, 248 F.R.D. at 85-87 (granting motion to compel non-party discovery, over objections); *Whitlow*, 263 F.R.D. at 511-512 (same).

Indeed, not only is discovery from non-parties permissible under the federal rules, but "[t]he burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed." *Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966); *see also Berwick v. Hartford Fire Ins. Co.*, No. MC 12-00055-PHX-FJM, 2012 WL 2856117, at *2 (D. Ariz. July 11, 2012) (same) (quoting *Goodman*). In broad terms, "[a] subpoena is unduly burdensome where it seeks to compel production of documents regarding topics unrelated to or beyond the scope of litigation." *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-03393-YGR (JSC), 2014 WL 6706873, at *2 (N.D. Cal. Nov. 25, 2014) (citing *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 813–14 (9th Cir. 2003)).

The relevance of the discovery sought by Plaintiff here is clear, and the Subpoenaed Parties do not attempt in earnest to argue otherwise. Nor do they specify the nature or extent of the burden that they would have in responding. Rather, they argue merely that, as a general matter, Plaintiff could obtain precisely the same materials from Defendants. The Subpoenaed Parties' argument in this regard rests on an inaccurate proposition. There is no reason to assume, as the Subpoenaed Parties do, that all of the documents sought necessarily would be in the hands

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 14

of the EPA.[8]  For example, the Supreme Court has noted that a committee is "utilized" when it is "amenable to . . . strict management by agency officials."  *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 441 (1989).  The Subpoenaed Parties offer no explanation why indicia of "strict management" would only be reflected in formal communications with the EPA, as opposed to in internal memoranda or correspondence that only the Subpoenaed Parties would possess.

By way of illustration, Plaintiff believes (based on FOIA documents produced thus far) that there are likely to be notes, emails, or other documents memorializing offline communications with EPA officials, internal documents reflecting the Subpoenaed Parties' approach to or strategy with respect to EPA's Pebble Mine activities, and documents reflecting the Subpoenaed Parties' participation on the FACs.  These documents may reflect the agency's "management and control" over the FACs on which the Subpoenaed Parties served and would be unlikely to be found in Defendants' files.  In addition, now that it is well known that some of EPA's Pebble Mine business was conducted through personal emails of EPA employees, communications from or to the FAC members may not be in EPA's files at all.

---

[8]  The Subpoenaed Parties argue that Pebble is estopped from claiming otherwise by a point made in its reply in support of a motion for expedited discovery to the effect that certain materials were in EPA's "exclusive" possession.  (Ex. 6 at 2; Ex. 7 at 2; Ex. 8 (suggesting the relevant materials in the FACA case are in the custody of the EPA).) The context of Pebble's argument was in seeking expedited discovery from EPA, in advance of critical depositions.  (*See* Plaintiff's Reply to Opposition to Motion for Expedited Discovery Under Fed. R. Civ. P. 26(d)(1), 30(a)(2)(A)(iii), 30(b)(2) & 34(b)(2)(A), Dkt. No. 58.)  Not only does the Subpoenaed Parties' objection take Pebble's statement out of context, but it extrapolates one statement—which applied to a specific category of documents obviously and only within EPA's possession at a point in the case when discovery was not open and EPA was the only source of information pertinent to the preliminary injunction—to *all* documents possessed by the EPA, regardless of the subject matter to which they relate.

Moreover, the subpoenas seek communications among the alleged FAC members, which, by necessity, would not be in EPA's files. As alleged in the Complaint, members of the various FACs began to coordinate and collaborate amongst themselves beginning in at least 2008, before EPA took the reins in and around 2009. (*See* SAC ¶¶ 33-37, 81-86, 121, Dkt. No. 133.) The composition and dealings of these collectives, before EPA's involvement transformed them into FACA "advisory committees," would not appear in EPA materials. Plus, one permissible purpose of permitting even potentially "duplicative" discovery is to allow a party to test the veracity of another party's assertions. *See In Re Mushroom Direct Purchaser Antitrust Litig.*, 2012 U.S. Dist. LEXIS 12319, at *34-36 (plaintiff could require non-party to produce documents to both supplement party-defendant's production and also to test the veracity of its assertions).

