UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

PEBBLE LIMITED PARTNERSHIP,

        Plaintiff,

    v.

ENVIRONMENTAL PROTECTION
AGENCY, et al.,

        Defendants.

CASE NO. 3:14-cv-00171-HRH

## NON-PARTIES ALASKA CONSERVATION FOUNDATION'S AND DR. SAMUEL D. SNYDER'S CONSOLIDATED OPPOSITION TO PLP'S MOTION TO COMPEL[1]

## I.   INTRODUCTION

On September 3, Alaska Conservation Foundation ("ACF") and Dr. Samuel Snyder ("Dr. Snyder") filed a motion to quash extraordinarily broad subpoenas served on them by Pebble Limited Partnership ("PLP"). On September 8, 2015, PLP filed a motion to compel and on September 21, 2015, PLP belatedly filed an opposition to the motion to quash. In the interest of efficiency, ACF and Dr. Snyder submit this consolidated reply to PLP's opposition to the motion to quash, and opposition to PLP's motion to compel. For the reasons discussed in their original motion, and as

_____

[1] Consolidated with ACF's and Snyder's Reply to PLP's Opposition to ACF's and Snyder's Motion to Quash Subpoenas.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 1
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

1  further explained below, the motion to quash filed by ACF and Dr. Snyder should be granted and

2  PLP's motion to compel should be denied.

3      There is substantial overlap between PLP's motion to quash and its motion to compel. In

4  both pleadings, PLP minimizes the production burden and First Amendment implications of its

5  subpoenas, and it exaggerates the importance of its requests to its case. PLP claims that the

6  information sought in the subpoenas, and the "many similar subpoenas [that] have been served on

7  other non-parties," all goes to the "heart of what Plaintiff must prove."[2] This claim is quite

8  remarkable, given that PLP appears to have issued subpoenas duces tecum to *59 third party entities*

9  and subpoenas to take depositions of, and obtain documents from, *12 third party deponents*.[3] The

10  non-parties from whom PLP believes it requires such far-reaching discovery to prove its claim

11  include, among many others:

12
13      • Natural Resources Defense Council
14      • National Wildlife Federation
15      • Alaska Center for the Environment
16      • Trustees for Alaska
17      • Dallas Safari Club
18      • National Council of Churches Eco-Justice Program
19      • United Fisherman of Alaska
20      • Wild Salmon Center

21  _____

[2]   Memorandum in Support of Plaintiff's Motion to Compel Responses to Third-Party
22  Subpoenas ("Motion to Compel") at 1 n.1.

23  [3]   *See* Notice of Taking Oral Depositions and Serving Subpoenas *Duces Tecum* (July 15, 2015)
   (Ex. A); Second Notice of Taking Oral Depositions and Serving Subpoenas *Duces Tecum* (Aug. 20,
24  2015) (Ex. B); Third Notice of Taking Oral Depositions and Serving Subpoenas *Duces Tecum* (Sept.
   2, 2015) (Ex. C). After serving more than 50 largely identical subpoenas on non-profit organizations
25  and their employees throughout the country, Pebble then feigns surprise that these organizations and
   entities do not all have separate counsel and that it has received similar objections from different
26  third parties.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 2
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 2 of 21

1  • Alaska Independent Fishermen's Marketing Association
2  • Center for Science in Public Participation (CSP2)
3  • The Gordon and Betty Moore Foundation
4  • Pew Charitable Trusts
5  • Tiffany & Co.
6  • Patagonia
7  • University of Washington
8  • University of Alaska
9  • Trillium Asset Management Corp.

The only apparent connection between the varied entities and individuals that PLP has targeted is that they are not parties to the instant lawsuit and most have, at some point in time, taken a public stance in opposition to the Pebble Mine Project. But the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App. II, §§ 1–16, "does not apply to every entity whose views may be sought or considered by an agency—vast numbers of private organizations express their views to regulators" every day.[4] PLP's scorched earth approach to third-party discovery seems transparently designed to intimidate opponents of the Pebble Mine Project and enable PLP to scavenge widely through their communications and activities. PLP's efforts are certain to (if not expressly intended to) result in the chilling of open communications among organizations engaged in entirely lawful, proper, and constitutionally-protected activities.

