Michelle Sinnott (AK Bar. No. 1506049)
Brian Litmans (AK Bar No. 0111068)
Valerie Brown (AK Bar No. 9712099)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
msinnott@trustees.org
vbrown@trustees.org
blitmans@trustees.org

*Attorneys for Tim Troll*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, *et al.*,<br><br>          Defendants. | Case No. 3:14-cv-00171-HRH<br><br>**REPLY IN SUPPORT OF TIM TROLL'S MOTION TO QUASH NON-PARTY SUBPOENA**<br><br>**ORAL ARGUMENT REQUESTED PURSUANT TO LOCAL RULE 7.2**<br><br>**Fed. R. Civ. P. 45(d)(3); Fed. R. Civ. P 26(b)(2)(C)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 1

   I.   PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 26(B)(2)(C)(i), ANY RELEVANT
       COMMUNICATIONS WITH EPA MUST BE OBTAINED FROM EPA. ........................................ 2

         A.    There is Nothing Unlawful about Communicating with EPA on the
              Proposed Pebble Mine. ............................................................................. 2

         B.    If EPA has Discoverable Information, PLP Has a Duty to Obtain it from
              the Party to the Litigation before Seeking that Same Information from
              Non-Parties. ............................................................................................. 5

   II.  MR. TROLL'S INTERNAL COMMUNICATIONS ABOUT HIS EFFORTS AGAINST THE PEBBLE
       MINE ARE IRRELEVANT AND PROTECTED BY THE FIRST AMENDMENT. ............................... 8

         A.    Any Communications That Did Not Include EPA Are Not Relevant. ....... 9

         B.    Under the Standard in *Perry v. Schwarzenegger*, Mr. Troll Has Met His
              Burden and PLP Has Not. ....................................................................... 11

   III. PLP IS SEEKING TNC DOCUMENTS, WHICH MR. TROLL CANNOT PRODUCE. ................... 14

CONCLUSION .................................................................................................... 15

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                      Page i
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 2 of 21

## TABLE OF AUTHORITIES

**Cases**

*Animal Legal Def. Fund, Inc. v. Shalala*, 104 F.3d 424 (D.C. Cir. 1997) .................................. 10

*Avago Technologies U.S., Inc v. IPtronics Inc*,
    2015 WL 5460607 (E.D. Pa. September 15, 2015) .................................. 7

*Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004) ...................... 10

*Citizens For Responsibility & Ethics in Washington v. Leavitt*,
    2008 WL 4356935 (D.D.C. Sept. 22, 2008) .................................. 10, 11

*Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*,
    237 F. Supp. 2d 17 (D.D.C. 2002) .................................. 7

*Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646 (9th Cir. 1980) .................................. 6, 10

*Doughty v. Underwriters at Lloyd's, London*, 6 F.3d 856 (1st Cir. 1993) .................................. 10

*In re Motor Fuel Temperature Sales Practices Litig.*,
    707 F. Supp. 2d 1145 (D. Kan. 2010) .................................. 13

*Kim v. NuVasive, Inc.*, 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) .................................. 7

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) .................................. 8

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009) .................................. 8, 12, 13, 14

*Point Ruston, LLC v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*,
    2009 WL 5125395 (W.D. Wash. Dec. 18, 2009) .................................. 12

*Renteria v. Collectcorp*, 2005 WL 4019338 (N.D. Cal. Oct, 26, 2005) .................................. 6

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) .................................. 10

*United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*,
    870 F.2d 1450 (9th Cir. 1989) .................................. 15

*United States v. Oakar*, 111 F.3d 146 (D.C. Cir. 1997) .................................. 10

*United States v. Town of Colorado City, Arizona*,
    2014 WL 5465104 (D. Ariz. Oct. 28, 2014) .................................. 13

*Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219 (D. Wyo. 2002) .................................. 9

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002) .................................. 8, 9, 14

**Statutes**

U.S. Const. amend. I .................................. 2

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena    Page ii
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 3 of 21

Rules

Fed. R. Civ. P 26(b)(1)..................................................................................................... 9

Fed. R. Civ. P. 26(b)(2)(C) ..................................................................................... 5, 6, 8

Fed. R. Civ. P. 45(d)(1)........................................................................................... 6, 8

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page iii
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 4 of 21

<u>INTRODUCTION</u>

It does not matter how many times Mr. Troll met with U.S. Environmental Protection Agency ("EPA") officials, how much information (scientific or otherwise) he provided to the agency, how much he cooperated with other opponents to the Pebble Mine, or what he said to other individuals and entities that are alleged Federal Advisory Committee Act ("FACA") members. Pebble Limited Partnership ("PLP") could amass thousands of pages of documents from non-parties demonstrating these things and it would still not have the relevant information needed to establish that EPA violated FACA. This is the crux of the problem with PLP's subpoena: relevancy. PLP's exhibits to its opposition, which PLP touts as "critical" evidence of a FACA violation, demonstrate the lack of relevance. None of these documents have any bearing on PLP's FACA claim or implicate Mr. Troll in EPA's alleged wrongdoing.

