IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PEBBLE LIMITED PARTNERSHIP,  )
                                                       )
                                           Plaintiff, )
  vs. )
                                                       )
ENVIRONMENTAL PROTECTION )
AGENCY, et al., )
                                                       )   No. 3:14-cv-0171-HRH
                                   Defendants. )
_____)

O R D E R

Motion to Quash; Motion to Compel

Alaska Conservation Foundation and Dr. Samuel Snyder (collectively "ACF"), non-parties to this litigation, move to quash document production and deposition subpoenas served upon them pursuant to Rule 45, Federal Rules of Civil Procedure.[1] The motion is opposed by plaintiff.[2] ACF has replied.[3]

Plaintiff moves to compel responses to third-party subpoenas pursuant to Rule 45, Federal Rules of Civil Procedure, served upon ACF, Bristol Bay Regional Seafood Development Association, and Robert Waldrop (collectively "Bristol Bay").[4] The Bristol

---

[1] See Docket Nos. 159 and 160.

[2] Docket No. 165.

[3] Docket No. 180.

[4] Docket Nos. 162 and 163.

Order – Motion to Quash; Motion to Compel                                       - 1 -

Bay parties have opposed plaintiff's motion.[5] This opposition is combined with a cross-motion to quash non-party subpoenas and for sanctions, costs, and attorney fees. The ACF parties oppose plaintiff's motion to compel.[6] Plaintiff has replied to the Bristol Bay opposition and opposes Bristol Bay's motion to quash.[7] Plaintiff has replied as to its motion to compel.[8] The Bristol Bay parties have replied with respect to their motion to quash, etc.[9]

Oral argument has been requested on the foregoing motions, but is not deemed necessary. The motions for hearing[10] are denied.

## Background

Plaintiff is the owner of an undeveloped, but potential world-class, mineral deposit in Southwest Alaska. The Pebble Prospect is located at the headwaters of several salmon spawning streams that flow into Bristol Bay. The Bristol Bay salmon fishery is a world class fishery.

By letter of February 28, 2014, the EPA informed plaintiff that the agency was going to begin proceedings pursuant to the Clean Water Act which could lead to a decision prohibiting development of the Pebble Prospect. Section 404(c) of the Clean Water Act provides in pertinent part:

---

[5] Docket No. 174.

[6] Docket No. 181.

[7] Docket No. 185.

[8] Docket No. 188. An unredacted (sealed) version of this reply is at Docket No. 189-1.

[9] Docket No. 194.

[10] Docket Nos. 186 and 195.

Order – Motion to Quash; Motion to Compel — - 2 -

> (c) The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

37 U.S.C.§ 1344(c).

On May 21, 2014, Pebble commenced an action for declaratory and injunctive relief against the EPA.[11] Believing that the EPA had made a final decision to conduct Section 404(c) proceedings to preclude plaintiff from developing the Pebble Prospect, plaintiff sought judicial review pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 702. The EPA moved to dismiss; and by order of September 24, 2014, this court held that plaintiff's complaint was subject to dismissal for lack of any final agency action.[12] That decision was affirmed on appeal by memorandum decision.[13]

On September 3, 2014, plaintiff initiated these proceedings pursuant to APA § 702.[14] Plaintiff contends that the EPA violated the Federal Advisory Committee Act (FACA), 5 U.S.C. app. II, § 1, et seq., in the course of administrative proceedings that might lead to a Section 404(c) decision. On November 25, 2014, the court entered a preliminary injunction, restraining EPA Region 10 from issuing any recommendation to

---

[11]Docket No. 1 in Pebble Ltd. P'ship v. United States EPA, No. 3:14-cv-0097.

[12]Docket No. 257 in Pebble Ltd. P'ship v. United States EPA, No. 3:14-cv-0097.

[13]Docket No. 266 in Pebble Ltd. P'ship v. United States EPA, No. 3:14-cv-0097.

[14]Docket No. 1.

Order – Motion to Quash; Motion to Compel - 3 -

the Administrator of the EPA regarding the Pebble Prospect.[15] By stipulation,[16] plaintiff filed a second amended complaint[17] in which plaintiff repeated its allegations that the EPA had violated FACA.

