Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Brigida Benitez (*pro hac vice*)
Errol Patterson (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
*ryoerges@steptoe.com*
*bbenitez@steptoe.com*
*epatters@steptoe.com*

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP, | **PLAINTIFF'S SUPPLEMENTAL RESPONSE TO** |
| Plaintiff, | **ORDER GRANTING MOTIONS TO QUASH SUBPOENAS** |
| vs. | |
| | **CIVIL ACTION NO.** |
| ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | **3:14-cv-00171-HRH** |
| Defendants.                    / | |

Plaintiff Pebble Limited Partnership ("PLP") submits this Supplemental Response to the Court's Order of November 18, 2015 ("Order") which granted motions to quash document subpoenas that PLP served on four nonparties,[1] ruling that the subpoenas were overly broad and sought discovery most likely to be found in EPA records. Docket No. 200 at 8. In its initial response[2] to the Order, PLP stated that it would withdraw several additional nonparty subpoenas and would focus its discovery in the near-term on EPA first. But PLP also anticipated—and thus informed the Court at that time—that there might well be a need for further nonparty discovery at some later point, committing then to "pursue such discovery through the limited use of subpoenas that will be narrowly tailored in full compliance with the Court's November 18 Order." Docket No. 202 at 1.

PLP submits that the time to pursue limited nonparty discovery is now. PLP has continued to seek discovery from EPA, as it stated that it would. That process has been an exceedingly slow one, however, with multiple disputes and controversies that have required substantial negotiations over the scope of what PLP seeks and what Defendants are prepared to produce. In the meantime, the need for narrowly focused nonparty discovery—illustrated in part by documents that PLP submitted with its November 23 response to the Court's Order—has grown more acute. Indeed, new developments since the Court's November 18 Order, coupled with the limited time remaining before the close of fact discovery, make clear that further nonparty discovery—narrowly tailored in accordance with the Court's Order—is needed to

---

[1] Docket No. 200. The nonparties that moved to quash PLP's subpoenas were the Alaska Conservation Foundation, Dr. Sam Snyder, the Bristol Bay Regional Seafood Development Association, and Robert Waldrop.

[2] Docket No. 202.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 1

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 2 of 13

obtain critically relevant documents that go directly to whether EPA established or utilized off-the-books advisory committees in violation of the Federal Advisory Committee Act ("FACA"), as PLP has alleged, and whether those committees provided "collective" or "group" advice, which EPA has steadfastly denied.

Most importantly, an internal EPA FACA guidance document (*see* Ex. 1, attached hereto), which Defendants produced only in *January* of this year, sets forth several rules and practices that EPA personnel are instructed to follow when they meet with outsiders—rules and practices that PLP believes EPA completely disregarded when it came to its dealings with the members of the *de facto* federal advisory committees that PLP has alleged here. To confirm whether EPA violated its own internal FACA compliance guidelines, PLP is seeking ongoing discovery from EPA about what took place during the scores of meetings that it held with the same groups of individuals over the course of many months leading up to EPA's formation of the anti-mine federal advisory committees ("FAC"), but PLP requires discovery of the *non-federal* participants in those meetings—nonparties to this case. After all, what was and was not said at these critical meetings will be key not only to whether Defendants "utilized" these groups as *de facto* advisory committees in violation of FACA, but also to whether those committees provided "collective" advice that is one of the hallmarks of FACA. It is now clear that PLP's efforts to learn the truth about these important meetings has necessitated inquiry beyond EPA's side of the story, just as discovery in a case about the existence of a contract would involve inquiry beyond the documents and testimony from only the offeror or offeree. Because it is necessary to obtain *all* participants' versions of what took place at these critical meetings, discovery is needed not only from EPA, but it is also needed from the nonparties who attended multiple meetings and

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 2

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 3 of 13

were intimately involved in both EPA's section 404(c) strategy and the Bristol Bay Watershed Assessment ("BBWA") that was at the heart of that strategy.

In light of the Court's Order and the unique role of nonparty discovery in this case, PLP wishes to keep the Court informed of the developments (explained in detail below) that have led to this point. With the mandate of the Court's prior Order in mind, PLP will serve new, narrowly tailored subpoenas on select nonparties who likely have critical information relevant to FACA and that appears not to be in EPA's possession. PLP will, of course, tailor each subpoena to each nonparty. But, generally speaking, the categories of information that PLP hopes to obtain are: (i) nonparty emails exchanged with EPA employees via personal email accounts (because EPA employees indisputably used personal email to conduct official business, and EPA will not collect or produce them); (ii) emails and other documents exchanged with Phil North, to the extent such documents are unlikely to reside in EPA's own files (because data was lost or resided only in North's personal files or emails); and (iii) nonparty FAC members' documentation of meetings, calls, and conversations with EPA (because it appears that EPA's own documentation is incomplete or nonexistent with respect to some critical events).[3] PLP must pursue this discovery now so that it may obtain documents and schedule additional depositions, if they are deemed necessary, before the June 30, 2016, discovery deadline.

