BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
KAREN L. LOEFFLER
United States Attorney
District of Alaska
MARCIA BERMAN
Assistant Branch Director
BRAD P. ROSENBERG
ROBIN F. THURSTON
STUART J. ROBINSON
ALICE S. LACOUR
Trial Attorneys
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Phone:  (202) 514-3374
Email: brad.rosenberg@usdoj.gov
RICHARD L. POMEROY
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Ave., #9
Anchorage, AK  99513
Phone: (907) 271-5071

*Attorneys for Defendants*
*Environmental Protection Agency and*
*Administrator Gina McCarthy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ENVIRONMENTAL PROTECTION AGENCY and GINA MCCARTHY,<br><br>　　　　Defendants. | Case No. 3:14-cv-00171-HRH<br><br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO THIS COURT'S ORDER** |

On February 22, 2016, plaintiff Pebble Limited Partnership ("Pebble") filed a "Supplemental Response"[1] to an Order that this Court issued three months ago granting third parties' motions to quash document subpoenas that Pebble had served on various non-parties.[2] Pebble's Supplemental Response, like its original Response to the Court's November 18, 2015 Order,[3] was unsolicited and is procedurally improper, as the Federal Rules of Civil Procedure do not contemplate responses by parties to court orders. Furthermore, Pebble's Supplemental Response seeks to re-argue positions that this Court has already rejected by relying upon allegedly new developments in this case. In so doing, Pebble mischaracterizes the discovery process that has already occurred and ascribes positions to the Government that it has not taken.

The Government respectfully submits that none of the issues raised in Pebble's filing are appropriately before the Court. Third parties have not yet received, let alone objected to, the subpoenas that Pebble has said it is serving. And while the reason Pebble claims it needs to serve these subpoenas is EPA's allegedly deficient discovery responses, Pebble has not, tellingly, filed a motion to compel against EPA—the appropriate way to raise discovery disputes with the Court. Pebble has not done so, presumably because the discovery issues that Pebble has raised in its Supplemental Response regarding EPA either have already been resolved to the parties' satisfaction or are not yet ripe for this Court's review.

---

[1]  Pl.'s Supp. Resp. to Order Granting Mots. to Quash Subpoenas, Dkt. No. 207 ("Supp. Resp.").

[2]  Order, Dkt. No. 200.

[3]  Pl.'s Resp. to Order Granting Mots. to Quash Subpoenas, Dkt. No. 202.

Rather than continue to work out these issues or file a motion to compel if necessary, as the Rules contemplate, Pebble has thrust these issues before the Court now in its improper Supplemental Response, leveling unsupported allegations against the Government in the process. Accordingly, the Government is compelled to respond to correct the record. This filing, and the attached supporting documentation that Pebble omitted from its Supplemental Response, addresses Pebble's allegations and provides a more accurate record regarding: 1) what has transpired in the discovery process to date; 2) the pace of discovery; 3) the Government's actual position, rather than Pebble's misconception, on responsive documents, if any, contained in personal email accounts that are not otherwise part of EPA's systems; 4) the relevance at this point in the litigation of the non-party discovery that Pebble has already obtained; and 5) the context of EPA's assertion of the deliberative process privilege.

**1. Overview of the Parties' Discovery Negotiations and the Government's Commitments to Produce Broad-Based Discovery to Pebble.**

The Government's approach toward responding to Pebble's discovery has been one of remarkable compromise. As this Court is aware, Pebble's Federal Advisory Committee Act ("FACA") claims—which are entirely procedural in nature—can only be brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* ("APA"). APA cases, in turn, are typically resolved based on an administrative record submitted by an agency. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). Nonetheless, because EPA never employed advisory committees as alleged by Pebble, there is no administrative record for EPA to submit. In light of the nature of Pebble's allegations, the Government therefore has acknowledged that some discovery—at least that which would be necessary to create the equivalent of an administrative record regarding whether EPA established or utilized advisory committees in

violation of FACA—would be appropriate. *See* Scheduling and Conference Report at 6 (Dkt. No. 135 at 7) (setting forth the Government's position that "discovery of it should be . . . limited").

