IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

PEBBLE LIMITED PARTNERSHIP, )
)
                       Plaintiff, )
)
  vs. )
)
ENVIRONMENTAL PROTECTION )
AGENCY, et al., )
                            )     No. 3:14-cv-0171-HRH
                   Defendants. )
_____)

O R D E R

Motion to Compel

Defendants move to compel the production of documents.[1] This motion is opposed.[2]

Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Pebble Limited Partnership. Defendants are the Environmental Protection

Agency (EPA) and Gina McCarthy.

---

[1]Docket No. 209.

[2]Docket No. 215.

Plaintiff commenced this case on September 3, 2014. Plaintiff alleges that defendants formed three advisory committees to assist the EPA "in developing and implementing an unprecedented plan to assert EPA's purported authority under Section 404(c) of the federal Clean Water Act ... in a manner that will effectively preempt [p]laintiff from exercising its right through the normal permit process to extract minerals from the Pebble Mine deposit in Southwest Alaska."[3] Plaintiff alleges that "[r]elying extensively on the advice and recommendations from these unlawfully established [committees], EPA prepared a biased assessment of hypothetical mining activities in the Bristol Bay Watershed and then used that flawed assessment as the basis of administrative proceedings under Section 404(c)."[4] Plaintiff alleges that three committees were formed in violation of the Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §§ 1-16. Plaintiff seeks declaratory and injunctive relief for its FACA claims. Plaintiff seeks declarations that the defendants violated the FACA and the APA in forming each of the three committees.[5] Plaintiff seeks an injunction enjoining the "EPA from using and/or relying in any way upon" the Bristol Bay Watershed Assessment (BBWA) and "from issuing Section 404(c) restrictions, at least until it ceases to utilize the

---

[3]Second Amended Complaint for Declaratory and Injunctive Relief at 2, ¶ 3, Docket No. 133. Plaintiff alleges that one of the groups, the Anti-Mine Assessment Team, had a subgroup called the Intergovernmental Technical Team, which is a federal advisory committee "in its own right." Id. at 39, ¶ 196.

[4]Id. at 3, ¶ 5.

[5]Id. at 42, ¶¶ A, B, & C.

illegal [committees] (and the BBWA that resulted therefrom), legally constitutes the [committees] under FACA, and thereafter follows all FACA requirements[.]"[6] And plaintiff seeks an "order directing [d]efendants to release to the public all materials, including all documents and communications, related to the activities of the three [committees.]"[7]

On September 15, 2014, plaintiff moved for a preliminary injunction.[8] Plaintiff sought to enjoin defendants from proceeding any further under Section 404(c), or alternatively, from using the BBWA in any way in connection with the Section 404(c) proceedings. Plaintiff argued that it would suffer irreparable harm if a preliminary injunction did not issue because the time to raise FACA challenges is during the administrative process.[9] Plaintiff also argued that it would suffer irreparable economic harm because its mining rights would be effectively lost if the EPA's Section 404(c) determination proceeded as planned.[10] Plaintiff contended that the EPA's pending Section 404(c) proceedings had been an impediment to plaintiff's obtaining any significant new investment.[11]

---

[6]Id. at ¶¶ E & F.

[7]Id. at ¶ D.

[8]Docket No. 7.

[9]Id. at 19-20.

[10]Id. at 21.

[11]Id.

On November 25, 2014, the court granted plaintiff's motion for a preliminary injunction.[12] In doing so, the court "conclude[d] that plaintiff will have no remedy for claimed Federal Advisory Committee Act (FACA) violations and will therefore suffer irreparable harm if it is not permitted to litigate its FACA claims prior to final agency action on the pending Section 404(c) proceedings."[13] The court enjoined defendants "from taking any action in furtherance of a decision to veto a possible Pebble (Bristol Bay area) mine project pursuant to Section 404(c) of the Clean Water Act until after the court has ruled on the merits of plaintiff's complaint."[14]

On November 2, 2015, defendants served their first set of requests for production of documents upon plaintiff.[15] The requests sought documents relating to the financial harm allegedly suffered by plaintiff and its parent company, Northern Dynasty Minerals, Ltd., and documents relating to plaintiff's ability to make its views known to the EPA via third parties acting on plaintiff's behalf. Defendants contend that plaintiff failed to fully respond to the requests involving these two topics.

Defendants now move to compel plaintiff to respond fully to these requests.

---

[12]Docket No. 90.

[13]Id. at 2.

[14]Id. at 3.