Simply put, the Subpoenaed Parties cannot show that the materials sought in the subpoenas may be more easily and less expensively obtained from Defendants, or, more importantly, that Plaintiff must somehow determine whether that is true before seeking discovery from non-parties.

### 3. The Discovery Requests Do Not Infringe on the Subpoenaed Parties' First Amendment Right to Free Association.

Lastly, the Subpoenaed Parties object to the subpoena because "it invades the First Amendment privileges and privacy rights of ACF and its contributors, staff, and supporters." (Ex. 4 at *e.g.*, 4; *see also* Ex. 5 at *e.g.*, 4; Ex. 6 at *e.g.*, 5; Ex. 7 at *e.g.*, 5.) Again, generic objections with no further explanation do not satisfy a party's obligation to respond to a

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 16

subpoena.  *See Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13-CV-1946-LAB (WVG), 2014 WL 3388871, at *2 (S.D. Cal. July 9, 2014).  In the Ninth Circuit, the

> party asserting [a First Amendment] privilege "must demonstrate . . . a prima facie showing of arguable first amendment infringement [which] requires [the party] to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights."

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1160-61 (9th Cir. 2010) (omission in original) (quoting *Brock v. Local 375, Plumbers Int'l Union of Am.,* 860 F.2d 346, 349–50 (9th Cir. 1988)).  Only once the objecting party makes this showing will the burden shift to the discovering party to demonstrate "'an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association.'"  *Perry*, 591 F.3d at 1161 (omissions and alteration in original) (citation omitted).  While a First Amendment privilege "may be asserted with respect to specific requests for documents raising these core associational concerns, it is equally clear that the privilege is not available to circumvent general discovery."  *Wilkinson v. FBI*, 111 F.R.D. 432, 436 (C.D. Cal. 1986).

"Circumventing general discovery" is precisely the purpose for which the Subpoenaed Parties invoke the First Amendment, as they have asserted the First Amendment as an independent basis on which to refuse to produce *any* documents.  Aside from their nonspecific reference to "First Amendment activities," they make no attempt to explain what such activities entail or why they would be privileged, nor do they make the specific factual showing of

"chilling" required to shift the burden. The Subpoenaed Parties point to no "'harassment, membership withdrawal, or discouragement of new members, or . . . other consequences which objectively suggest an impact on, or chilling of, the members' associational rights.'" *Perry*, 591 F.3d at 1160-61 (citation omitted). Their vague reference to First Amendment rights provides no basis on which to exempt the Subpoenaed Parties from producing any documents under the subpoenas. Moreover, any First Amendment right would not be applicable to most of the requested documents, even if it were implicated.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its motion to compel compliance with the subpoenas served on the Subpoenaed Parties; order them to produce documents responsive to the subpoenas within 30 days of the Court's order; and direct Snyder and Waldrop to appear for depositions on dates to be agreed to by counsel.

Dated: September 8, 2015 Respectfully submitted,

<u>/s/ Thomas Amodio</u>
Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone:  (907) 222-7100
Facsimile:  (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Errol R. Patterson (*pro hac vice*)
Brigida Benitez (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
*ryoerges@steptoe.com*
*epatters@steptoe.com*
*bbenitez@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone:  (202) 459-3599
Facsimile:  (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO
THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION
FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT
ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 19

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 8th day of September 2015, I electronically filed a copy of the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP** using the CM/ECF system, which will electronically serve counsel for Defendants **RICHARD L. POMEROY**, **STUART JUSTIN ROBINSON**, **BRAD P. ROSENBERG**, and **ROBIN F. THURSTON**, and counsel for non-party witnesses **JEFFREY M. FELDMAN**, and **CHESTER DEMOTT GILMORE**

And I certify that a copy of the foregoing was served by regular U.S. mail on:

**JOSHUA A. LEVY**
Cunningham Levy LLP
1250 Connecticut Ave., #2 00
Washington, D.C. 20036
*Counsel for Robert Waldrop and Bristol Bay Regional Seafood Development Association*

/s/ Mark F. Murphy
Mark F. Murphy

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES TO THIRD-PARTY SUBPOENAS UNDER FED. R. CIV. P. 45 TO ALASKA CONSERVATION FOUNDATION, SAM SNYDER, BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION, AND ROBERT WALDROP
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.,* Case No. 3:14-cv-00171-HRH
Page 20