## II.  BACKGROUND

PLP served ACF with a subpoena on July 16, 2015, and served Dr. Snyder, a former ACF program officer, with a subpoena on July 27, 2015. Both subpoenas contained eight separate document requests, and Dr. Snyder's subpoena also required his appearance at a testimonial

---

[4]  *Town of Marshfield v. Fed. Aviation Admin.*, 552 F.3d 1, 5–6 (1st Cir. 2008).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 3
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 3 of 21

deposition. After ACF and Dr. Snyder served timely objections, counsel engaged in a meet and confer discussion and subsequently exchanged correspondence concerning the defects in PLP's subpoenas. Thereafter, presumably in recognition that its original subpoenas were breathtakingly overbroad, PLP proposed to "narrow" its document discovery to:

1. Communications with EPA relating to: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) the Bristol Bay Watershed Assessment; (d) the Proposed Determination; (e) the Pebble Mine Project; (f) Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010; and

2. Documents relating to meetings or communications in connection with *more than 30* named organizations and individuals (included in an attachment to the subpoenas) concerning: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) EPA's actions regarding the Bristol Bay Watershed Assessment; (d) EPA's actions regarding the Proposed Determination; (e) EPA's actions regarding the Pebble Mine Project; (f) EPA's actions regarding Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010.[5]

In response, ACF and Dr. Snyder advised that PLP's proposed revisions to its subpoenas were inadequate because the subpoenas remained impermissibly overbroad and continued to require production of irrelevant documents. They also continued to pose a substantial and unwarranted burden on ACF and Dr. Snyder, actually *broadening* the scope of the production requirements in several respects.[6] PLP's revised subpoenas continue to request all communications between ACF and an exhaustive list of individuals and entities over a non-defined period of time. After the parties were unable to resolve ACF's and Dr. Snyder's concerns regarding the PLP subpoenas, ACF and

---

[5]    *See* August 25, 2015, Letter from PLP to ACF, attached as Exhibit D.

[6]    *See* August 27, 2015, Letter from ACF to PLP, attached as Exhibit E.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 4
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 4 of 21

Dr. Snyder filed a motion to quash the subpoenas on September 3, 2015.[7]  In response, PLP filed a motion to compel on September 8, 2015, and two weeks later belatedly filed an opposition to the motion to quash.  ACF and Dr. Snyder respond below to the arguments raised by PLP in both pleadings.

## III.  ARGUMENT

### A.  Legal Standard

PLP describes the uncontroversial principal that the Federal Rules of Civil Procedure favor liberal discovery, but then incorrectly suggests that this principal applies equally to third-party discovery under Rule 45.[8]  To the contrary, the federal rules empower district courts to impose

---

[7]     *See* Docket No. 159.

[8]     Motion to Compel at 5, 12-13.  None of the cases cited by PLP supports the proposition that non-party discovery is liberally allowed.  To the contrary, these highly fact-driven decisions illustrate district courts allowing discovery only after carefully considering the burden on the third-party target.

In *Estate of Crawley v. Kings Cnty.*, the third-party resisting discovery engaged in egregious tactics, including "bad faith" unilateral revisions of the joint statement of issues submitted to the court, and "'hide and go seek' games during discovery", sufficient for the district court to grant the motion to compel and order sanctions. No. 1:13-CV-02042-LJO-SA, 2015 WL 2128310, at *10 (E.D. Cal. May 6, 2015).

In *Lo v. Fed. Nat. Mortgage Ass'n*, the Court granted the plaintiff's motion to compel after narrowing the plaintiff's request on a third party property manager from the ambiguous "the Property" to a single property that was the subject of the action and where the third-party made no showing of harm from the request. No. 2:12-CV-01411-GMN, 2013 WL 2558614, at *6 (D. Nev. June 10, 2013).

In *Realtime Data, LLC v. MetroPCS Texas, LLC*, the plaintiff voluntarily limited its demand on a third-party to exclude any documents it might otherwise obtain from a defendant, and the court allowed discovery only on two software programs manufactured by the third-party, which lay at the center of a patent dispute. No. C 12-80130 LHK PSG, 2012 WL 3727304, at *2 (N.D. Cal. Aug. 28, 2012).

In *Martinez v. City of Fresno*, the third-party government agencies' main objection was that they required a court order to release the pro-se plaintiff's records: the district court duly complied with this condition. No. 106CV0233OWWGSA, 2009 WL 1575186, at *6 (E.D. Cal. June 2, 2009).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 5
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 5 of 21

stricter limits on non-party discovery.[9]  Indeed, Rule 45 imposes an affirmative burden on parties

and attorneys to take steps to avoid imposing undue burden and expense on third-parties and directs

courts to enforce that duty and impose sanctions where appropriate.[10]  These additional protections

are warranted for entities and individuals that are not parties to the lawsuit.[11]

---

In *Behrend v. Comcast*, the court recognized that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." 248 F.R.D. 84, 85 (D. Mass. 2008).  However, it allowed discovery where the third-party media conglomerate's claims of financial hardship were "called into doubt at oral argument," the plaintiffs proposed a discovery plan that would mitigate hardship to the third-party at the third-party's option, and the plaintiffs' claims were of real public concern.  *Id.* at 86.