Instead of focusing on obtaining relevant information to litigate its FACA case, PLP is using this litigation as a platform for obtaining private information from its political rivals. There is no other reasonable explanation for why PLP needs documents from more than 60 non-parties in a case where the legal question is concerned with the conduct of the government defendant. The alleged wrong-doing in this case is about EPA, not Tim Troll and not those opposed to the Pebble Mine. Thus, discovery against Mr. Troll and other opponents should not be allowed.

<u>ARGUMENT</u>

PLP has argued that it is seeking essentially two categories of information from Mr. Troll: (1) communications with EPA and (2) internal communications between Mr. Troll and the fifty plus individuals and entities listed on Appendix A.[1] PLP's Opposition to Tim Troll's Mot.

---

[1] PLP suggests that Mr. Troll concedes that "EPA's communications with FAC members" is an appropriate issue for discovery. PLP Opp'n at 3. This is not correct. Because discovery must be "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), Mr. Troll has simply acknowledged that one of PLP's claims is that EPA established or utilized an alleged de facto

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 1
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 5 of 21

to Quash Non-Party Subpoena, Dkt 192 at 3. These two categories over simplify the immense scope of the documents sought by PLP, but they are helpful when considering the appropriateness of PLP's subpoena.[2] As to the first category of documents, this information, if otherwise discoverable, must be obtained from EPA. Troll Mot. Quash at 20-23. With respect to the second category, these documents are not relevant to the litigation, Troll Mot. to Quash at 18-21, and production would infringe on Mr. Troll's First Amendment rights. Troll Mot. to Quash at 23-26. PLP's brief confuses the issues, ignores the plain language of the Federal Rules and the relevant case law, disregards Mr. Troll's standing as a non-party, and tries to manufacture a factual controversy that does not exist.

I. **PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 26(b)(2)(C)(i), ANY RELEVANT COMMUNICATIONS WITH EPA MUST BE OBTAINED FROM EPA.**

PLP argues that (1) any communication with EPA on the proposed Pebble Mine is sufficient to trigger a subpoena in this case, PLP Opp'n 3-4, Errol Patterson Decl. ¶ 5 (Dkt. 193), and (2) PLP is not required to obtain relevant information from EPA before burdening non-parties for the same information. PLP Opp'n 6, 8. Both of these arguments are unfounded.

**A. There is Nothing Unlawful about Communicating with EPA on the Proposed Pebble Mine.**

PLP complains that Mr. Troll, along with more than sixty other subpoenaed nonparties, were "all heavily involved in secret, back room meetings with EPA" where they "conferred with EPA and provided it with data and analyses." PLP Opp'n at 3. According to PLP, Mr. Troll's

---

FACA committee. Troll Mot. at 15. Mr. Troll does not believe that there were any de facto FACA committees, thus it would be impossible for him to concede that discovery of communications with these non-existent committees is appropriate.

[2] PLP's assertion that the subpoena "is not at all broad or complex," PLP Opp'n at 2, is contrary to a natural reading of the subpoena, which speaks for itself. *See* Ex. 4 to Troll Mot. to Quash, (Dkt. 169-5). Furthermore, PLP's suggestion that Mr. Troll's citations to his actual subpoena are somehow disingenuous, PLP Opp'n at 5 n.4, ignores the fact that PLP's offer to narrow the scope of the subpoena was more form than substance. *Compare* Ex. 4 to Troll Mot. to Quash (Dkt. 169-5) *with* Ex. 6 to Troll Mot. to Quash (Dkt. 169-7).

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 2
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH
Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 6 of 21

interactions and correspondence with EPA are the "basis for seeking documents and testimony from Troll in this litigation." Patterson Decl. ¶ 5. As a threshold matter, the Constitution protects the public's right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Thus, the notion that merely communicating with government officials about a matter of public importance establishes the basis for an invasive non-party subpoena is absurd.