This being an APA case, judicial review is ordinarily conducted on the administrative record as certified by the agency. Ordinarily, discovery is not authorized. In this case, however, after plaintiff sought and the court granted a preliminary injunction, and after defendants had moved to dismiss plaintiff's amended complaint (which motion was granted in part and denied in part[18]), the court issued a minute order[19] calling upon the parties to submit a status report for purposes of the entry of a scheduling and planning order. The minute order contemplated that the parties would propose a discovery plan, which they did.[20] Although technically an APA case, it was the court's perception based upon all of the earlier proceedings that there likely was no discrete administrative record that could be certified to the court. The core issue in plaintiff's second amended complaint is that the EPA, by the course of its conduct within the agency and with others, had utilized advisory committees without complying with the FACA requirements for doing so. In reporting back to the court, the parties made it clear to the court that they were in agreement that "substantial discovery may be necessary due to the nature of the

---

[15]Docket No. 90.

[16]Docket No. 132.

[17]Docket No. 133.

[18]Docket No. 128.

[19]Docket No. 131.

[20]Docket No. 135.

Order – Motion to Quash; Motion to Compel         - 4 -

claims made by plaintiff."²¹  That discovery is underway.  The question now before the court is whether or not plaintiff is entitled to seek discovery from non-parties who appeared before the EPA in connection with Section 404(c) proceedings concerning plaintiff.

Shortly after commencement of this litigation, plaintiff served and filed a complaint against the EPA under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, et seq.²²  In that case, plaintiff contends that the EPA has wrongfully withheld or redacted documents responsive to plaintiff's FOIA requests which had resulted in the disclosure of voluminous EPA records of Pebble proceedings to plaintiff.  The EPA moved for summary judgment which was granted, except as regards the possible application of FOIA Exemption 5.²³  5 U.S.C. § 552(b)(5).  Proceedings are underway in this court to resolve the latter issue.

## Plaintiff's Subpoenas

The subpoena issued by plaintiff to the ACF parties sought "all documents" falling into one or another of eight categories.²⁴  Plaintiff's subpoenas to the Bristol Bay non-parties each describes three categories of documents, two of which had seven subsections.²⁵  The ACF subpoenas sought an extraordinarily broad range of documents: "[a]ll Documents relating to the Pebble Mine Project or hard rock mining issues in

---

²¹Docket No. 137 at 3.

²²Docket No. 1 in Pebble Ltd. P'ship v. United States EPA, No. 3:14-cv-0199.

²³Docket No. 53 in Pebble Ltd. P'ship v. United States EPA, No. 3:14-cv-0199.

²⁴Docket No. 160-1 at 9 and Docket No. 160-2 at 9

²⁵Docket No. 163-2 at 12-13 and Docket No. 163-2 at 22-23.

Order – Motion to Quash; Motion to Compel                                                                - 5 -

Alaska."[26]  The Bristol Bay subpoenas sought "[a]ll Communications with EPA Relating to: ...(e) the Pebble Mine Project" and all documents reflecting communications between Bristol Bay and 31 other persons or entities concerning the Pebble Mine project.[27]

In the course of "meet-and-confer" proceedings, plaintiff agreed to narrow its requests to two categories of documents:

> 1. Communications with EPA relating to: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) the Bristol Bay Watershed Assessment; (d) the Proposed Determination; (e) the Pebble Mine Project; (f) Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010; and
>
> 2. Documents relating to meetings or communications in connection with various named parties (included in an attachment to the subpoenas) concerning: (a) the Bristol Bay Assessment Team; (b) the Intergovernmental Technical Team; (c) EPA's actions regarding the Bristol Bay Watershed Assessment; (d) EPA's actions regarding the Proposed Determination; (e) EPA's actions regarding the Pebble Mine Project; (f) EPA's actions regarding Section 404 of the Clean Water Act in connection with the Pebble Mine Project; and (g) the petition submitted by Native Alaskan Tribes to EPA in May 2010.[28]

The court understands the two foregoing categories of documents to be those now sought by plaintiff pursuant to its subpoenas to ACF and Bristol Bay.  The court understands the reference to "communications in connection with various named parties (included in an attachment to the subpoenas)" to have reference to the list of 31 individuals or entities set

---

[26]Docket Nos. 160-1 at 9, 160-2 at 9.

[27]Docket No. 163-2 at 12-14.

[28]Docket No. 163 at 3.