## I.  PLP Seeks Critical Evidence That Is Unavailable From EPA

Although the Court anticipated in the Order that PLP could obtain all the necessary evidence to establish its claims from EPA, recent developments in this case establish that the factual predicate for this finding is no longer accurate.

---

[3] PLP will seek this information via subpoenas *duces tecum* and, if necessary, for depositions.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 3

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 4 of 13

### A. EPA Has Chosen Not To Collect And Produce Emails From Personal Email Accounts Used To Conduct Agency Business Related To Bristol Bay

This Court has previously acknowledged PLP's concern "that some EPA officials employed personal (non-EPA) facilities for some of their communications." Docket No. 200 at 11. However, the Court at the time of its Order was "unpersuaded that any such communications will escape discovery from EPA officials." *Id.* At the time, EPA had already admitted in multiple venues that North and other EPA employees used their personal email accounts to conduct agency business, in violation of both the Federal Records Act and agency policies. For example, in an August 6, 2015 letter to NARA, EPA admitted that the Office of Inspector General obtained emails from a nonparty that were sent to or from Phil North's personal email account and that were never forwarded to EPA. Ex. 2. Moreover, there is evidence that at least four other EPA officials involved in this case used personal email to conduct agency business.[4] Thus, it is likely that the personal emails of EPA officials contain critical evidence. Since the November 18 Order, however, EPA's position has crystalized, and it has now stated during the parties' meet-and-confer process that it does not agree that it has an obligation under Rule 26 (or FOIA for that matter) to search for or produce Agency records in personal email accounts. Those records are not, according to EPA, within the agency's possession, custody, or control. *See also Pebble Ltd. P'ship v. EPA*, No. 3:14-cv-199-HRH, Docket No. 35 at 18 (arguing that such emails "are not within FOIA's purview"). Accordingly,

---

[4] *See* Ex. 3, E&E Legal, *Improper Collusion Between Environmental Pressure Groups and the Environmental Protection Agency as Revealed by Freedom of Information Act Requests, Interim Report* 14 n.19 (Sept. 2014). Administrator Lisa Jackson used a false-identity email account in the name of "Richard Windsor" "frustrating FOIA and the Federal Records Act FOIA requests," while Bob Perciasepe, Michelle DePass, and Bob Sussman each used personal email accounts. *Id.*

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 4

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 5 of 13

PLP has been unable to obtain this evidence from EPA.

As a result, PLP needs to request from *nonparties*—that is, those individuals who were on the other end of the communications with EPA employees who used their personal email accounts—all relevant communications sent to or from the personal email addresses of EPA officials and concerning the Pebble Mine and any potential FACA violations. This Court already has recognized Phil North's centrality to the case, stating that he "appears to be at the center of Pebble's claims," and "that Mr. North was the originator of documents likely related to the claims made in this case." *See* Docket No. 155 at 2. When the Court issued the November 18 Order, it found that "those communications are available to plaintiff from the EPA by means of discovery now underway pursuant to the court-approved discovery plan." Docket No. 200 at 8. But EPA's refusal to collect and produce relevant emails from personal accounts means this is no longer accurate.[5] The same reasoning applies to any other EPA employees who used personal email accounts to conduct Agency business related to the Pebble Mine.

B.  **Nonparty Discovery Has *Already* Provided Critical Emails And Documents That Were Not Available From EPA**

The few documents that PLP has already received from nonparties show that nonparty discovery is needed to unearth the full extent of how EPA utilized these groups within the meaning of FACA. In the Order, the Court suggested that PLP should "particularize its records demands" by "focus[ing] upon plaintiff's complaint that the EPA impermissibly utilized an FAC." Docket No. 200 at 10. Evidence of EPA's impermissible utilization of FACs is exactly

---

[5] This Court also previously recognized that some evidence may have been lost "on an EPA hard drive which has crashed and may or may not be recoverable." *See* Docket No. 155 at 2. The defective hard drive was used by North from 2007 to 2009, the period during which he was scheming with others to launch the section 404(c) process. The loss of this data only exacerbates the prejudice to PLP from EPA's refusal to search for relevant emails sent to or received from its employees' personal accounts.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 5

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 6 of 13

what some nonparties have already produced.  The following documents are just a few examples of the evidence in nonparties' possession concerning EPA's utilization of FAC members:

- On the heels of a trip to EPA headquarters, several members of the Anti-Mine Coalition ("AMC") and Anti-Mine Scientists ("AMS") exchanged an email discussing their science meeting, which includes notes of issues raised by EPA, which the AMS members would follow-up on.  Ex. 4.  EPA "wanted this information in order to be fully prepared, not to discredit" the FAC members' work.  *Id.* ¶ 1.