Notably, Pebble already possessed an extensive set of EPA documents before it even filed its lawsuit. From the day it filed its 138-page, 540-paragraph initial Complaint, along with more than 200 exhibits, Pebble has relied upon records that it obtained pursuant to various Freedom of Information Act ("FOIA") requests to support its claim that EPA established FACs. This Court is, of course, aware of the FOIA request that is currently in litigation before it. *See Pebble Ltd. P'ship v. EPA*, No. 3:14-cv-00199-HRH (D. Alaska) ("*Pebble III*"). But that is only one of at least fifteen separate FOIA requests that Pebble has submitted to EPA or its Office of Inspector General ("OIG") to date, including five exceedingly broad requests that it has just submitted to EPA and its OIG within the last several weeks, some of which are largely duplicative of the discovery that Pebble is seeking or has sought in this litigation and, thus, can fairly be characterized as attempts at back-door discovery outside of this Court's control. *See Shannahan v. I.R.S.*, 672 F.3d 1142, 1151 (9th Cir. 2012) ("FOIA is not designed 'as a substitute for civil discovery.'" (quoting *Baldridge v. Shapiro*, 455 U.S. 345, 360 n.14 (1982))). In addition, Pebble has served FOIA requests on the U.S. Fish and Wildlife Service, the Bureau of Land Management, the National Oceanic and Atmospheric Administration, the National Park Service, the U.S. Army Corps of Engineers, and the U.S. Geological Survey. Pebble used the documents it received from FOIA and other sources to obtain a preliminary injunction and, six months later, confidently declared in open Court that "we think we're probably not that far away of [sic] being able to move for summary judgment." Tr. Of Oral Argument on Mot. to Dismiss, May 28, 2015 (Dkt. No. 127) at 28:9-11.

Once the doors to discovery were unlocked, however, Pebble disregarded the narrow scope of its own claims as well as its prior representations to the Court. Instead, it embarked on a wide-ranging and disproportional discovery expedition, serving 101 separate document requests[4] on such varied topics as EPA's policy objectives, communications with other federal agencies, EPA's public relations strategies, the Data Quality Act, the Information Quality Act, the resumes of EPA contractors and Senior Environmental Employment ("SEE") enrollees, EPA's document preservation policies, and a former EPA Administrator's use of text messaging, among other things.[5] Only five requests referred on their face to the Federal Advisory Committee Act or FACA.[6] The Government served its objections and responses to plaintiff's document requests and, in so doing, identified 27 broad categories of documents that EPA committed to producing. *See* Defs.' Objections and Resps. to Pl.'s First Req. for Produc. of Docs. ("Defs.' Objections and Resps.") (attached hereto as Ex. A); Nov. 19, 2015 Letter from Brad Rosenberg to Roger Yoerges (attached hereto as Ex. B).

---

[4] In a second set of Requests for Production, Pebble served an additional 29 requests.

[5] In fact, Pebble's document requests could fairly be characterized as seeking more than 1,000 categories of documents, as numerous requests referred to a lengthy list of outside individuals who had communicated with EPA over the course of many years, including several individuals who are not even alleged by Pebble to be members of any of the so-called advisory committees.

[6] Nearly contemporaneously with its service of the document requests, Pebble noticed the depositions of numerous EPA officials, including the Regional Administrator for EPA Region 10. The Government spent considerable time and resources attempting to accommodate Pebble's requests to immediately begin taking depositions which, according to Pebble, were intended to "substantially increase the chances that this case settles sooner." Mot. Under Fed. R. Civ. P. 12(b)(2)(A) at 3, Dkt. No. 136 at 4. This Court rejected plaintiff's gambit to both take early depositions and keep them open indefinitely (or at least until after documents are produced). *See* Order, Dkt. No. 152. Shortly thereafter and only days before the first scheduled deposition, Pebble abandoned its efforts to pressure the Government and decided not to take early depositions.