[15]Exhibit 1, Defendants' Motion to Compel [etc.], Docket No. 209.

-4-

Discussion

Rule 37(a)(3), Federal Rules of Civil Procedure, provides, in pertinent part, that "[a] party seeking discovery may move for an order compelling ... production[.]" Rule 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b). Documents are within the scope of Rule 26(b) if they are "relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b). "Relevancy for discovery purposes is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case.'" E.E.O.C. v. Wal Mart Stores, Inc., 276 F.R.D. 637, 641 (E.D. Wash. 2011) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978)).

As an initial matter, plaintiff argues that the instant motion is premature. However, defendants have complied with Rule 37 which allows a party to bring a motion to compel after making a good faith effort to resolve the discovery disputes at issue. The instant motion is not premature.

Turning then to the merits of defendants' motion, defendants first seek to compel plaintiff to produce documents related to plaintiff's alleged financial harm. Defendants contend that plaintiff has alleged throughout this litigation that the EPA, by undertaking Section 404(c) proceedings, has effectively prevented plaintiff from building a mine at the Pebble Deposit and that as a result, plaintiff has suffered financial harm. In order to test

plaintiff's allegations, defendants seek discovery of documents related to plaintiff's alleged financial harm.

In RFP Nos. 31-33, defendants request documents relating to plaintiff's assertions that EPA's actions interfered with the permitting process. More specifically, RFP No. 31 asks for "Pebble's preliminary mine development plans."[16] RFP No. 32 asks for documents related to "Pebble's decision not to file a permit application."[17] And RFP No. 33 asks for documents related to "Pebble's anticipated schedule for submitting an application for a Clean Water Act 404 permit from the Corps of Engineers for the Pebble Deposit."[18]

In RFP Nos. 34-37, 39 and 46, defendants request documents related to plaintiff's assertions that the EPA's actions caused the loss of outside investors and investment opportunities and threatened plaintiff's "very existence." More specifically, RFP No. 34 asks for all documents related to plaintiff's communications with Anglo American plc.[19] RFP No. 35 asks for all documents related to plaintiff's communications with Rio Tinto Group.[20] RFP No. 36 asks for all documents related to plaintiff's communications with Mitsubishi

---

[16]Defendants' First Set of Requests for Production of Documents [etc.], at 7, Exhibit 1, Defendants' Motion to Compel [etc.], Docket No. 209.

[17]Id.

[18]Id.

[19]Id. at 7-8

[20]Id. at 8.

Corporation.[21] RFP No. 37 asks for all documents related to plaintiff's communications with any other "partners or potential partners to the extent those Documents or Communications discuss the viability of a mine at, on, or in the Pebble Deposit."[22] RFP No. 39 asks for "[d]ocuments constituting, reflecting, or referring to Communications with any entity that has provided financing to Pebble to the extent that those Documents or Communications discuss the viability of a mine at, on, or in the Pebble Deposit...."[23] And RFP No. 46 asks for all documents related "to any information provided to prospective partners or investors in Pebble, including forecasts, project schedules, project plans, or projections."[24]

In RFP Nos. 42-45, 47 and 48, defendants request all documents related to plaintiff's assertions that the EPA's actions caused monetary losses including diminished share prices. More specifically, RFP No. 42 asks for plaintiff's audited financial statements or plaintiff's unaudited financial statements if audited financial statements were not prepared.[25] RFP No. 43 asks for all documents related to "Pebble's projections of future financial

---

[21]Id.

[22]Id.

[23]Id.

[24]Id. at 9.

[25]Id.

performance...."[26] RFP No. 44 asks for all documents related "to any information provided to Pebble's board of directors and any of its subcommittees, including briefing books and presentations."[27] RFP No. 45 asks for "[d]ocuments reflecting or referring to valuations of any assets or liabilities held by Northern Dynasty Minerals Ltd. or any of its subsidiaries...."[28] RFP No. 47 asks for documents related to "the financial impacts of the Bristol Bay Watershed Assessment on Pebble."[29] And RFP No. 48 asks for all documents related to "the financial impacts of the alleged FACA violations on Pebble."[30]

Plaintiff objected to the financial harm requests on relevancy grounds.[31] Defendants, however, argue that information relating to plaintiff's financial harm is relevant because since the outset of this litigation, plaintiff has claimed that it has been financially harmed by the EPA's activities and argued that it is entitled to relief based on that financial harm. Defendants point out that plaintiff raised an economic harm argument in its motion for a

---

[26]Id.

[27]Id.

[28]Id.