In *Whitlow v. Martin*, after noting that "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue," the court ordered discovery from a non-party where the information was "clearly relevant" and the non-party was the "most logical, and most convenient, source of [the] information. . . ."  263 F.R.D. 507, 511-512 (C.D. Ill. 2009).

[9]  *Eichler v. Sherbin*, 520 F. App'x 560, 562 (9th Cir. 2013)(citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)); *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. CV-12-08261-PCT-JAT, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014) ("To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure."); *Robert Half Int'l Inc. v. Ainsworth*, No. 14CV2481-WQH DHB, 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) ("The Ninth Circuit 'does not favor unnecessarily burdening nonparties with discovery requests,' and, as a result, '[n]on-parties deserve extra protection from the courts.'")(quoting *Kim v. Nuvasive, Inc.*, No. 11cv1370-DMS (NLS), 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011)); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

[10]  Fed. R. Civ. P. 45(d)(1); *see also Pers. Audio LLC v. Togi Entm't, Inc.*, 2014 WL 1318921, at *1 (N.D. Cal. Mar. 31, 2014) ("To determine whether a subpoena should be enforced, the Court is guided by both Rule 45, which protects a subpoenaed party from 'undue burden,' and Rule 26, which provides that the court must limit discovery if 'the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . .'").

[11]  *See Century Sur. Co. v. Master Design Drywall, Inc.*, 2010 WL 2231890, at *1 (S.D. Cal. Jun. 2, 2010) ("Underlying the protections of Rule 45 is the recognition that 'the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.'") (quoting *Dart Industries Co., Inc. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (1980)).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 6
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 6 of 21

1    A court is required to quash a subpoena where the subpoena subjects the recipient to undue

2    burden.[12]  In determining whether a subpoena imposes an undue burden, a court will consider "such

3    factors as relevance, the need of the party for the documents, the breadth of the document request,

4    the time period covered by it, the particularity with which the documents are described and the

5    burden imposed."[13]  As explained below, the Court should grant ACF's and Dr. Snyder's motion to

6    quash because the significant burden imposed by the subpoenas far outweighs PLP's claimed need

7    to obtain this discovery from ACF and Dr. Snyder.

8    **B.    The Subpoenas Seek Information That is not Relevant to PLP's FACA Claims or
           That Can Otherwise be Obtained from the EPA.**

9        PLP alleges that ACF and Dr. Snyder were members of an "Anti-Mine Coalition FAC" that

10   illegally provided EPA with support and research used to oppose the development of Pebble Mine.

11   What PLP neglects to acknowledge is that it invented and named the purported "Anti-Mine

12   Coalition FAC" and each of the other alleged FACs at issue in this lawsuit from whole cloth.  The

13   "Anti-Mine Coalition" does not exist in reality nor on paper and is simply an invention of PLP's

14   attorneys that is now being used to threaten and intimidate the many individuals, organizations,

15   Native groups, non-profit and non-governmental organizations who oppose development of Pebble

16   Mine.  PLP is correct that ACF and Dr. Snyder oppose the development of Pebble Mine.  It also is

17   correct that ACF and Dr. Snyder worked with other individuals and organizations to advocate

18   against development of Pebble Mine.  PLP even is correct that ACF and Dr. Snyder provided

19   information regarding the likely impacts of development of Pebble Mine to EPA.  That, of course,

20   would be equally true of a great number of individuals and entities, and true, as well, of PLP.

---

[12]    Fed. R. Civ. P. 45(d)(3)(A).

[13]    *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metropolitan Life Insur. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 7
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 7 of 21

However, PLP is entirely incorrect that any of these activities – or evidence of these activities – could have any bearing on whether EPA violated FACA.

What is at issue in the lawsuit between PLP and EPA is whether the alleged "Anti-Mine Coalition FAC" was "under the actual management or control of [EPA]."[14] As explained in ACF's and Dr. Snyder's motion to quash, the communications between ACF and other non-governmental organizations are not relevant to PLP's ability to make this showing. Rather, PLP's FACA claim depends on *EPA's* actions and communications. To the extent that EPA had any relevant communications with ACF or Dr. Snyder and relied on them, those communications will be contained within EPA's records and they can be (and have been) sought from EPA.[15] Forcing the disclosure of the internal communications and documents of dozens of individuals and entities engaged in entirely proper public interest advocacy, through communication with each other and with the government, will do nothing to either prove or disprove PLP's claims against EPA. It will, on the other hand, provide PLP with information that it can later use against its adversaries in the

---

[14]     *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, 12 WL 1980361, at *1 (N.D. Cal. June 1, 2012) (defining the "utilized" prong of FACA); *Town of Marshfield v. F.A.A.*, 552 F.3d 1, 6 (1st Cir. 2008). This Court allowed PLP to proceed on its claim that the EPA "utilized," but not "established" the "Anti-Mine Coalition." Docket 128 at 18.