Furthermore, PLP's "evidence" of Mr. Troll's allegedly unlawful collusion with EPA is innocuous. Out of the thirty exhibits that PLP provided as the "basis for seeking documents and testimony from Troll," only three even mention Mr. Troll. *See* Patterson Decl. ¶ 5 (*citing* Exs. D to N3 as the basis for Mr. Troll's subpoena); Exs. D, E, and N2 to Patterson Decl. (three Exs. dealing with Mr. Troll); Exs. E through N1, and N3 (Exs. that do not mention Mr. Troll). PLP "received over 33,000 pages of Bristol Bay related documents through submission of 10 FOIA requests to EPA." EPA Resp. to Ct. Order, 13, *Pebble v. EPA*, Civ. No. 3:14-cv-00199-HRH, Dkt. 53 (Sept. 29, 2015). In all of these documents, PLP has only cited three referencing Mr. Troll's communications with EPA. This makes it difficult to take seriously PLP's accusation that Mr. Troll "was a central figure in EPA's utilization of *de facto* [FACA] committees." PLP Opp'n at 2.

PLP is essentially asking this Court to brand as a co-conspirator anyone who communicated with EPA or provided the agency with information regarding the proposed Pebble Mine. PLP Opp'n at 3-4; Patterson Decl. ¶ 5. The exhibits that PLP asserts demonstrate that Mr. Troll is an appropriate source of discovery simply reflect benign interactions with EPA, including instances where Mr. Troll's then employer, The Nature Conservancy ("TNC"), provided the agency with scientific information. *See* PLP Opp'n at 3 ("Indeed, Troll and several other of his colleagues from TNC conferred with EPA and provided it with data and analyses . . .

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                                   Page 3
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 7 of 21

.”); *see also e.g.*, Ex. F1 to Patterson Decl., Dkt. 193-1 at 27 (“Trout Unlimited would like to come to the Regional Office for a meeting next week . . . ”); Ex. G2 to Patterson Decl., Dkt. 193-1 at 38 (“a number of Bristol Bay, Alaska stakeholders were in town this week and requested a meeting”); Ex. I4 to Patterson Decl., Dkt. 193-2 at 63 (“While in DC, the [Bristol Bay Native Association] delegation would like to meet with the appropriate officials at EPA . . .”). Contrary to PLP’s assertion, none of these documents “show utilization by EPA.” *See* PLP Opp’n at 3. Nor do these documents suggest a violation of FACA. Rather, as one of the exhibits explicitly states, these documents make it clear that “it is the policy of [EPA] to do [its] best to honor all . . . meeting requests.” Ex. I4 to Patterson Decl., Dkt. 193-2 at 59.

Under PLP’s standard, PLP itself is guilty of participating in a de facto Pro-Mine FACA committee and could be subject to an invasive subpoena. There are many examples of PLP having closed-door meetings with Gina McCarthy (Administrator of EPA) and Dennis McLerran (Administrator for EPA’s Region 10). *See* Ex. 13 (McGarthy and McLerran Schedules).[3] In fact, on March 12, 2014, Tom Collier (PLP CEO) and John Shively (PLP Board Chairman) had a private meeting with Dennis McLerran where they discussed Section 404(c) of the Clean Water Act. *See* Ex. 14, 6 (March 12, 2014 Meeting Agenda).[4] Moreover, on June 13, 2011, Dennis McLerran sent a letter to John Shively requesting that he “share baseline environmental data and analysis” because such “data will supplement our information and assist us in our evaluation of the current conditions of the watershed.” *See* Ex. 15 (June 13, 2011 McLerran Letter to Shively).

---

[3] This information is readily available on EPA’s website. *See e.g.*, Senior Managers Schedules, http://yosemite.epa.gov/opa/admpress.nsf/Calendars (last visited Oct. 19, 2015) (follow any of the named individuals hyperlink; then follow “view all published schedules” hyperlink).
[4] Exhibits 14-20 are all documents that PLP should have obtained from their FOIA request to EPA, as they are all currently available on FOIA Online, which makes documents released pursuant to a FOIA request available to the general public. FOIA Online, https://foiaonline.regulations.gov/foia/action/public/search# (last visited Oct. 19, 2015).

Reply in Support of Tim Troll’s Motion to Quash Non-Party Subpoena                    Page 4
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 8 of 21

PLP distributed scientific research to several federal agencies and then held a four-day conference presenting this research to agency personnel. *See* Ex. 16 (Jan. 6, 2012 Sampson Email); Ex. 17 (Jan. 27, 2012 Sampson Email).[5] A similar conference was held in November 2008. *See* Ex. 18 (Nov. 2008 Baseline Environmental Team Agency Meeting Schedule). PLP was also reaching out to the Army Corp of Engineers to set up meetings "to present and discuss [PLP's] recommendations for [fish assessment] methodology." *See* Ex. 19 (March 7, 2013 MacCay Email). In addition, PLP had similar meetings with EPA officials to provide baseline monitoring for the Pebble project. *See* Ex. 20 (Oct. 7, 2008 MacCay Email).[6]

If there is nothing improper about PLP's contact with EPA, then the same is true for Mr. Troll's less extensive involvement with the agency. Mr. Troll's interactions with EPA are not converted from benign to improper simply because Mr. Troll opposed the Pebble Mine. The factual evidence presented in PLP's Opposition is insufficient for sustaining the subpoena to Mr. Troll, and as a result, Mr. Troll's subpoena should be quashed.