Order – Motion to Quash; Motion to Compel                                                         - 6 -

out in plaintiff's Appendix A to Exhibits 2 and 3, filed with plaintiff's motion to compel.[29]

## Discussion

Plaintiff seeks to discover from non-parties ACF and Bristol Bay a broad range of communications between them and the EPA and between each of ACF and Bristol Bay and 31 others who probably were persons or entities interested in the EPA's Section 404(c) proceedings. Plaintiff believes that the communications it seeks to discover will shed light upon its allegations that defendant EPA violated FACA.

The court observed in its order on motion to dismiss that, in order to establish a violation of the FACA, plaintiff must establish that:

> "FACA does not apply to every entity whose views may be sought or considered by an agency – vast numbers of private organizations express their views to regulators; rather, it applies only to advisory committees or their equivalent 'established or utilized by one or more agencies.'" Town of Marshfield v. F.A.A., 552 F.3d 1, 5-6 (1st Cir. 2008) (quoting 5 U.S.C. app. 2 § 3(2)(C)). "[A]n advisory panel is 'established' by an agency only if it is actually formed by the agency[.]" Byrd v. U.S. E.P.A., 174 F.3d 239, 245 (D.C. Cir. 1999). An advisory committee is "utilized" by an agency if it is "under the actual management or control of the agency." Town of Marshfield, 552 F.3d at 6. In addition, FACA only applies "if the committee is established, managed, or controlled for the purpose of obtaining advice or recommendations for the federal government." Sofamor Danek Group, Inc. v. Gaus, 61 F.3d 929, 936 (D.C. Cir. 1995). The committee must "render advice or recommendations[] as a group, and not as a collection of individuals." Association of American Physicians and Surgeons, Inc. v. Clinton, 997 F.2d 898, 913 (D.C. Cir. 1993).[30]

---

[29]Docket No. 163-2 at 14 and 24.

[30]Docket No. 128 at 11-12.

Simply put, proof of a FACA violation comes from agency conduct, and proof of plaintiff's contentions are most likely to be found (if at all) in EPA records. To the extent that non-parties such as ACF and Bristol Bay communicated with the EPA, those communications are available to plaintiff from the EPA by means of discovery now underway pursuant to the court-approved discovery plan. The same is true as to EPA communications with ACF and Bristol Bay.

Relevant information is discoverable. Rule 26(b)(1), Federal Rules of Civil Procedure, is ordinarily given a broad, liberal application. However, Rule 26(b)(2) makes provision for limits on the frequency and extent of discovery. Subsection (C) provides in pertinent part:

> (C) <u>When Required.</u> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive....

Rule 45(d)(3)(A), Federal Rules of Civil Procedure, provides in pertinent part:

> (A) <u>When Required.</u> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> ....
>
> (iv) subjects a person to undue burden.

In evaluating whether or not a subpoena is unduly burdensome, the court considers the relevance of that which is sought, the need of the party for the document(s), the breadth of the request, the time period covered by the request, and the particularity with which the documents have been described. <u>Moon v. SCP Pool Corp</u>, 232 F.R.D. 633, 637 (C.D.

Cal. 2005) (quoting Travelers Indem. Co. v. Metro Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005)).

It is conceivable that some of the documents sought from ACF and Bristol Bay could be relevant to plaintiff's contention that the EPA utilized and managed an FAC. However, the court knows from proceedings on defendants' motion to dismiss that the great bulk of communications between ACF and Bristol Bay on the one hand, and EPA on the other hand, will consist of submissions to the EPA by various of the persons and entities opposing a Pebble mine. Statements of opposition are not evidence of a FACA violation, nor are they likely to lead to any such evidence. The great bulk of these communications will be irrelevant. Similarly, communications between ACF and Bristol Bay on the one hand, and 31 other persons or entitles on the other hand, are likely to be irrelevant to plaintiff's claim. ACF, Bristol Bay, and the 31 others have the right to communicate with one another on matters of joint interest and, if they wish, to make joint presentations to the EPA. Their doing so does not violate FACA. These private entities cannot violate FACA. The question is not how the persons interested in the Pebble mine organized themselves; the question is did the EPA utilize and manage an FAC? Much of what plaintiff seeks by the subpoenas now before the court will be irrelevant to plaintiff's claim.