- Months before EPA launched the Bristol Bay Watershed Assessment, AMC member Shoren Brown emailed a number of other AMC and AMS members regarding "our science work *in support of EPA*."  Ex. 5.

- One email with the subject "Intel from EPA" confirms that EPA utilized FAC members to drum up political support.  The email's author, anti-mine activist Shoren Brown, states that he "had the chance to catch up with a few folks from EPA today" which confirms that this "intel" likely came from oral conversations not captured in EPA's files.  Ex. 6.  Brown indicates that EPA is directing them to "fire up media in a major way" and to spread the media message:  "Jobs, jobs, jobs and jobs."  *Id.* ¶ 4.

- In another email, two employees of an anti-mine group discuss a request by a PBS reporter for an "independent scientist to speak to mining impacts, salmon conservation, and Pebble Mine's potential impact."  Ex. 7.  According to the email, EPA was "muzzling" sources, attempting to "control media spin," and "coaching" the interview candidates.  *Id.*

*None* of these documents, which are just the tip of the iceberg, would have been produced to PLP if its discovery had been limited to documents in EPA's possession.  At a minimum, then, PLP must seek discovery of nonparties' documentation of meetings, calls, and other oral conversations with EPA in which EPA solicited (explicitly or implicitly) advice and recommendations, because it appears that EPA often did not document those meetings.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 6

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 7 of 13

PLP does not stand alone in its view that discovery of EPA is not enough in a FACA case like this one. The Natural Resources Defense Council ("NRDC"),[6] one of the nonparties that stridently opposed PLP's subpoenas last year, actually argued *PLP's position* on the propriety of nonparty discovery in a previous FACA case against EPA. In the 1980s, NRDC challenged EPA's procedures in connection with the agency's registration of pesticides for sale in the United States, arguing that EPA's closed-door meetings with pesticide makers violated FACA. NRDC sought discovery from, and later moved to compel, a nonparty law firm whose lawyers attended private EPA meetings on behalf of pesticide company clients that were interested in the continued use of certain chemicals. Ex. 8 at 8. NRDC sought, in part, "documents generated by deponent [the law firm's document custodian] memorializing meetings held between its representatives and certain federal officials where regulatory action . . . was discussed." *Id*. As justification for seeking this discovery from a non-EPA source, NRDC argued that the discovery was "in no way duplicative or redundant" because "[t]he only source of such evidence" was the law firm's files. *Id.* at 8-9. The district court agreed, observing that:

> It is unlikely that EPA has copies of internal [nonparty] memoranda discussing the meetings at issue. Moreover, EPA's description of the content of such meetings in documents in its files *may be significantly different from [nonparty's] characterization of the same events*.

Ex. 9 at 4 (emphasis added). The court found that documents prepared by government officials *as well as* documents prepared by other participants discussing the same closed-door meetings are "critical" to a FACA complaint. *Id.* PLP agrees.

---

[6] *See Natural Resources Defense Council v. Pebble Ltd. P'Ship*, No. 3:15-mc-0038-HRH. This dispute was transferred to this Court from the Central District of California, but PLP subsequently withdrew its nonparty subpoena to NRDC, obviating any need for the Court to reach the merits of NRDC's motion to quash.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 7

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 8 of 13

### C. EPA's Continued Assertion Of The Deliberative Process Privilege Means That Critical Evidence Is Available Only From Nonparties

EPA continues to assert the deliberative process privilege with regard to key discussions that agency employees had with nonparties, which has the effect of rendering "unavailable" essential agenda, meeting notes, and similar documents. EPA does not dispute that these materials are relevant to showing EPA's management and control of FAC members and use of the FACs to obtain collective advice. So long as EPA thwarts PLP's discovery efforts through assertion of this "privilege," however, PLP must seek these materials from nonparties who are not covered by the privilege.

## II. EPA Delayed And Withheld From Production Certain Internal FACA Guidelines Confirming That Nonparty Evidence Is Essential

PLP served its first round of document requests on EPA in July 2015. It was not until mid-January 2016 that EPA produced internal FACA guidelines that are extraordinarily useful to PLP in this case. Ex. 1. The FACA guidelines present a new and critical piece of information that was not available to PLP or the Court when the Court issued its November 18 Order. Importantly, the guidelines confirm the need for nonparty discovery to show that EPA received collective advice from *de facto* advisory committees leading up to and during the course of the 404(c) process.