Pebble Ltd. Partnership v. EPA, No. 3:14-cv-00171-HRH  Page 5

Standing alone, the documents that EPA initially committed to producing pursuant to its Objections and Responses to Pebble's document requests were broader in scope than what is conceivably relevant to its FACA claims. The parties then embarked on a meet-and-confer process that required several months of negotiations due to the breathtaking scope of plaintiff's document requests. During that process, EPA committed to producing numerous additional categories of documents in order to resolve Pebble's concerns without the necessity of Court intervention. *See* Dec. 4, 2015 Letter from Roger Yoerges to Brad Rosenberg (attached hereto as Ex. C); Dec. 18, 2015 Letter from Brad Rosenberg to Roger Yoerges ("Dec. 18, 2015 Letter") (attached hereto as Ex. D); Dec. 23, 2015 Letter from Roger Yoerges to Brad Rosenberg (attached hereto as Ex. E). Moreover, early in the discovery process the Government invited Pebble to prioritize those categories of documents that it wanted expedited, which Pebble did. *See* Sept. 24, 2015 Letter from Roger Yoerges to Brad Rosenberg ("Sept. 24, 2015 Letter") (attached hereto as Ex. F) (prioritizing requests).[7]

By January, 2016, the parties had reached an agreement as to how to proceed regarding the scope of Pebble's document requests without requiring judicial intervention. *See* Jan. 13, 2016 Letter from Roger Yoerges to Brad Rosenberg (attached hereto as Ex. G); Jan. 20, 2016 Letter from Brad Rosenberg to Roger Yoerges (attached hereto as Ex. H). In confirming the parties' agreement, however, Pebble also raised for the first time the issue of EPA employees allegedly using their personal email accounts to conduct agency business. *See* Jan. 21, 2016 Letter from Roger Yoerges to

---

[7] The letter was sent to undersigned counsel as a Microsoft Word document containing an auto-updating date field. Thus, while the letter was sent on September 24, 2015, the date of the letter that appears in Exhibit F reflects the date that the letter was converted to a PDF file for purposes of this filing.

Brad Rosenberg ("Jan. 21, 2016 Letter") (attached hereto as Ex. I).  At a February 10, 2016 in-person meet-and-confer conference regarding Pebble's objections and responses to the Government's document requests, undersigned counsel informed Pebble's counsel that the Government was working on a response to Pebble's January 21 letter requesting that the Government search EPA employees' personal email accounts for potentially responsive records.

The very next day, Pebble served a series of additional subpoenas on a group of current and former Government employees, seeking "[a]ll Documents Relating to the Pebble Mine Project in Your personal files that have not been previously provided or conveyed to EPA."  *See, e.g.*, Subpoena to Robert Sussman at 4 (attached hereto as Ex. J).  The following day, Pebble served a second set of document requests on EPA, including numerous variations of a request for "[a]ll email communications pertaining or regarding to the Pebble Mine Project sent or received by current or former EPA employees on their personal email accounts to or from [various individuals]."  Pl.'s Second Set of Reqs. for Produc. (attached hereto as Ex. K).  Because the subpoenas and document requests were served within two days of the parties' meeting, undersigned counsel did not have an opportunity to provide to Pebble the Government's position regarding the search of EPA employees' personal email accounts raised in Pebble's January 21, 2016 letter (which had by then been superseded by the subpoenas and new document requests).  Pebble then filed its Supplemental Response.

  **2.  Pebble Mischaracterizes the Pace of Discovery in this Case.**

In its Supplemental Response, Pebble criticizes EPA's production of documents as "an exceedingly slow one, . . . with multiple disputes and controversies that have required substantial negotiations over the scope of what PLP seeks and what Defendants are prepared to produce."