[29]Id.

[30]Id. at 10.

[31]Plaintiff also raised some boilerplate objections of overbreadth, disproportionality, vagueness, burden, privacy, and intent to harass. But "[b]oiler-plate, generalized objections are inadequate and tantamount to not making any objection at all." Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal 1999).

-8-

preliminary injunction and that in response to defendants' motion to dismiss, plaintiff stated that its complaint "alleges facts showing that "[p]laintiff's interests under FACA, as well as its economic interests in the development of the mineral rights that it holds, were harmed."[32] Defendants argue that it is clear that plaintiff's allegations of financial harm will continue to be at issue in this case given that plaintiff declined to stipulate that the issue of its financial harm be excluded from this litigation. Defendants thus argue that it should be allowed to take discovery on whether and to what degree plaintiff has suffered financial harm as a result of the EPA's activities.

Documents related to plaintiff's financial harm are not relevant to any theory or defense in this case. This case is about plaintiff's procedural rights, not plaintiff's economic losses. Although plaintiff raised the issue of its economic harm in its motion for a preliminary injunction (thus perhaps inviting the discovery requests at issue), the court did not rely on plaintiff's alleged financial harm in granting the motion for a preliminary injunction. Rather, the court's irreparable harm finding was based on case authority that holds that a FACA violation is likely incurable after final agency action. Likewise, if plaintiff were to prevail on its claims that defendants violated the FACA, the court would not have to rely on plaintiff's alleged economic harm in order to issue a permanent injunction. In short, plaintiff's alleged financial harm is not at issue in this case and plaintiff will not be

---

[32]Plaintiff's Opposition to Motion to Dismiss at 2, Docket No. 104.

required to respond to defendants' requests for production seeking documents related to plaintiff's alleged financial harm. More specifically, plaintiff is not required to respond to RFP Nos. 31-33, 34-37, 39 and 42-48.

Defendants next seek to compel plaintiff to produce documents related to plaintiff's ability to makes it views known to the EPA via third parties. One of defendants' defenses in this action is that plaintiff had equal opportunity to present its views to the EPA. In RFP Nos. 19-21, 23 and 25-26, defendants request documents related to this issue. More specifically, RFP No. 19 asks for documents relating "to any payments, financial contributions, or other forms of financial compensation made by Pebble to any individual or entity to support mining at, on, or in, or to otherwise oppose regulation of, the Pebble Deposit."[33] RFP No. 20 asks for documents related to any payments or financial contributions made by plaintiff to Trefon Angasan and RFP No. 21 asks for the same information as to Lisa Riemers.[34] RFP No. 23 asks for documents related to any payments or financial contributions plaintiff made to Iliamna Development Corporation and RFP No. 25 asks for the same information as to the Alaska Peninsula Corporation.[35] And RFP No. 26 asks for documents

---

[33]Defendants' First Set of Requests for Production of Documents at 6, Exhibit 1, Defendants' Motion to Compel [etc.], Docket No. 209.

[34]Id.

[35]Id.

-10-

related to any payments or financial contributions plaintiff made "to any individual or entity that Pebble knows contacted the EPA regarding the Pebble Deposit."[36]

Plaintiff has agreed to "confirm whether payments were made to certain third parties, without identifying the amounts of any such payments."[37] Defendants argue that this is inadequate. Defendants argue that they need to know how much plaintiff might have paid the third parties because the amount of compensation could determine the degree to which the third parties were acting on behalf of plaintiff.

Although the court doubts that the amount of the payments that plaintiff made to third parties has much relevance, this information is not totally irrelevant to defendants' contention that plaintiff had an equal opportunity to present its views on the Pebble project to the EPA. Thus, in responding to the "third party" requests for production, plaintiff must include in its production any documents relating to the amount of payments it made to third parties.

Conclusion

Defendants' motion to compel is granted in part and denied in part. The motion is denied as to defendants' financial harm requests (RFP Nos. 31-33, 34-37, 39 and 42-48). The motion is granted as to defendants' "third party" requests (RFP Nos. 19-21, 23 and 25-26).

---

[36]Id. at 7.

[37]February 17, 2016 email from Brigida Benitez to Brad Rosenberg and others, Exhibit 5, Defendants' Motion to Compel [etc.], Docket No. 209.

In responding to the "third party" requests, plaintiff must include in its production any documents relating to the amount of payments it made to third parties.

DATED at Anchorage, Alaska, this 5th day of May, 2016.

/s/ H. Russel Holland
United States District Judge