[15]     PLP has admitted that the discovery it seeks is in the "exclusive possession" of the EPA when it suits PLP's purposes. In its Reply to Opposition to Motion for Expedited Discovery, PLP took the position that "the facts going to the 'established or utilized' requirements under FACA are in [EPA's] exclusive possession. . . ." Docket 64 at 3. In its Motion to Compel, PLP attempts to explain this admission away, ambiguously claiming that this point has been taken out of context and only "applied to a specific category of documents." Motion to Compel at 15, n.8. But the "specific category of documents" referenced by PLP are those "going to the 'established or utilized' requirements under FACA." These are in fact the only documents that matter after this Court limited PLP's claims to whether the EPA "utilized" the Anti-Mine Coalition and the Anti-Mine Scientists, and whether EPA either "established" or "utilized" the Anti-Mine Assessment Team. Docket 128 at 18.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 8
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 8 of 21

ongoing political and policy debate over Pebble Mine. This is not within the permitted scope of third-party discovery under the Federal Rules of Civil Procedure.

PLP claims that documents it obtained through Freedom of Information Act ("FOIA") requests to EPA demonstrate that ACF and Dr. Snyder were involved in "closed-door consultations" with EPA and other alleged FAC members. PLP is not entitled to pursue discovery from ACF and Dr. Snyder even if this mischaracterization of a handful of emails were true. But it is not. ACF and Dr. Snyder offer the following solely to prevent the court from laboring under a misapprehension of the facts as it reviews this matter. Like hundreds of other individuals and entities, both opposed to and supportive of Pebble Mine, ACF and Dr. Snyder provided comments and critique to EPA during the official public comment period for EPA's Watershed Assessment. All comments were publically filed. ACF and Dr. Snyder were offered the same level of access to EPA as was PLP and every other entity invested in the EPA process. No more, no less.

In its opposition, PLP alleges that two meetings between Dr. Snyder and the EPA, at which Dr. Snyder presented white papers prepared by ACF's science team, are evidence that the EPA "utilized" Dr. Snyder and ACF in violation of FACA. PLP presents a very distorted picture of the following facts.

First, the meetings were requested by ACF and Dr. Snyder, not by EPA.[16]

Second, PLP had the same access to EPA and, on information and belief, held many of its own meetings with EPA to discuss scientific and technical issues.[17]

---

[16] *See* Declaration of Samuel Snyder, Ph.D. in Support of ACF's Reply to PLP's Opposition to ACF's Motion to Quash Subpoena ("Snyder Decl.") at ¶¶ 5, 8, attached as Exhibit F.

[17] *Id.* at ¶ 4.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 9
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 9 of 21

Third, during and after the April 2012 meeting, ACF and Dr. Snyder presented white papers authored by ACF's science team to EPA. ACF independently, and without input or direction from the EPA, created these science teams in response to PLP's presentation of one-sided and inaccurate conclusions in its Environmental Baseline Document ("EBD") in February 2012.[18] ACF provided these same white papers to PLP directly, and the white papers became part of the public record of EPA's deliberations.[19]

Fourth, both PLP and ACF reviewed the work of the EPA-established independent peer review committee's critique of the Bristol Bay Watershed Assessment ("BBWA").[20] ACF's review was, in part, critical of the peer review committee's findings. This cuts against the allegation that EPA utilized ACF.[21]

Finally, it was ACF and Dr. Snyder—not EPA—that requested the April 2013 meeting.[22] In April 2013, as at all times in this process, PLP had the same opportunity as ACF to meet with the EPA.

The table below contrasts the fictional allegations PLP makes in its opposition to the motion to quash[23] with the reality:

///

---

[18]   *Id.* at ¶ 6.

[19]   *Id.*

[20]   *Id.* at ¶ 7.

[21]   *Id.*

[22]   *Id.* at ¶ 9.