### B. If EPA has Discoverable Information, PLP Has a Duty to Obtain it from the Party to the Litigation before Seeking that Same Information from Non-Parties.

PLP's Opposition ignores the language of Federal Rule of Civil Procedure 26(b)(2)(C) and the relevant case law cited in Mr. Troll's Motion to Quash. *See* PLP Opp'n at 5-6, 8; Troll Mot. at 21-22. PLP attempts to recast the issue as one regarding the sequence of discovery. *See*

---

[5] In fact, PLP tightly controlled physical access to these agency meetings. *See* Ex. 17 ("As in years past, the Agency Meeting location is not open to the general public"). PLP only allowed the public to "watch and listen to the presentations live online," but the public was silenced because the "presenters [] only [] accept[ed] questions from agency personnel." *Id.*

[6] As another example of the absurdity of PLP's argument, on August 25, 2011, Dennis McLerran had a four-hour closed door meeting and tour of Bristol Bay with Senator Lisa Murkowski. *See* Ex. 21 (McLerran Schedule for Aug. 25, 2011). By Pebble's logic Senator Murkowski should be subject to a subpoena in this case because she had a "secret, back room meeting[] with EPA." PLP Opp'n at 3. If this is the litmus test for a third-party subpoena, then the Court will be left dealing with hundreds of discovery disputes on a case by case basis in every case against a government agency.

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena        Page 5
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 9 of 21

PLP Opp'n at 8 ("this Court has control over discovery and the sequence thereof, and it has not divided discovery in phases").[7] This completely misses the point and disregards the protection that the federal rules provide when non-parties are asked to bear the burden of producing information that is available from parties to the litigation.

As Mr. Troll argued in his motion, Federal Rule 26(b)(2)(C) requires the Court to "limit the frequency or extent of discovery" if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *See* Troll Mot. at 21 (*citing* Fed. R. Civ. P. 26(b)(2)(C)). Mr. Troll also provided relevant published case law from the Ninth Circuit demonstrating that a subpoena unduly burdens a third party if it seeks information that can be obtained from a party to the case. *See* Troll Mot. at 21-22. Assuming the information is discoverable, there is no reason why PLP cannot obtain communications with EPA from the Defendant EPA.[8] As a result, PLP merely complains that "[w]aiting for EPA to produce documents is inadequate." PLP Opp'n at 8. This statement does not in any way relieve PLP of its obligation under Federal Rule of Civil Procedure 45(d)(1) to "avoid imposing [an] undue burden or expense on a person subject to [a] subpoena." *See also Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) ("the more

---

[7] The case that PLP uses as support for this argument, *Renteria v. Collectcorp*, No. C05-00415, 2005 WL 4019338, at * 1 (N.D. Cal. Oct, 26, 2005), is inapposite. *Renteria* dealt with a party to the litigation who sought an order "permitting her to withhold [audiotapes of the defendants' telephone messages] from the defendant until after she ha[d] completed their depositions." Thus in *Renteria*, the timing of when a *party* to the case had to produce *relevant information* was in question. That is not the case here, where a *non-party* has been subpoenaed for information that is available from a party to the case.

[8] PLP's blanket statement that "EPA officials used personal email to coordinate with FAC members," PLP Opp'n at 4, exaggerates the facts. The previous pleadings in this case demonstrate that only Phil North has been accused of using a private computer for agency business. *See* Order on Mot. for Subpoena, 2, (Dkt. 155) (Aug. 27, 2015). Indeed, the Court has authorized a subpoena to Mr. North. *Id*. Thus, this is not a valid reason why Mr. Troll and the other sixty plus nonparties should be burdened with producing communication with EPA.

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 6
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 10 of 21

appropriate nomenclature is "nonparty" discovery, not "third-party" discovery, as "the word nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." (citation omitted)). PLP's remedy for alleged discovery delays is a Motion to Compel against EPA, not a suspension of Rule 45 protections for third-parties. *Kim v. NuVasive, Inc.*, 2011 WL 3844106, *3–*4 (S.D. Cal. Aug. 29, 2011) (holding that the concern that defendants have not produced the requested documents is "more appropriately a subject for a motion to compel rather than justification for the issuance of subpoenas that shift the burden of production from a party to a nonparty");

Furthermore, PLP's assertion that more than sixty non-party subpoenas are necessary because "EPA argues that PLP should look to the nonparties whom it has subpoenaed for the documents that it seeks," PLP Opp'n at 2 and 13, is both disingenuous and irrelevant. EPA listed the subpoenas as an example of the "staggering amount of evidence" that PLP has sought in this case and as a reason why the agency should not be required to disclose documents protected by the deliberative process privilege. EPA Resp. to Ct. Order, 15, *Pebble v. EPA*, Civ. No. 3:14-cv-00199-HRH (Dkt. 61) (Sept. 29, 2015). Tim Troll and the other third parties are irrelevant to any dispute about the deliberative process privilege because any document sent to Tim Troll by EPA is not subject to deliberative process privilege. *See e.g., Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002) ("In general . . . communications between agencies and outside parties are not protected" by the deliberative process exemption.).