Through meet-and-confer proceedings, plaintiff has scaled down its demand for documents to some degree. For example, plaintiff has deleted a demand (which the court deems totally unreasonable) for all of ACF's documents having to do with hard rock mining issues in Alaska.[31] Nevertheless, plaintiff's reduced records demand as set out above is still unreasonably broad, seeking everything that ACF or Bristol Bay has ever

---

[31]Docket No. 160-1 at 9.

received from or communicated to the EPA or 31 others. Plaintiff has made no effort to particularize its records demands – that is, the demands are not focused upon plaintiff's complaint that the EPA impermissibly utilized an FAC. Plaintiff seeks the total universe of communications between ACF, Bristol Bay, the EPA, and 31 others. Plaintiff's demands are needlessly broad <u>vis-a-vis</u> EPA's alleged utilization of FACs.

Plaintiff's demands for records appears to reach approximately 11 years of EPA activity with respect to Section 404(c) proceedings involving plaintiff. In this regard, the court understands that it might be difficult for plaintiff to identify when the EPA utilized or managed an FAC, if indeed it did so.

ACF and Bristol Bay argue that the discovery sought by subpoenas served upon them is not needed and would be unduly burdensome. Pertinent to these inquiries, the District Court for the District of Columbia has observed:

> "Courts should balance the need for discovery against the burden imposed on the person ordered to produce documents. Non-party status is one of the factors the court uses in weighing the burden of imposing discovery. An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed.

<u>Wyoming v. U.S. Dept. of Agriculture</u>, 208 F.R.D. 449, 452-53 (D.D.C. 2002) (citations omitted).[32] Here, as in <u>Wyoming</u>, the court deals with subpoenas to non-parties.

ACF and Bristol Bay have demonstrated that the burdens of compliance with plaintiff's first category of documents demanded would be considerably out of proportion

---

[32]The court of course recognizes that the <u>Wyoming</u> decision is not binding upon this court. However, the D.C. District Court as quoted above is following well-established principles; and the approach of that court to dealing with subpoenas to non-parties in FACA litigation is persuasive.

Order – Motion to Quash; Motion to Compel - 10 -

to the potential for developing relevant information, and therefore plaintiff's first demand is unreasonable. Plaintiff has failed to show any need for production from ACF or Bristol Bay of communications between ACF and Bristol Bay on the one hand and EPA on the other hand. The communications of ACF and Bristol Bay with the EPA will all be discoverable by plaintiff from the EPA. Discovery from the EPA will be more convenient, less burdensome, and less expensive than discovery from ACF or Bristol Bay. What plaintiff seeks from ACF and Bristol Bay will surely be cumulative and duplicative of the discovery plaintiff seeks from the EPA. The court understands that plaintiff worries that some EPA officials employed personal (non-EPA) facilities for some of their communications. The court is unpersuaded that any such communications will escape discovery from EPA officials. Plaintiff has failed to establish a need to obtain from ACF and Bristol Bay everything they have ever written to or received from the EPA.

The motion to quash is granted as to plaintiff's revised demand No. 1 for production of communications between ACF and Bristol Bay on the one hand and the EPA on the other hand. Plaintiff's parallel motion to compel is denied.

Plaintiff's revised demand No. 2 seeks all communications between ACF and Bristol Bay and 31 other non-parties with respect to the EPA's Section 404(c) proceedings regarding the Pebble Mine project. Much of what the court has said above has equal application to plaintiff's revised demand No. 2. Plaintiff has made no effort to focus its demand upon the question of whether the EPA has utilized or managed a discrete group of non-parties to this litigation. Again, it is what the EPA has done (or not done) – not the communicating or coordinating between interested members of the public – which is relevant to plaintiff's FACA claim. Of course, plaintiff cannot obtain ACF or Bristol Bay communications with 31 others from the EPA. But plaintiff has not

demonstrated any need for communications between those who oppose plaintiff's Pebble mine. Plaintiff's revised demand No. 2 for production seeks documents, the vast majority of which would be irrelevant to plaintiff's FACA claim. The request is unreasonably burdensome.

As did the District Court for the District of Columbia, this court concludes that the non-party discovery demands (Nos. 1 and 2) which plaintiff seeks to enforce are "outside the scope of discovery needed [by plaintiff] to prove its claim that the government violated the FACA." Wyoming, 208 F.R.D. 454. The great bulk of what plaintiff seeks is irrelevant to plaintiff's claim. That which may be relevant is more likely than not to be duplicated in the records of the EPA, plainly a more convenient source of the information and available to plaintiff from its FOIA requests or from discovery from the EPA itself.