Consider the following conduct identified by the EPA guidelines as implicating FACA:

- "When people attend several meetings with the same attendees, they may view themselves as a group and develop collective advice." Ex. 1 at 2.

- "[I]f you were to conduct the meeting in such a way as to facilitate or encourage the individuals to provide collective rather than individual advice, the meeting could be subject to FACA." *Id.* at 1.

- "Be aware that email discussions among a group could constitute a meeting under FACA." *Id.* at 1.

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 8

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 9 of 13

- "If you allow the individuals to coalesce into a group and provide collective advice, [then] the group could become subject to FACA." *Id.* at 2.

In light of these guidelines, it is not sufficient for PLP to obtain evidence of FACA violations from EPA alone, nor would it be realistic to expect EPA (or any government agency) to be diligent about documenting violations of its own guidelines for FACA or any other applicable law. As the examples in the previous section illustrate, EPA did not document some critical meetings, conversations, and directives that likely violated FACA. Discovery of documentation by nonparty FAC members thus becomes critical.

And even if EPA did document meetings and conversations with FAC members, PLP should be permitted to test the veracity of EPA's evidence. For example, EPA may claim that it followed the practices reflected in its own guidelines, and EPA may have created documentation to that effect. But this claim may be contradicted by minutes, notes, summaries, or other documentation created by nonparty FAC members.

Finally, the internal guidelines make clear that a critical question that goes to the heart of FACA compliance is whether the individuals who met with and supported EPA coalesced into a group. This is a fact intensive question, which necessitates inquiry into the individuals' own views and perceptions—*i.e.*, whether the various FAC members viewed themselves as part of a group utilized by EPA. Discovery of the nonparties themselves will reveal their views on this critical issue, without the potential filtering or "spin" that may have occurred in the official communications with EPA.

Indeed, the limited documents produced by other nonparty FAC members before this Court's November 18 Order show that they did view themselves as a group. For example, many of them participated in the Bristol Bay Working Group, which had its own email listserv and

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 9

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 10 of 13

which provided considerable advice and support to EPA.  The Working Group was composed of activists from leading anti-mine organizations, and its mission was "to increase the effectiveness of individual member groups and the collective impact of their efforts to preserve the biological integrity and productivity of Bristol Bay's renewable resources and the human activities and subsistence way of life they support."  Ex. 10 at 30.  The Working Group's relationship with EPA went far beyond issue-advocacy; it acted as EPA's lobbying and public-relations arm.  EPA and Working Group members met to discuss political advocacy, lobbying, grassroots activism and media relations initiatives to support a 404(c) veto.  PLP also has reason to believe that Working Group members may have been directed by EPA to achieve certain political and public affairs outcomes in support of the agency's 404(c) agenda.

Dated: February 22, 2016					Respectfully submitted,


  /s/ Thomas Amodio_____
Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone:  (907) 222-7100
Facsimile:  (907) 222-7199
*tom@reevesamodio.com*

Roger W. Yoerges (*pro hac vice*)
Brigida Benitez (*pro hac vice*)
Errol R. Patterson (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone:  (202) 429-3000
Facsimile:  (202) 429-3902
*ryoerges@steptoe.com*
*bbenitez@steptoe.com*
*epatters@steptoe.com*

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 10

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 11 of 13

Anthony A. Onorato (*pro hac vice*)
FISHER BROYLES LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
Telephone: (202) 459-3599
Facsimile: (516) 706-9877
*tony.onorato@fisherbroyles.com*

*Attorneys for Plaintiff Pebble Limited Partnership*

PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS
*Pebble Ltd. P'ship v. U.S. Envtl. Prot. Agency, et al.*, Case No. 3:14-cv-00171-HRH
Page 11

Case 3:14-cv-00171-HRH   Document 207   Filed 02/22/16   Page 12 of 13

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of February 2016, I electronically filed a copy of the foregoing **PLAINTIFF'S SUPPLEMENTAL RESPONSE TO ORDER GRANTING MOTIONS TO QUASH SUBPOENAS** using the CM/ECF system, which will electronically serve counsel for Defendants **RICHARD L. POMEROY**, **STUART JUSTIN ROBINSON**, **BRAD P. ROSENBERG**, **ALICE SHIH LACOUR**, and **ROBIN F. THURSTON**.


/s/ Jared R. Butcher
Jared R. Butcher