Supp. Resp. at 1 (Dkt. No. 207 at 2). The Government believes that the parties have engaged in good-faith and substantial negotiations, which have successfully resolved most of the parties' disputes to date.[8] Those negotiations, which reflect the fact that Pebble chose to serve 101 separate document requests rather than discovery targeted to the narrow, procedural issues in this case, did *not* slow the pace of production of documents to Pebble. To the contrary, the Government has been rolling the production of documents based on the priorities that it invited Pebble to provide. To date, the Government has produced nearly 12,000 documents (and in excess of 100,000 pages of documents):

- September 25, 2015: 82 documents/1,145 pages produced
- October 9, 2015: 2,493 documents/46,031 pages produced
- November 3, 2015: 1,254 documents/9,425 pages produced
- November 20, 2015: 1,168 documents/12,897 pages produced
- December 14, 2015: 1,611 documents/6,086 pages produced
- December 31, 2015: 1,061 documents/6,042 pages produced
- January 20, 2016: 1,787 documents/7,582 pages produced
- February 5, 2016: 719 documents/6,893 pages produced[9]
- February 16, 2016: 1,267 documents/3,459 pages produced
- February 23, 2016: 454 documents/2,493 pages produced

---

[8] In addition to the private email issue, there are a small number of additional issues that the parties are still negotiating. Because Pebble does not reference those other issues in its filing, the Government will not address them here.

[9] This production was re-produced on March 8, 2016, resulting in the removal of 55 duplicate pages.

These more than 100,000 pages of documents are in addition to the approximately 65,000 pages of documents that EPA has provided to Pebble or its representatives in response to its numerous FOIA requests. *See* Dec. 18, 2015 Letter (Ex. D). And those EPA FOIA documents are in addition to the substantial volume of documents that Pebble has received from other Government agencies pursuant to FOIA.

In particular, Pebble criticizes EPA for producing an internal FACA guidance document "only in *January* of this year," claiming that EPA has "[d]elayed" the document's production. Supp. Resp. at 2, 8 (Dkt. No. 207 at 3, 9); *see generally id.* at 8-10 (Dkt. No. 207 at 9-11). Plaintiff's criticism is misplaced. First, as noted above, the Government invited Pebble to prioritize its document requests. While three of Pebble's document requests seek FACA guidance or compliance documents, Pebble prioritized none of them, instead focusing on other aspects of its case. *See* Sept. 24, 2015 Letter (Ex. F); Feb. 17, 2016 Letter from Alice LaCour to Brigida Benitez ("Feb. 17, 2016 Letter") (attached hereto as Ex. L). Nonetheless, the Government produced the vast majority of its FACA guidance documents responsive to the first of these three requests in September, 2015, and produced a handful of remaining internal documents responsive to that request by February 5, 2016. *See* Feb. 17, 2016 Letter (Ex. L).[10] As for the other two requests, which sought FACA documents in the context of the Pebble Mine Project rather than general guidance documents, the Government

---

[10] Plaintiff's Request for Production No. 28 sought EPA policies, rules, guidance, procedures, or protocols relating to FACA. EPA committed to producing EPA's FACA Handbook and documents setting forth EPA's policies, rules, guidance, procedures, and protocols relating to establishing a committee under FACA. *See* Defs.' Objections and Resps. at 25 (Ex. A).

agreed to prioritize the review and processing of those documents promptly after Pebble asked it to. *See id.*[11]

Second, Pebble claims that the "internal" FACA guidance document "present[s] a new and critical piece of information that was not available to PLP or the Court when the Court issued its November 18 Order" granting third parties' motions to quash. Supp. Resp. at 8 (Dkt. No. 207 at 9). That guidance document, which was produced together with an internal email, demonstrates that EPA was aware of (and, in fact, complied with) its FACA obligations. *See* Supp. Resp. Ex. 1 (Dkt. No. 207-2). A document that shows government employees seeking to understand FACA and comply with it is not some sort of smoking gun. *It shows government employees doing their jobs.* Moreover, the guidance document is not "internal" at all, but instead is publicly available on EPA's website. *See* http://www.epa.gov/sites/production/files/2015-03/documents/719437.pdf. If anything, the fact that EPA has made publicly available its FACA guidelines demonstrates its commitment to openness and transparency. And in any event the mere fact that EPA has FACA guidance documents does not somehow justify Pebble's desire for third-party discovery. *See* Supp. Resp. at 8-10 (Dkt. No. 207 at 9-11).