[23]   *See* Plaintiff's Opposition to ACF's and Dr. Snyder's Motion to Quash Subpoenas ("Opp'n to Motion to Quash") at 2, Docket No. 165. The facts set forth in the chart below are established by the Declaration of Samuel Snyder, Ph.D. in Support of ACF's Reply to PLP's Opposition to ACF's Motion to Quash Subpoena (*see* fn. 15-22, *supra*).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 10
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 10 of 21

| PLP FICTION | FACT |
|---|---|
| *EPA arranged to meet with Dr. Snyder and other FAC members on April 18, 2012, regarding "coordinated science research related to the fisheries of Bristol Bay and their relation to the Bristol Bay Watershed Assessment."* | It was Dr. Snyder and the ACF science team, <u>not</u> the EPA that proposed a meeting in April of 2012. It was already known to all parties by the time Dr. Snyder met with EPA, that EPA was conducting a scientific review of the Pebble Mine project.<br><br>Dr. Snyder and the science team met with EPA to share their scientific review of PLP's EBD. The science team engaged in its review of Pebble's baseline data independently, and not at the instigation of the EPA. Pebble had the same access to EPA, it provided its own data to EPA and it engaged in meetings with EPA. |
| *In May 2012, EPA distributed the ACF team's criticisms of PLP's analyses to the Bristol Bay Assessment Team, stating that the reports were "the first batch of White Papers prepared by scientists working with the AK Conservation Foundation. As you recall from the meeting we had with them last month, they mentioned they were preparing these papers based on their review of portions of the Pebble EBD."* | The ACF science team conducted an independent review of PLP's EBD. EPA distributed the science team's white papers to its assessment team, just as it, presumably, distributed PLP's EBD, and the data and research provided by many parties during the public comment period. |
| *In June 2012, Snyder sent EPA additional criticisms of PLP's analyses from the ACF Team stating "I have attached two more EBD review white papers- seismic and hydrology. These got a bit delayed due to Watershed Assessment review work. We have two more on the way: Water Quality, Fisheries Escapement and PHABSIM. I should have the first two to you by the end of the week."* | These white papers, like those presented at the April meeting, were independently prepared by ACF's science team to critique PLP's EBD. ACF also provided the white papers to PLP. |

///

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 11
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 11 of 21

| | |
|---|---|
| *In December 2012, EPA distributed ACF's criticisms of the independent peer reviewers' comments on the draft Bristol Bay Watershed Assessment to the Bristol Bay Assessment Team.* | ACF's science team conducted its own review of the independent peer reviewers' finding – just as PLP did. Like PLP, ACF provided its comments to the EPA. |
| *In April 2013, EPA arranged for the Bristol Bay Assessment Team to meet again with Snyder and the ACF team to get their advice and recommendations on completing the BBWA. EPA's Fertik stated: "[t]hey will be coming to give us technical feedback on the revised Bristol Bay Assessment. They will address hydrology, geochemistry, the mine plans, the risk assessment, and fishery topics."* | Like the April 2012 meeting, ACF and Dr. Snyder requested the April 2013 meeting, not the EPA. Like PLP, ACF was allowed to meet with EPA to present its independently developed data. |

PLP's contention that third-party discovery against ACF and Dr. Snyder is essential to its ability to prove its claims against EPA is entirely without merit and no discovery should be allowed from non-parties ACF and Dr. Snyder.

**C.     Relevant Authority Does Not Support PLP's Request for Expansive Non-Party Discovery Under the Facts of This Case**

In *Wyoming v. U.S. Department of Agriculture*, the only published decision addressing the issue of non-party discovery in a FACA case, the District Court for the District of Columbia precluded third-party discovery. In that case, the court quashed a subpoena that parallels those issued by PLP to ACF and Dr. Snyder, holding that "all relevant documents would be in the hands of the federal defendants, and thus intrusion into the activities of the non-party witnesses is unwarranted and unnecessarily burdensome."[24]

---

[24]     208 F.R.D. 449, 454 (D.D.C. 2002).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 12
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

PLP does not attempt to distinguish the facts of *Wyoming*. Instead, PLP claims that ACF's reliance on the case is misplaced because the D.C. Circuit has taken a narrower view than have other courts of what evidence is relevant to the question of whether an advisory committee has been "utilized" within the meaning of FACA. But, PLP's claim about the D.C. Circuit's view of this issue is incorrect. The Ninth Circuit, citing to the D.C. Circuit, similarly has held that a nongovernmental group is "utilized" under FACA only when it is so "closely tied" to an agency as to be "amenable to strict management by agency officials."[25] In so holding, the Ninth Circuit cited to and relied on the same D.C. Circuit authority as did the *Wyoming* court.[26] PLP has not identified any court that has taken a "less narrow" view of third-party discovery in a FACA case.

PLP argues that the court should reject the D.C. Circuit's reasoning in *Wyoming* and instead rely on another case entitled *Wyoming v. U.S. Department of Agriculture* (*Wyoming II*) issued by the District Court for the District of Wyoming.[27] In *Wyoming II*, the court, applying a deferential standard, affirmed a magistrate judge's order compelling discovery in a FACA case from organizations alleged to have participated in an advisory committee. Neither the district court nor the magistrate judge in the quoted sections of his order explain the conclusion that communications not involving the government are relevant to whether the government utilized an advisory committee. PLP fails to disclose that the organizations in *Wyoming II* were defendant-intervenors,

---

[25]     *Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 905-06 (9th Cir. 1996) (quoting *Food Chem. News v. Young*, 900 F.2d 328, 332-33 (D.C. Cir. 1990))(finding that groups at issue were not "subject to the management, much less strict management, of federal agency officials.")