More importantly, EPA is the defendant in this case – not Tim Troll. A subpoenaed non-party "should not be forced to shoulder the discovery obligations of Defendants." *Avago Technologies U.S., Inc v. IPtronics Inc*, 2015 WL 5460607, *5 (E.D. Pa. September 15, 2015); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 7
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH
Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 11 of 21

reason to burden nonparties when the documents sought are in possession of the party defendant.").

Mr. Troll and the other sixty-plus non-parties should not be burdened with producing their communications with EPA. The obvious, more convenient, less burdensome, and less expensive source of this information is EPA. *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002). The Federal Rules of Civil Procedure 26(b)(2)(C) and 45(d)(1) protect Mr. Troll from precisely this type of duplicative and unduly burdensome discovery.

## II. MR. TROLL'S INTERNAL COMMUNICATIONS ABOUT HIS EFFORTS AGAINST THE PEBBLE MINE ARE IRRELEVANT AND PROTECTED BY THE FIRST AMENDMENT.

PLP argues that because Mr. Troll admits that he was "part of a campaign 'to oppose the Pebble Mine,'" PLP is "entitled to discovery from [him] to the extent permitted under Rule 26(b)." PLP Opp'n 3; *see also id.* at 7 (admitting that the subpoenas were directed to parties who publicly expressed opposition to the Pebble Mine).[9] This is a profoundly alarming statement. Mr. Troll did not lose his First Amendment right to voice his opposition to the Pebble Mine and associate with like-minded individuals by virtue of the fact that PLP has named him as an *alleged* member of an *alleged* de facto FACA Committee. PLP's arguments for why Mr. Troll's non-public communications regarding the Pebble Mine are necessary to demonstrate that *EPA violated the law* run afoul of the relevant case law and should be rejected. *See Wyoming v. U.S. Dep't of Agric.* (*Wyoming II*), 208 F.R.D. 449 (D.D.C. 2002); *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2009).

---

[9] In another motion to quash, PLP has similarly argued that "non-public communications regarding [an individual's] expression of [his] views on matters of public policy" are "precisely the type of secret special interest communications that FACA seeks to prohibit and which should be discoverable." *See* Ex. 22 at 12 n.6 (PLP Oppositions to Shoren Brown's Motions to Quash subpoenas for Non-Party Discovery and For Sanctions, Cost, and Attorneys' Fees, *Shoren Brown v. Pebble*, Civ. 2:15-mc-00131-RSL, Dkt. No. 8 (W.D. Wash., Sept. 21, 2015)).

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 8
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 12 of 21

## A.     Any Communications That Did Not Include EPA Are Not Relevant.

PLP argues that the second category of documents it seeks (i.e. private communications and documents not shared with EPA) are "critical" to PLP's FACA claims because they will demonstrate "EPA's management and control in ways that EPA documents would not." PLP Opp'n at 4. Contrary to PLP's assertion that the relevancy of these types of documents "cannot seriously be disputed," PLP Opp'n at 13, relevancy is the heart of the dispute. Mr. Troll's actions are not at issue in this case. *It does not matter what Mr. Troll has said or done* because the question in this case is whether EPA's actions are lawful. As such, PLP's arguments for why communications not shared with EPA are relevant should be rejected for several reasons.

As a threshold matter, *Wyoming v. U.S. Department of Agriculture* (*Wyoming II*), 208 F.R.D. 449 (D.D.C. 2002), is relevant case law that speaks directly to the unique question presented to this Court. Because non-party discovery in a FACA case is rare, it is appropriate for the Court to look to *Wyoming II*—the only case to address the relevancy of such discovery—for guidance. Contrary to PLP's argument, *Wyoming II* does not "espouse[] an overly restrictive view of discovery." PLP Opp'n at 9. Rather, *Wyoming II* acknowledged that "courts construe the scope of discovery liberally." *Wyoming II*, 208 F.R.D. at 452. However the court found that the discovery sought was irrelevant and quashed the subpoenas on that basis, consistent with the Federal Rules. *Id.* at 454; *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.").