ACF and Bristol Bay also argue that the plaintiff's subpoenas for communications with other non-parties seeks the discovery of material protected by the First Amendment of the United States Constitution. In Wyoming, which is remarkably similar to this case, the court aptly recognized that public participation before federal administrative agencies involves "'the freedom to protest policies to which one is opposed, and the freedom to organize, raise money, and associate with other like-minded persons so as to effectively convey the message of the protest.'" Wyoming, 208 F.R.D. 454 (quoting Int'l Action Ctr. v. United States, 207 F.R.D. 1, 2 (D.D.C. 2002)). Both the District of Columbia District Court and the Ninth Circuit Court have recognized that discovery such as that sought by plaintiff in this case has the tendency to chill the free exercise of political speech and association which is protected by the First Amendment. In this regard, the Ninth Circuit has observed:

> Although the evidence presented by Proponents is lacking in
> particularity, it is consistent with the self-evident conclusion

Order – Motion to Quash; Motion to Compel - 12 -

> that important First Amendment interests are implicated by the plaintiffs' discovery request. The declaration creates a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications that are essential to effective association and expression.

Perry v. Schwarzenegger, 591 F.3d 1147, 1163 (9th Cir. 2010) (citation omitted).

Here, as in Perry, the declarations of ACF[33] and Bristol Bay[34] make out a prima facie showing of an infringement upon ACF and Bristol Bay's First Amendment, associational rights. In order to get past the First Amendment privilege, plaintiff has to show that what it seeks goes to the heart of its claim and is carefully tailored to avoid unnecessary interference with protected activities.[35] Plaintiff has not done so.

ACF and Bristol Bay's motions to quash are granted as to discovery demand No. 2: communications between them and 31 other persons and entities. Plaintiff's parallel motion to compel is denied.

Within Bristol Bay's motion to quash subpoenas is an application for costs and fees. In replying on this subject, Bristol Bay clarifies that the basis for this application is plaintiff's alleged bad faith attempt to invade Bristol Bay's First Amendment rights. Bristol Bay reiterates its contention that plaintiff is attempting to intimidate non-parties and chill their participation in EPA proceedings.

Pebble is "pushing the envelope" as far as its non-party discovery efforts with respect to EPA's Section 404 proceedings. That said, it is the court's further impression that Pebble sees the EPA proceedings as a life-or-death struggle with respect to the

---

[33]Docket Nos. 160-3, 161.

[34]Docket Nos. 175, 176, 177.

[35]Benin v. Center for the Study of Popular Culture, 2007 WL 1795693 at *3 (N.D. Cal. June 20, 2007).

Order – Motion to Quash; Motion to Compel — - 13 -

Pebble Prospect. Similarly, the non-parties see a potential Pebble mine as posing an extreme danger to the Bristol Bay salmon fisheries. At present, the court is unpersuaded that Bristol Bay has successfully carried its burden of establishing bad faith on the part of plaintiff. Bristol Bay has succeeded on its motion to quash; but, as the parties recognize, that alone does not justify the imposition of fees or sanctions. That request is denied.

The court understands that Dr. Snyder and Mr. Waldrop were served with subpoenas summoning them for depositions. Very little has been said about the depositions by any of the parties. As a consequence, the court assumes that the quashing of plaintiff's subpoenas to ACF and Bristol Bay renders the deposition notices moot, and they are vacated.

## Conclusion

The Alaska Conservation Foundation and Dr. Samuel Snyder's motion to quash is granted. Bristol Bay Regional Seafoods Development Association and Robert Waldrop's cross-motion to quash is granted, but their application for costs and fees is denied. Plaintiff's motion to compel responses to third-party subpoenas is denied. Plaintiff's notices of deposition to Dr. Snyder and Mr. Waldrop are vacated.

DATED at Anchorage, Alaska, this  18th  day of November, 2015.

/s/ H. Russel Holland
United States District Judge

Order – Motion to Quash; Motion to Compel					- 14 -

Case 3:14-cv-00171-HRH   Document 200   Filed 11/18/15   Page 14 of 14