---

[11] Request No. 29 was more nuanced, seeking documents relied upon by EPA in connection with the Pebble Mine Project that relate to FACA. EPA committed to producing documents that refer on their face to FACA and the Pebble Mine Project. *See id.* at 25-26. Request No. 30 similarly sought FACA compliance documents in connection with the Bristol Bay Assessment Team and the Intergovernmental Technical Team. Due to its overlapping nature, EPA referred to its response to Request No. 29. *See id.* at 26-27.

### 3. The Government Disputes Pebble's Unsupported Allegation that EPA Employees Regularly Used Personal Email Accounts to Conduct Agency Business.

In its Supplemental Response, Pebble asserts that "EPA had already admitted in multiple venues that [Phil] North and other EPA employees used their personal email accounts to conduct agency business, in violation of both the Federal Records Act and agency policies." Supp. Resp. at 4 (Dkt. No. 207 at 5). Pebble similarly describes "evidence" (in the form of a generic, non-Pebble specific article prepared by a private legal group) that at least four other EPA officials used personal email for this purpose. *Id.* Based on these assertions, Pebble presents the *ipse dixit* that "the personal emails of EPA officials contain critical evidence." *Id.* More remarkably, Pebble represents to the Court that, in the time since the Court issued its Order foreclosing Pebble's previous efforts to obtain third-party discovery, "EPA's position has crystalized, and it has now stated during the parties' meet-and-confer process that it does not agree that it has an obligation under Rule 26 (or FOIA for that matter) to search for or produce Agency records in personal email accounts. Those records are not, according to EPA, within the agency's possession, custody, or control." *Id.*

Pebble blatantly mischaracterizes the Government's position as having "crystalized" against searching employees' personal email accounts.[12] As noted above, on February 10, 2016, the Government's counsel told Pebble's counsel that the Government was working on its response to Pebble's January 21 letter, which requested that the Government search EPA employees' personal

---

[12] The only citation that Pebble provides for the Government's apparent representation is a "see also" cite to the parallel FOIA case that is also before the Court. *See* Supp. Resp. at 4, Dkt. No. 207 at 5. It is unclear why Pebble would cite to the FOIA case for EPA's position in civil discovery. Furthermore, this Court has held in the separate FOIA action that "[s]uch communications, existing exclusively on private servers, are not within the EPA's possession, and the EPA cannot be said to have withheld documents not within its possession." Order, *Pebble III*, Dkt. No. 53 at 3.

email accounts. The Government had not yet provided this response to Pebble as of the date that Pebble filed its Supplemental Response. Nor has the time even elapsed now for the Government to serve its objections to Pebble's second round of document requests that relate to personal email accounts, much less meet and confer regarding those requests. By making unsupported representations about non-existent Government positions, plaintiff has prematurely and unjustifiably thrust this issue before the Court.

The Government disputes Pebble's premise that emails concerning government business contained in a personal email account that are not otherwise contained in Agency systems will be "critical evidence" in this FACA case. As an initial matter, the EPA Office of Inspector General has reviewed the issue and found "no evidence to support that the EPA used, promoted, or encouraged the use of private email accounts to circumvent records management responsibilities."[13] Moreover, the use of a personal email account to conduct Government business, by itself, neither violates current EPA policy nor the Federal Records Act, as amended, so long as any emails that qualify as a federal record are captured in Agency systems. EPA's current Records Management Policy permits the limited use of a personal email account so long as the email is either copied to the employee's official email account at the time of creation or transmission or is forwarded to that EPA email account within 20 days of creation or transmission.[14] So long as an email created or received on a

---

[13] *See* EPA Office of Inspector General, Report No. 13-P-0433, Congressionally Requested Inquiry Into the EPA's Use of Private and Alias Email Accounts (Sept. 36, 2013) at 5, available at https://www.epa.gov/sites/production/files/2015-09/documents/20130926-13-p-0433.pdf.