[26]     Compare *Aluminum Co. of Am.*, 92 F.3d at 905 (citing *Food Chem. News v. Young*, 900 F.2d 328, 332-33 (D.C. Cir. 1990)) with *Wyoming*, 208 F.R.D. at 453 (same).

[27]     Motion to Compel at 12-13 (citing 239 F.Supp.2d 1219, 1241-42 (D. Wyo. 2002), *vacated by* 414 F.3d 1207 (10th Cir. 2005)).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 13
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 13 of 21

1    *not* non-parties, and that there was no subpoena involved.  Having injected themselves as parties in

2    the case, the defendant-intervenors were not entitled to the same protections or analysis as is

3    afforded to non-parties.  Moreover, the *Wyoming II* case was subsequently vacated.[28]

4    PLP cites several other cases in support of its sweeping proposition that interaction "between

5    and among alleged committee members" is relevant to a FACA claim, but these cases are not on

6    point.[29]  In *Association of American Physicians and Surgeons, Inc. v. Clinton, et al.*, the court was

7    asked to address whether the First Lady, Hillary Clinton, was an "officer or employee" of the

8    government for purposes of Section 3(2) of FACA, and thus, whether her membership on the

9    President's Task Force on National Health Care Reform triggered FACA provisions.[30]  The court

10   did not suggest that the interaction among group members, separate from interactions with the

11   government, was critical to the determination of whether FACA was triggered.[31]  In *Center for Auto*

12   *Safety v. Cox*, the court considered whether the American Association of State Highway and

13   Transportation Officials ("AASHTO"), an organization composed of the heads of state

14   transportation departments, was utilized as an advisory committee within the meaning of FACA by

15   the Federal Highway Administration.[32]  The court held "only that when the Administrator in the

---

[28]    *Wyoming*, 414 F.3d at 1214.

[29]    Motion to Compel at 8-9, 15.

[30]    997 F.2d 898, 902 (D.C. Cir. 1993).

[31]    *See id.* at 913 (key inquiry is whether group "is asked [by the government] to render advice or recommendations, *as a group*, and not as a collection of individuals"); *Aluminum Co. of America v. NMFS*, 92 F.3d 902, 907 (9th Cir. 1996) ("[T]he discussion in *Association of Am. Physicians & Surgeons* simply points toward an answer to the question of whether an agglomeration of people is a committee at all, much less an advisory committee.  Once it is decided that the group is a conglomeration rather than an agglomeration one can decide if it is of the advisory type within the meaning of FACA.").

[32]    580 F.2d 689 (1978).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 14
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 14 of 21

course of developing regulations to govern the Federal-aid highway program discloses his proposed regulations to select groups and obtains their advice and recommendations, he utilizes those groups as advisory committees."[33] In all other circumstances, communication from AASHTO to the FHA did not fall within the gambit of FACA.[34] Nothing in the court's order suggests that communications between organizations and apart from the government is critical to a FACA analysis.[35]

Finally, PLP argues that it is entitled to seek the very same documents from non-parties ACF and Dr. Snyder as it is seeking from EPA because there is no requirement to "exhaust discovery."[36] To be clear, ACF and Dr. Snyder are not suggesting that there is an exhaustion requirement. However, the fact that documents are readily available from a party to litigation, standing alone, often is sufficient to quash a subpoena directed at a third-party.[37] None of the cases cited by PLP

---

[33]     *Id.* at 431.

[34]     In this context, the court found that pre-existing organizations were not excluded from the definition of an advisory committee under FACA simply because they have an existence independent of the agency utilizing them. *Id.*

[35]     PLP also cites to *Public Citizen v. United States Dep't of Justice* for the proposition that it is entitled to discovery into communications between organizations to determine whether these organizations were "amenable to . . . strict management by agency officials." 491 US 440, 457-58 (1989). But, in interpreting this phrase, both the D.C. Circuit and Ninth Circuit have held that the critical inquiry is how "closely tied" the organization is to an agency (and not some abstract concept of whether the organizations are willing to be controlled). *Aluminum Co. of Am.*, 92 F.3d at 905; *Food Chem. News v. Young*, 900 F.2d at 332-33. PLP fails to identify any case allowing discovery into communications among non-governmental organizations to demonstrate that such organizations were "amenable" to management by an agency. Indeed, it is difficult to imagine what such a communication would even look like.