Similarly, because Mr. Troll is a non-party, PLP's reliance on *Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219 (D. Wyo. 2002), *vacated*, 414 F.3d 1207 (10th Cir. 2005) as contrary authority is misplaced. This *Wyoming* case addressed the appropriateness of discovery from a party—the intervenor-defendants. *Id.* at 1224. Contrary to PLP's arguments, this is not "a meaningless distinction." PLP Opp'n at 10. The Court of Appeals has recognized that non-

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                                   Page 9
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 13 of 21

parties are afforded more protection than parties to the litigation. *See, e.g.*, *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

Moreover, PLP attempts to distinguish *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), by arguing that the Supreme Court only addressed the issue of relevant discovery in a FACA case "in passing." PLP Opp'n 9 n.7. This is not the case. The Supreme Court in *Cheney* reviewed the discovery requests at issue and characterized those requests as inappropriate because "[t]hey provide respondents all the disclosure to which they would be entitled in the event they prevail[ed] on the merits [of their FACA claim], and much more." 542 U.S. at 388 (2004). This discussion was part of the "rationale upon which the Court based the result[]" that it reached, and therefore is binding on all courts. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996). Even if it were not part of the holding, the "[c]arefully considered language of the Supreme Court, even if technically dictum, *generally must be treated as authoritative.*" *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (quoting *Doughty v. Underwriters at Lloyd's, London*, 6 F.3d 856, 861 n.3 (1st Cir. 1993) (emphasis added).

Lastly, PLP failed to address the FACA cases recognizing that access to certain types of documents is a remedy to a FACA violation and thus, the Court must be careful not to require disclosure during discovery that "would effectively provide plaintiff with the very relief it seeks on the merits." *Citizens for Responsibility & Ethics in Wash. v. Leavitt*, No. CIV.A.08-0576 ESH, 2008 WL 4356935, at *6 (D.D.C. Sept. 22, 2008); *Animal Legal Def. Fund, Inc. v. Shalala*, 104 F.3d 424, 430–31 (D.C. Cir. 1997) (allowing discovery to determine what documents plaintiffs were entitled to "access under FACA" after establishing a FACA committee existed). In *Citizens for Responsibility & Ethics in Washington*, which PLP dismisses as having "no bearing on nonparty discovery," PLP Opp'n at 9 n.7, the Court held that:

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                Page 10
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 14 of 21

> [T]he information plaintiff seeks through discovery is simply not necessary to decide this case. The sole question at issue here is whether [the agency] solicited the collective advice of expert attendees of the March performance standards meetings. The identities of the meeting attendees and their organizational attachments, their method of selection, the specific advice they provided, and how [the agency] used or will use this advice is irrelevant to this question.

577 F. Supp. 2d at 434 . This is precisely the type of irrelevant information that PLP is seeking with the second category of documents. For example, PLP argued that some of the critical information it needs is "who proposed certain meetings with EPA, whether PLP had the same access to EPA, whether EPA gave equal consideration to PLP's scientific reports, and whether the nonparties' data and reports were independently prepared." PLP Opp'n at 8. This information has no bearing on whether EPA established or utilized a de facto FACA committee and should not be allowed.

### B. Under the Standard in *Perry v. Schwarzenegger*, Mr. Troll Has Met His Burden and PLP Has Not.

PLP admits that its non-party discovery in this case is targeting the "numerous opponents to [the] Pebble Mine." PLP Opp'n at 6-7; *id*. at 3. In fact, PLP used Mr. Troll's discussion of the extensive and varied public advocacy efforts targeting the Pebble Mine as further ammunition for why he is an appropriate target. PLP Opp'n at 7-8. Then, PLP dismissed Mr. Troll's statements about how responding to his subpoena will impact his First Amendment activities by callously arguing that "it is unclear why giving more careful consideration to one's communications is a bad thing." PLP Opp'n at 12. PLP's blatant disregard for the First Amendment rights of those opposed the Pebble Mine should be rejected for several reasons.

First, Mr. Troll demonstrated that compliance with his subpoena would have "consequences which objectively suggest an impact on, or 'chilling' of, [his] associational rights." *Perry v. Schwarzenegger*, 591 F.3d at 1160; Troll Mot. at 24-26. In *Perry*, the Court of Appeals addressed whether disclosing internal campaign communications would have a chilling

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 11
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 15 of 21

effect. It had "little difficulty" finding that it would. *Perry v. Schwarzenegger*, 591 F.3d at 1162. Mr. Troll's motion documents the existence of advocacy efforts whose focus was opposing the Pebble Mine. Troll Mot. at 6-12. The second category of documents that PLP seeks would require disclosure of the internal communications of these anti-Pebble efforts, which as Mr. Troll explains, would chill his future willingness to participate in this type of advocacy.[10] Troll Mot. at 24-26. This is sufficient evidence to demonstrate a prima facie showing of infringement.