[14] *See* http://www.epa.gov/sites/production/files/2015-03/documents/cio-2155.3.pdf, at 4-5; *see also* EPA's Records Management Policy (dated 2/10/2015), available at http://www.epa.gov/records/policy/2155/rm_policy_cio_2155-3.pdf. EPA's current Records Management Policy reflects changes to the Federal Records Act that, in November 2014, first

personal email account is copied to or from or forwarded to an EPA email account, it would be incorporated into EPA's systems and captured by searches of those systems. Moreover, any stray personal emails that may have inadvertently not been forwarded to Agency systems are unlikely to contain information relevant to this litigation. Agencies, not individuals, establish advisory committees. For these reasons, the Government believes that intrusive searches for personal email communications beyond what the Agency has committed to do (as described below) would be burdensome and disproportionate to the needs of this case, especially in light of the volume of records EPA has committed to produce and already has produced.

Moreover, Pebble is simply incorrect when it asserts that, in addition to former EPA employee Phil North, "there is evidence that at least four other EPA officials involved in this case used personal email to conduct agency business." Supp. Resp. at 4 (Dkt. No. 207 at 5) (referring to former Administrator Lisa Jackson, Bob Perciasepe, Bob Sussman, and Michelle DePass). Former Administrator Lisa Jackson's secondary "Richard Windsor" email account was an epa.gov account on agency systems, subject to all relevant searches performed by the Agency for discovery and other document requests, and is not correctly characterized as a personal email account. With respect to her use of a personal or non-governmental email account, the former Administrator stated under oath that she made a practice of forwarding any emails which could be construed as pertaining to government business or government records into the EPA system so that they could be captured and preserved. The Government provided this transcript to Pebble on September 25, 2015, and it was also attached to the Government's summary judgment filing in the parallel FOIA case. *See*

---

required federal employees to copy or forward emails from a personal account to Agency systems within 20 days. However, EPA's Records Management Policy called for the forwarding of such emails to Agency systems (without the 20 day requirement) since June of 2013.

Pebble Ltd. Partnership v. EPA, No. 3:14-cv-00171-HRH                                                                 Page 13

Case 3:14-cv-00171-HRH   Document 211   Filed 03/16/16   Page 13 of 19

*Pebble III*, Dkt. No. 36 (Ex. Q) at 530-75. Bob Perciasepe, former Deputy Administrator, has also stated under oath that if someone sent an EPA-related email to his personal email account he would forward the email to his work email account to be captured in the Agency system, and that such occasions were rare in any event. Finally, the only "evidence" provided by Plaintiff regarding Bob Sussman or Michelle DePass's use of a personal email account are statements made, without any factual support, in the cited article in which a third party claims these individuals used personal email accounts. Moreover, Pebble has subpoenaed Mr. Sussman, who has confirmed that he does not have possession of agency emails relating to the Pebble Mine Project that had not previously been provided to EPA. *See* Feb. 29, 2016 Objections to Subpoenas (attached hereto as Ex. M).

Pebble has successfully served a subpoena on Phil North, who has now provided the Government, through his private counsel, with documents that are responsive to the subpoena. *See* Feb. 10, 2016 Objections to North Subpoena (attached hereto as Ex. N). Those documents are being reviewed for responsiveness and, subject to the Government's objections, will promptly be produced to Pebble. Notably, the Government has confirmed that the vast majority of those documents are duplicates of documents that EPA had already collected to respond to Pebble's discovery requests and various FOIA requests. EPA has been reviewing the remaining documents to determine whether they are also duplicates of documents otherwise in EPA's possession.