[36]     *See* Motion to Compel at 13-14; Opp'n to Motion to Quash at 6-7.

[37]     *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014)(citing cases); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)("Moreover, these requests all pertain to defendant, who is a party, and,

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 15
CASE NO. 3:14-CV-00171-HRH

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 15 of 21

suggests otherwise; in each case, the district court ordered third-party discovery *only after* carefully balancing the party litigant's need against the burden on the third-party.[38]  For example, in *Whitlow v. Martin*, after noting that "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue," the court ordered discovery from a non-party where the information was "clearly relevant" and the non-party was the "most logical, and most convenient, source of [the] information. . . ."[39]

## D. The "Narrowed" Subpoenas are Still Extremely Broad and Impose an Undue Burden on ACF and Dr. Snyder

ACF and Dr. Snyder submitted with their motion to quash the declaration of Ann Rothe, which described in detail the extreme burden imposed by PLP's original subpoenas.  PLP suggests that its "narrowed" subpoenas cure any burden, but the revised subpoenas are similarly flawed.  The Supplemental Declaration of Ann Rothe confirms that PLP's revised subpoenas impose a similar burden.  By demanding communications with more than 30 organizations and individuals (including ACF itself) on seven topics, PLP's revised subpoenas would effectively place the same burden on

---

thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty KSA."); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993).

[38]     In *In Re Mushroom Direct Purchaser Antitrust Litig.*, the documents sought were "clearly relevant" to the plaintiffs' antitrust claims and the defendant had already produced potentially overlapping information – neither of which is the case here. No. 06-0620, 2012 WL 298480, at *4 (E.D. Pa. Jan. 31, 2012).  Under the exceptional facts of *Fodor v. Doe*, the court allowed the plaintiff to take extremely limited discovery from Google, a third-party that controlled the only information about the identity of the anonymous defendant who had posted defamatory statements on the Internet. No. 3:10-CV-0798-RCJ VPC, 2011 WL 1629572, at *6 (D. Nev. Apr. 27, 2011). Similarly, in *Zynga Game Network Inc. v. Williams*, the plaintiffs were allowed to obtain "narrow" discovery about the true owners of trademark infringing websites from the third-party web hosting companies. No. CV1001022JFPVT, 2010 WL 2077191, at *3 (N.D. Cal. May 20, 2010) The *Zynga* court, however, rejected the plaintiff's attempts to discover information about the customers of the defendant websites from the nonparties. *Id.*

[39]     263 F.R.D. 507, 511-512 (C.D. Ill. 2009).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 16
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
(206) 676-7001

ACF and Dr. Snyder as did its original subpoenas. PLP has simply substituted a longer list for a shorter one. The seven topics are broad enough to require that ACF search its archives for records of communications with all of the named individuals and entities, and any communications "related" to those communications. The revised subpoenas will still require a thorough review of all of ACF's records for the last seven or more years. ACF's records are not maintained in a way that would make identifying material responsive to PLP's new requests easier to find, organize, or disclose. ACF does not have the budget or staffing capacity to engage in a full-scale review of all of its communications with more than thirty individuals and entities to collect information that might be relevant to the seven topics.[40]

E.    **The Subpoenas Request Documents Protected from Disclosure by ACF's First Amendment Associational Rights.**

In their motion to quash, ACF and Dr. Snyder argued that forced disclosure of non-public communications between participants in the campaign to prevent permitting of the Pebble Mine, including communications among ACF staff and other campaign members formulating campaign strategy and messaging, would deter the exercise of activities protected by the First Amendment. ACF and Dr. Snyder cited the Ninth Circuit's decision in *Perry v. Schwarzenegger* for the proposition that "disclosure of internal campaign communications can have [a chilling] effect on the exercise of protected activities."[41]

PLP erroneously asserts that ACF and Dr. Snyder are claiming the First Amendment privilege extends to all documents sought in PLP's subpoenas. Given how spectacularly broad

---

[40]    Supplemental Declaration of Ann Rothe in Support of ACF's Reply to PLP's Opposition to ACF's Motion to Quash Subpoena, attached as Exhibit G.