PLP relies on *Point Ruston, LLC v. Pacific Northwest Regional Council of United Brotherhood of Carpenters & Joiners of America*, No. C09-5232BHS 2009 WL 5125395, at *3 (W.D. Wash. Dec. 18, 2009), to argue that anything less than "threats of physical coercion or bodily harm" would not establish an infringement on Mr. Troll's First Amendment rights. *See*, PLP Opp'n at 12. This is simply not the case.[11] In *Perry*—the controlling and more recent case law—the Court of Appeals found that allegations similar to Mr. Troll's were sufficient to "create[] a reasonable inference that disclosure would have the practical effect[] of discouraging

---

[10] PLP's argument that "[c]ommunications and documents sent to EPA . . . are not the sort of internal strategy and membership information that may implicate First Amendment concerns" conflates the issues. *See* PLP Opp'n at 11. Mr. Troll is not arguing that his communication with EPA is protected by the First Amendment. *See* Troll Mot. to Quash at 23-26. Mr. Troll's First Amendment argument is premised on internal strategy and private communications not shared with EPA, which is the focus of the second category of documents that PLP seeks. *See* Troll Ex. 6 at 1 (Dkt. 169-7); Troll Ex. 4 at 8 (Dkt. 169-5).

[11] While short of short of threats of physical harm, PLP's brief demonstrates how it intends to use the internal communications it seeks. PLP used documents obtained from non-party Kuipers and Associates to accuse scientist Ann Maest of "falsifying data in the Chevron Ecuador case." PLP Opp'n at 5. None of PLP's exhibits support this bold accusation. In fact, Exhibit 3 seems to suggest that whatever criticism Ms. Maest was facing was unfounded. *See* PLP Opp'n Ex. 3, Dkt. 192-2 at 9 ("EPA should not bow to pressure from these right-wing fringe groups because they are essentially asking EPA to censor science."). In another instance, PLP used documents it obtained from EPA to wrongfully accuse former EPA employee Wayne Nastri of violating federal revolving door restrictions. *See* Ex. A to Robert Waldrop and Bristol Bay Reg'l Seafood Dev. Ass'n Reply to Cross-Motion to Quash Subpoenas for Non-Party Discovery, Dkt. 194-1 (Oct. 13, 2015). PLP's use of discovery for personal attacks on individuals opposed to the Pebble Mine highlights the harassment that the subpoenaed parties in this case are facing.

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                Page 12
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 16 of 21

political association and inhibiting internal campaign communications that are essential to effective association and expression." 591 F.3d at 1163.[12]

Second, PLP did not overcome its burden of demonstrating that "the information sought is highly relevant to the claims or defenses in the litigation." *Perry*, 591 F.3d at 1161. Instead of addressing the analysis established in *Perry*, PLP relies on factors laid out in a District Court case from Kansas. PLP Opp'n at 13 (*citing In re Motor Fuel Temperature Sales Practices Litig*., 707 F. Supp. 2d 1145, 1161-63 (D. Kan. 2010)). Contrary to PLP's assertions, these are not *Perry* factors. PLP Opp'n at 13; *compare In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1153 (D. Kan. 2010) (listing the five factors that PLP analyzed) *with Perry*, 591 F.3d at 1161 (listing factors that the court "may take into account," including "the centrality of the information sought to the issues in the case," "the existence of less intrusive means of obtaining the information," and "the substantiality of the First Amendment interest at stake"). PLP has not demonstrated, nor can it, how non-public internal communications of non-parties are relevant to establishing that EPA violated FACA. The few examples of internal communications that PLP provided have nothing to do with FACA. PLP Opp'n 4-5. Rather, all these documents show is EPA contractors discussing the terms of their EPA contracts. *See e.g.*, Ex. 1 to PLP Opp'n at 3 (Dkt. 192-2) ("I told him I would check with EPA as a courtesy . . . full well knowing they don't have anything in writing that would preclude me (and the others) from doing it").

---

[12] This Court's decision in *United States v. Town of Colorado City, Arizona*, No. 3:12-CV-8123-HRH, 2014 WL 5465104, at *2 (D. Ariz. Oct. 28, 2014), regarding the sufficiency of an affidavit alleging an infringement on an individual's First Amendment rights is inapposite to the facts in this case. In *Town of Colorado*, the Court considered the sincerity of an individual's assertion that others in his church would be less likely to associate with him if discovery was allowed. *Id.* at *2. *Perry*, unlike *Town of Colorado*, addresses the First Amendment implications of requiring disclosure of internal campaign communications, which is the precise factual scenario presented by this case. 591 F.3d at 1152.