While the Government respectfully believes that any *de minimis* use of personal email accounts by EPA employees is irrelevant to whether the Agency established or utilized advisory committees, the Government has nonetheless identified key EPA custodians—including but not limited to all of the current EPA employees that plaintiff noticed for depositions either last fall or this spring—and is in the process of ascertaining whether any of those current employees used

personal email accounts to conduct agency business[15] relating to the matters at issue in this case without forwarding any such emails to EPA's systems or otherwise ensuring that such email communications were captured within EPA's systems. The Government began that inquiry shortly after Pebble raised the issue for the first time in its January 21 letter, and was in the midst of conducting that inquiry at the time that Pebble served the subpoenas and propounded the additional discovery. Most of the custodians that EPA has identified to date either did not use personal email accounts to conduct agency business at all or, if they occasionally used personal emails, those emails have been provided to the Government.[16]

    **4.    The Government Will Address the Non-Party Discovery Already Produced at an Appropriate Time.**

Pebble asserts that the documents it has already received from non-parties demonstrate that "nonparty discovery is needed to unearth the full extent of how EPA utilized these groups within the meaning of FACA." Supp. Resp. at 5 (Dkt. No. 207 at 6). But it is not appropriate to litigate the substantive merits of Pebble's claims in the context of its unsolicited, improper, in-the-midst-of-discovery "Supplemental Response" to this Court's Order.

The Government is prepared to address the non-party documents that have been produced to date in more detail if and when the Court believes that a more fulsome discussion of the non-party discovery that has already been produced is relevant to whether additional discovery is necessary. For now, however, the Government respectfully submits that the snippets from the

---

[15] An employee may have needed to use a personal email account if, for example, they are working remotely and are unable to access EPA's systems.

[16] The Government is in the process of evaluating whether there are any responsive emails that are not already within EPA's systems. The Government will process any such emails in a manner consistent with the Government's discovery commitments as previously agreed-upon by the parties.

exhibits cherry-picked by Pebble do not show "EPA's utilization of FAC members" or that third-party discovery is justified.[17] *Id.* at 6 (Dkt. No. 207 at 7). Nor is there any merit to Pebble's argument that third-party discovery is necessary because "it appears that EPA often did not document . . . meetings." *Id.* Plaintiff asked the Government to prioritize the production of communications with third parties, which it has done. The Government has already produced in excess of 100,000 pages of documents. The fact that the documents that EPA has produced do not support the substance of Pebble's claims does not give it license to conduct sweeping discovery of the communications of any entity that happened to share its views opposing the Pebble Mine with EPA. It simply means that Pebble's claims are unsupported by the evidence.

     **5.**     **The Assertion of the Deliberative Process Privilege Has Nothing to Do with Third-Party Discovery, and in Any Event, the Court Has Upheld EPA's Assertion of the Privilege.**

Pebble criticizes EPA's assertions of the deliberative process privilege, baldly asserting that "EPA does not dispute that these [deliberative] materials are relevant to showing EPA's management and control of FAC members and use of FACs to obtain collective advice." Supp. Resp. at 8 (Dkt. No. 207 at 9). Pebble appears to equate the Government's reasonableness in its discovery responses to a concession that most of the discovery that Pebble has been seeking is somehow relevant to its FACA claims. The Government has repeatedly explained to Pebble that its

---

[17] The Government has begun to review those same non-party documents—which were only recently provided to the Government by Pebble's counsel—and has reached a conclusion contrary than that espoused by Pebble. Non-parties certainly shared their views with EPA, but those efforts were coordinated and controlled by those non-parties, not EPA. Indeed, the very first document cited by Pebble is an email that refers on its face to "lobbying" EPA, Supp. Resp. Ex. 4, Dkt. No. 207-5, with the subsequent email among various non-parties demonstrating how they were coordinating their own efforts, including how they were "develop[ing] a work plan to finalize our science based arguments to EPA." *Id.* Ex. 5, Dkt. No. 207-6.

broad-based discovery—in which it has sought vast swaths of documents relating to nearly every aspect of EPA's work relating to Bristol Bay—has little connection to the narrow, procedural claims at issue in this FACA litigation.