[41]    591 F.3d 1147, 1162 (9th Cir. 2010); *see* Motion to Quash at 13-15.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 17
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

PLP's initial subpoenas were, that would have been a difficult argument to make. To the contrary, ACF and Dr. Snyder asserted that the First Amendment privilege protected against disclosure of "internal campaign communications."[42] PLP's revised subpoenas, like its original subpoenas, clearly seek this category of documents. Indeed, PLP explicitly states that it seeks "internal documents reflecting the Subpoenaed Parties' approach to or strategy with respect to EPA's Pebble Mine activities."[43]

PLP next argues that ACF and Dr. Snyder fail to make a prima facie showing that the First Amendment privilege applies to these documents. However, PLP acknowledges that ACF and Dr. Snyder submitted the Declaration of Ann Rothe, which explained that the compelled disclosure of non-public communications relating to ACF's Bristol Bay campaign will alter how such communications are made in the future. Ms. Rothe stated that organizations will be less willing to engage in free and open communications internally and with its grant recipients and conservation partners knowing that these communications may be disclosed to the very entities whose actions are being opposed.[44] Moreover, Ms. Rothe's description of the chilling effect of PLP's subpoena should be read against the backdrop of PLP's aggressive third-party discovery tactics – PLP has issued over 50 subpoenas in this case against organizations opposed to development of the Pebble Mine, and was recently rebuffed by the Alaska Supreme Court in its effort to obtain third-party discovery from ACF in another lawsuit in state court.[45]

---

[42]    Motion to Quash at 15.

[43]    Motion to Compel at 15.

[44]    Rothe Declaration, ¶ 14.

[45]    *See supra* Note 2; Motion to Quash at 2 n.3.

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 18
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

PLP attacks Ms. Rothe's affidavit as a "generalized objection[]," but the affidavit sets forth substantially the same prima facie case of chilling that the Ninth Circuit found to suffice in *Perry* with respect to compelled disclosure of internal campaign communications. The Ninth Circuit explained:

> Although the evidence presented by Proponents is lacking in particularity, it is consistent with the self-evident conclusion that important First Amendment interests are implicated by the plaintiffs' discovery request. The declaration creates a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression.[46]

This factual statement is adequate to find that ACF has made a prima facie showing that the First Amendment privilege applies to information sought by PLP.

Because the internal campaign communications sought by PLP's revised subpoenas are protected by the First Amendment privilege, PLP must demonstrate that this information "goes to the heart" of its claim and is "carefully tailored to avoid unnecessary interference with protected activities."[47] PLP does not even attempt to demonstrate that the information sought in its subpoenas meets this more demanding standard of relevance, or that its request for communications with 30 organizations and individuals on seven broad topics is somehow narrowly tailored. Because disclosure of internal campaign communications would chill ACF's First Amendment associational rights and these communications are not highly relevant to PLP's claims, the court should rule that ACF need not produce these communications.[48]

---

[46] *See Perry*, 591 F.3d at 1163.

[47] *Beinin v. Center for the Study of Popular Culture*, 2007 WL 1795693, at *3 (N.D. Cal. June 20, 2007).

[48] *See Wyoming*, 20 F.R.D at 454-55 (denying FACA plaintiff's motion to compel documents from non-party organizations as infringing organizations' First Amendment associational rights).

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 19
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 19 of 21

## IV. RELIEF SOUGHT

PLP's subpoenas seek information that is not relevant to their FACA claims against EPA, impose an undue burden and expense on ACF and Dr. Snyder, and seek internal campaign communications protected from disclosure by the First Amendment. ACF and Dr. Snyder respectfully request that the Court quash the subpoenas and order that they need not comply with PLP's requests set forth in the subpoenas. If any third-party discovery is permitted, ACF and Dr. Snyder request that the court issue an appropriate protective order, substantially narrowing the scope of production, and they request an opportunity to be heard on that issue.

DATED this 29th day of September, 2015.

By /s/Jeffrey M. Feldman

Jeffrey M. Feldman
ABA No. 7605029
Sara Kelly (*pro hac vice* application pending)
SUMMIT LAW GROUP PLLC
315 5th Avenue South, Suite 1000
Seattle, WA 98104
Telephone: (206) 676-7000
Facsimile: (206) 676-7001
jefff@summitlaw.com

William Wailand
ABA No. 1005033
2550 Denali Street Suite 1000
Anchorage, AK 99503
Telephone: (907) 868-8737
Facsimile: (907) 868-5676
wwailand@gci.com

Chester D. Gilmore
ABA No. 0405015
CASHION GILMORE
421 1st Avenue, Suite 247
Anchorage, AK 99501
(907) 222-7934
chester@cashiongilmore.com

*Attorneys for Alaska Conservation Foundation*

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 20
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 20 of 21

# CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-entitled action.

DATED this 29th day of September, 2015.

/s/Lauree Anne Lingenbrink
Lauree Anne Lingenbrink
*llingenbrink@summitlaw.com*

NON-PARTIES ALASKA CONSERVATION
FOUNDATION'S AND SAMUEL D. SNYDER'S
OPPOSITION TO PLP'S MOTION TO COMPEL - 21
CASE NO. 3:14-CV-00171-HRH

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
(206) 676-7001

Case 3:14-cv-00171-HRH   Document 181   Filed 09/29/15   Page 21 of 21