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 13
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 17 of 21

Finally, any suggestion by PLP that membership lists or donor information are the only type of documents protected under the First Amendment privilege, PLP Opp'n at 14 n.10, ignores the Court of Appeals decision in *Perry*. Indeed, the Court of Appeals in *Perry* granted First Amendment protection to the type of "private, internal campaign communications" at issue in this case. 591 F.3d at 1165 n.12. In addition, the Court in *Wyoming II* held that "[m]embership lists are not the only information afforded First Amendment protection" when granting protection for internal communications from non-parties in a FACA case. 208 F.R.D. at 454.

Mr. Troll is entitled to exercise his First Amendment rights without fear of receiving an invasive subpoena from the very entity he opposed. PLP has not demonstrated a compelling reason why internal communications not shared with EPA are relevant to this case.

## III.    PLP IS SEEKING TNC DOCUMENTS, WHICH MR. TROLL CANNOT PRODUCE.

PLP's Opposition demonstrates that it is trying to obtain TNC documents through Mr. Troll. PLP Opp'n at 3 ("Troll and several other of his colleagues from TNC"); *id*. at 4 ("And documents confirming or denying Troll's statements—for example, that TNC acted independently—are more likely to be in Troll's files than EPA's."); Ex. A to Patterson Decl., Dkt. 193-1 at 6 (listing "Tim Troll or others at The Nature Conservancy"). Assuming the Court finds that PLP can seek duplicative, irrelevant, and First Amendment protected information from non-parties, PLP should obtain TNC documents pursuant to the subpoena it has served on TNC.

Moreover, because Mr. Troll's position is that PLP's subpoena is inappropriate, he has not yet undertaken the time and expense to search for, collect, and evaluate eleven years of documents to prepare a comprehensive list of what he has in his possession. Nor is it his responsibility to demonstrate that he does not have possession, custody, or control over allegedly responsive documents. Rather, "[t]he party seeking production . . . bears the burden of proving that the opposing party has such control. *United States v. Int'l Union of Petroleum & Indus.*

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 14
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 18 of 21

*Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). PLP has made no such showing. In fact, the only two exhibits to PLP's Opposition demonstrating communications with Mr. Troll are from his previous employment. *See* Ex. D and E to Patterson Decl., Dkt. 193-1 at 22-24.

PLP has served a subpoena on TNC for the same documents that it is seeking from Mr. Troll. TNC has objected to this subpoena. *See* Pls. Notice of Filling Errata for Its Opposition to Tim Troll's Motion to Quash Non-Party Subpoena, 1, Dkt. 196 (Oct. 15, 2015). If this Court denies Mr. Troll's motion to quash, it would be inappropriate for Mr. Troll to produce documents that are the property of TNC, which TNC has separately objected to producing. Mr. Troll's production of TNC documents would undermine TNC's right to object.

<u>CONCLUSION</u>

For all of the foregoing reasons, Mr. Troll's subpoena should be quashed and he should be awarded fees and costs. In addition, Mr. Troll is not the only non-party affected by PLP's aggressive discovery tactics. Under Federal Rule 26(b)(2)(C), this Court may sua sponte control PLP's discovery against nonparties without waiting for each of those parties to enlist the Court's assistance. In the interest of judicial economy and enforcing the intent of Rule 45, the Court should consider granting additional relief that limits the discovery from non-parties in this case. If the Court finds that Mr. Troll's subpoena is inappropriate, it should require PLP to withdraw the other non-party subpoenas for those who are similarly situated. At a minimum, PLP should be required to seek Court approval before issuing any more non-party subpoenas.

Respectfully submitted this 23th day of October, 2015.

*/s/ Michelle Sinnott*
Michelle Sinnott (AK Bar No. 1506049)

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                                    Page 15
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 19 of 21

Valerie Brown (AK Bar No. 971299)
Brian Litmans (AK Bar No. 0111068)
TRUSTEES FOR ALASKA
1026 W. Fourth Avenue, Suite 201
Anchorage, AK 99501
Phone: (907) 276-4244
msinnott@trustees.org
vbrown@trustees.org
blitmans@trustees.org

*Attorneys for Tim Troll*

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena                    Page 16
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 20 of 21

## CERTIFICATE OF SERVICE

I certify that on October 23, 2015, I caused a copy of **REPLY IN SUPPORT OF TIM TROLL'S MOTION TO QUASH NON-PARTY SUBPOENA** to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case, all of whom are registered with the CM/ECF system.

  /s/     Michelle Sinnott                  
Michelle Sinnott

Reply in Support of Tim Troll's Motion to Quash Non-Party Subpoena
*Pebble Limited Partnership v. EPA*, Case No. 3:14-cv-00171-HRH

Case 3:14-cv-00171-HRH   Document 197   Filed 10/23/15   Page 21 of 21