Nor has the application of the deliberative process privilege "thwart[ed]" Pebble's discovery efforts, as it claims. *Id.* In the parallel FOIA case, Pebble successfully argued that the Court should review, *in camera*, a set of documents that it requested in discovery in this case and that were redacted in part under the deliberative process privilege. Pebble hand-picked these documents as its best sample, describing them as "the core evidence requested in the FACA action," claiming that it had a "compelling need for the documents that EPA claims are deliberative," and asserting that the resolution of the privilege as to these documents would "advance the resolution of the privilege dispute in the FACA lawsuit." Pl.'s Resp. to Court's Order, *Pebble III*, at 3 (Dkt. No. 55 at 3); Pl.'s Opp'n to Def's. Mot. for Miscellaneous Relief, *Pebble III*, at 1 (Dkt. No. 67 at 6); Pl.'s Comments on Tentative Disposition, *Pebble III*, at 3 (Dkt. No. 52 at 3).

This Court upheld EPA's application of the deliberative process privilege regarding the FACA litigation documents that were submitted to the Court for *in camera* review. Rejecting Pebble's argument that its need for fact-finding overrode EPA's privilege, the Court found these documents to be both pre-decisional and deliberative. Order, *Pebble III*, at 10 (Dkt. No. 71 at 10). Nor were they "core"; instead, the Court found that they "have nothing to do with whether defendant utilized or established advisory committees, which is what is at issue in plaintiff's FACA case." *Id.* at 11. Thus, EPA's application of the deliberative process privilege—which this Court has already upheld—has not "thwarted" any valid discovery requests that Pebble may have.

Pebble Ltd. Partnership v. EPA, No. 3:14-cv-00171-HRH                                                    Page 17

Case 3:14-cv-00171-HRH   Document 211   Filed 03/16/16   Page 17 of 19

| | |
|---|---|
| March 16, 2016 | Respectfully submitted, |
| KAREN L. LOEFFLER<br>United States Attorney<br>District of Alaska | BENJAMIN C. MIZER<br>Principal Deputy Assistant Attorney General<br>Civil Division |
| RICHARD L. POMEROY<br>Assistant United States Attorney<br>District of Alaska | MARCIA BERMAN<br>Assistant Branch Director<br>Federal Programs Branch |
| | /s/ Brad P. Rosenberg<br>BRAD P. ROSENBERG<br>(DC Bar No. 467513)<br>ROBIN F. THURSTON<br>(Illinois Bar No. 6293950)<br>STUART J. ROBINSON<br>(California Bar No. 267183)<br>ALICE S. LACOUR<br>(Texas Bar No. 24083839)<br>Trial Attorneys<br>United States Department of Justice<br>Civil Division, Federal Programs Branch<br>Phone: (202) 514-3374 (Rosenberg)<br>Phone: (202) 616-8188 (Thurston)<br>Phone: (202) 514-9239 (Robinson)<br>Phone: (202) 514-3489 (LaCour)<br>Fax: (202) 616-8460<br>Email: brad.rosenberg@usdoj.gov<br>Email: robin.f.thurston@usdoj.gov<br>Email: stuart.j.robinson@usdoj.gov<br>Email: alice.s.lacour@usdoj.gov<br><br>Courier Address:<br>20 Massachusetts Ave., N.W.<br>Washington, DC 20530<br><br>Mailing Address:<br>P.O. Box 883<br>Washington, DC 20044<br><br>*Attorneys for Defendants*<br>*Environmental Protection Agency and*<br>*Administrator Gina McCarthy* |

CERTIFICATE OF SERVICE

I certify that on March 16, 2016, I caused to be filed electronically the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO THIS COURT'S ORDER with the Clerk of Court using the Court's CM/ECF system, which sends a Notice of Electronic Filing to counsel of record.

/s/ Brad P. Rosenberg
BRAD P. ROSENBERG